# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

OWEN J. ROGAL, D.D.S., P.C.       :
d/b/a THE PAIN CENTER             :
                                  :       CIVIL ACTION NO.
                Plaintiff,        :
                                  :
                                  :
     vs.                          :
                                  :
SKILSTAF, INC.                    :
                                  :
                Defendant.        :

## NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441

TO THE CLERK OF THE ABOVE ENTITLED COURT AND TO PLAINTIFF

PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. § 1441, et seq., defendant,

SkilStaf, Inc., by and through its attorneys, hereby removes this civil action from the

Philadelphia County Court of Common Pleas, Trial Division, to the United States District Court

for the Eastern District of Pennsylvania, and in support thereof aver as follows:

1.      On or about October 6, 2005, Plaintiff Owen J. Rogal, D.D.S., P.C. d/b/a

The Pain Center ("Plaintiff") commenced this action against SkilStaf, Inc. in the Philadelphia

County Court of Common Pleas, Trial Division, captioned Owen J. Rogal, D.D.S., P.C. d/b/a

The Pain Center v. SkilStaf, Inc., Civil Action No. 001514 ("State Court Action"). A copy of the

Complaint in the State Court Action is attached hereto as Exhibit 1.

2.      Exhibit 1 constitutes a true and correct copy of all process, pleadings and

orders which have been received by SkilStaf, Inc.

3.      SkilStaf, Inc. first received the Complaint on or about October 19, 2005.

4.      This action is being removed to United Stated District Court for the Eastern District of Pennsylvania, based upon federal question jurisdiction, 28 U.S.C. § 1331, under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. ("ERISA"), and upon diversity jurisdiction under 28 U.S.C. § 1332.

5.      The Plaintiff's federal cause of action appears on the face of the Complaint.

6.      In paragraphs 3 through 13 of the Complaint, Plaintiff claims that Dianna Berry assigned her right to benefits under the SkilStaf Group Health Plan ("Plan") to Plaintiff and that SkilStaf, Inc. wrongfully withheld benefits under the Plan.

7.      The Plan is an employee benefits plan governed by ERISA.  A copy of the summary plan description that describes the group health benefits provided under the Plan is attached hereto as Exhibit 2.

8.      As a result, the Complaint asserts a claim arising under the laws of the United States, in particular, Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), which authorizes a plaintiff to commence an action to recover benefits due under the terms of an employee benefits plan, to enforce rights under the terms of a plan, or to clarify rights to future benefits under the terms of a plan.

9.      In addition, Section 514(a) of ERISA, 29 U.S.C. 1144(a), preempts Plaintiff's state law claims against SkilStaf, Inc. which aver state law breach of contract, bad faith and deceit claims that relate to an ERISA plan.

10.      Therefore, this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 and Section 502(e)(1) of ERISA, 29 U.S.C. § 1132(e)(1); and consequently, all claims are removable to this Court under 28 U.S.C. § 1441(b) and (c), and/or under the complete

preemption doctrine. *See* <u>Metropolitan Life Insurance Company v. Taylor</u>, 107 S. Ct. 1542 (1987).

      11.     In addition, this Court has original jurisdiction over the State Court Action pursuant to 28 U.S.C. § 1332 because complete diversity exists between the parties and the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000), exclusive of interests and costs.

      12.     SkilStaf, Inc. is now, and was at the time the State Court Action was filed, a corporation organized and formed under the laws of the State of Alabama, with its principal place of business located in Alexander City, Alabama.  Thus, SkilStaf, Inc is now, and was at the time the State Court Action was filed, a citizen of the State of Alabama, and is not now, nor was it at the time the State Court Action was filed, a citizen of the Commonwealth of Pennsylvania.

      13.     Plaintiff is domiciled in and a citizen of the Commonwealth of Pennsylvania.  Plaintiff is now, and was at the time the State Court Action was filed, a citizen of the Commonwealth of Pennsylvania.

      14.     Complete diversity of citizenship exists.

      15.     The amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000), exclusive of interest and costs, although SkilStaf, Inc. denied any liability to the Plaintiff whatsoever.

      16.     Therefore, this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332 based upon the diversity of the parties and the amount in controversy; and consequently, all claims are removable to this Court under 28 U.S.C. § 1441.

17.     As required by 28 U.S.C. § 1441(a), the United States District Court for the Eastern District of Pennsylvania is the district court embracing the place where the State Court Action is pending.

18.     This Notice of Removal is being filed under 28 U.S.C. § 1446(b) within thirty (30) days from October 19, 2005, the date on which SkilStaf, Inc. received the Complaint.

19.     A copy of this Notice will be filed with the Philadelphia County Court of Common Pleas, Trial Division, as required by 28 U.S.C. § 1446(d).

WHEREFORE, the Defendant SkilStaf, Inc. respectfully removes the above captioned civil action from the Philadelphia County Court of Common Pleas, Trial Division, to the United States Court for the Eastern District of Pennsylvania, for further proceedings.

Date:  November 21, 2005

/s/ Beth A. Friel
Jeanne L. Bakker, Esquire
Beth A. Friel, Esquire
Montgomery, McCracken
 Walker & Rhoads, LLP
123 South Broad Street
Philadelphia, Pa  19109
(215) 772-1500

Attorneys for Defendant,
SkilStaf, Inc.

## CERTIFICATE OF SERVICE

I do hereby certify that a true and correct copy of the foregoing Notice of Removal Under

28 U.S.C. § 1441 was served on the person listed below by United States first class mail, postage

prepaid on this 21st day of November, 2005:

Robert E. Cole, P.C.
Lafayette Building
437 Chestnut Street
Suite 218
Philadelphia, PA  19106

FILED

NOV 2 1 2005

By MIC...

Dep. Clerk

/s/ Beth A. Friel  (BF 1164)
Beth A. Friel

# EXHIBIT  1

### Court of Common Pleas of Philadelphia County
#### Trial Division
# Civil Cover Sheet

For Prothonotary Use Only (Docket Number)

001514

**OCTOBER 2005**

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| Owen J. Rogal, D.D.S., P.C. | Skilstaf, Inc. |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| d/b/a The Pain Center<br>501-07 South 12th Street<br>Philadelphia, PA 19147 | P.O. Box 729<br>Alexander City, AL 35011 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| | |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| | |

| TOTAL NUMBER OF PLAINTIFFS | TOTAL NO. OF DEFENDANTS | COMMENCEMENT OF ACTION |
|---|---|---|
| 1 | 1 | ☒ Complaint ☐ Petition Action ☐ Notice of Appeal<br>☐ Writ of Summons ☐ Transfer From Other Jurisdictions |

| AMOUNT IN CONTROVERSY | COURT PROGRAMS | | |
|---|---|---|---|
| ☐ $50,000.00 or less<br>☒ More than $50,000.00 | ☐ Arbitration<br>☐ Jury<br>☒ Non-Jury<br>☐ Other: | ☐ Mass Tort<br>☐ Savings Action<br>☐ Petition | ☐ Commerce<br>☐ Minor Court Appeal<br>☐ Statutory Appeals | ☐ Settlement<br>☐ Minors<br>☐ W/D/Survival |

**CASE TYPE AND CODE (SEE INSTRUCTIONS)**

1C - Contract

**STATUTORY BASIS FOR CAUSE OF ACTION (SEE INSTRUCTIONS)**

N/A

**RELATED PENDING CASES (LIST BY CASE CAPTION AND DOCKET NUMBER)**

None

| IS CASE SUBJECT TO COORDINATION ORDER? | |
|---|---|
| Yes | No |
| ☐ | ☐ |
| ☐ | ☐ |
| ☐ | ☐ |

### TO THE PROTHONOTARY:

Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant:

Papers may be served at the address set forth below.

| NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY | ADDRESS (SEE INSTRUCTIONS) |
|---|---|
| Robert E. Cole | ROBERT E. COLE, P.C.<br>LAFAYETTE BUILDING<br>77 CHESTNUT STREET, SUITE 216<br>PHILADELPHIA, PA 19106 |

| PHONE NUMBER | FAX NUMBER | |
|---|---|---|
| 215-922-2050 | | |

| SUPREME COURT IDENTIFICATION NO. | E-MAIL ADDRESS |
|---|---|
| 73263 | |

| SIGNATURE | DATE |
|---|---|
| | 10/6/05 |

01-101 (Rev. 2/00)



ATTY ID 73263
215-922-2050

~~JURY TRIAL DEMANDED~~
THIS ~~[IS]~~ [IS *NOT*] AN ARBITRATION CASE. AN
ASSESSMENT OF DAMAGES ~~[IS]~~ [IS NOT]
REQUIRED.[1]

Attorney For Plaintiff

Owen J. Rogal, D.D.S., P.C.
d/b/a The Pain Center
501-07 S 12th St                           Plaintiff,
Phila, PA  19147

      vs.

Skilstaf, Inc.
P.O. Box 729
Alexander City, AL  35011

      Defendant.

PHILADELPHIA COUNTY
COURT OF COMMON PLEAS
TRIAL DIVISION

**OCTOBER 2005**
Term,

No.                     001514

## COMPLAINT—CIVIL ACTION

**NOTICE**

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after the complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

PHILADELPHIA BAR ASSOCIATION
    Lawyer Referral and Information Service
    1101 Market Street, 11th Floor
    Philadelphia, Pennsylvania 19107
    (215) 238-6300

**AVISO**

Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las páginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificación. Hace falta asentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomará medidas y puede continuar la demanda en contra suya sin previo aviso o notificación. Además, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

LLEVE ESTA DEMANDA A UN ABOGADO INMEDIATAMENTE. SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO. VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.

ASOCIACIÓN DE LICENCIADOS DE FILADELFIA
    Servicio De Referencia E Información Legal
    1101 Market Street, 11th Floor
    Filadelfia, Pennsylvania 19107
    (215) 238-6300

**ATTEST**

OCT 0 7 2005

**D. SAVAGE**

**IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY, PA**
**CIVIL ACTION - LAW**

ROBERT E. COLE                                    Attorney For Plaintiff
ROBERT E. COLE, P.C.
ATTORNEY I.D. NO. 73263
437 CHESTNUT STREET, SUITE 218
PHILADELPHIA, PA  19106
(215) 922-2050

---

OWEN J. ROGAL, D.D.S., P.C.          :
d/b/a THE PAIN CENTER
501-07 SOUTH 12TH STREET
PHILADELPHIA, PA  19147

        Plaintiff              :          TERM, 2005

        V.                     :     NO.

SKILSTAF, INC.                       :
P.O. BOX 729
ALEXANDER CITY, AL  35011

        Defendant              :

---

**COMPLAINT**
**1-C (CONTRACT)**

Plaintiff, by its undersigned attorney, hereby pleads the following Complaint:

1.    The plaintiff in this matter is Owen J. Rogal, D.D.S., P.C., d/b/a The Pain Center, a corporation with principal place of business being located at 501-07 South 12th Street, Philadelphia, PA  19147.

2.    Defendant Skilstaf, Inc. is an Alabama corporation and insurance provider/plan administrator with its headquarters and principal place of business located at P.O. Box 729, Alexander

City, AL   35011.

3.   At all times material and relevant hereto, one (1)
Dianna Berry was enrolled in a group healthcare insurance plan
provided and/or administrated by Defendant Skilstaf, Inc as
spouse of insured Dennis Berry..

4.   In January 2005 and thereafter, the above insurance
policy was in full force and effect.

5.   On or about January 14, 2005, Dianna Berry began
treatment with plaintiff for various ailments, including but not
limited to head, neck shoulder, arm, ribs and back.  At all time
relevant hereto, the treatments rendered by plaintiff to Dianna
Berry Davis were reasonable and necessary, properly and
medically justified.

6.   The total charges for the medical services provided to
Dianna Berry at plaintiff from January 14, 2005 through June 7,
2005 were $189,900.00.  Of this, there remains an outstanding
balance of $117,407.37.  (See Exhibit "A", attached hereto and
made by reference a part hereof).

7.   Said Dianna Berry may be obligated to receive and
undergo additional medical attention and care with plaintiff and
incur substantial expenses described in an effort to cure himself
of his said injuries and will or may be obligated to expend such
sums or incur such expenditures for an indefinite time in the
future.

8.    On or about January 14, 2005, one (1) Dianna Berry executed an Assignment of Rights to plaintiff.  (See Exhibit "B", attached hereto and made by reference a part hereof).

9.    Defendant unreasonably and unfairly withheld policy benefits, despite repeated additional demands by plaintiff for them to pay the aforementioned medical providers.

10.    The conduct of Defendant includes, but is not limited to, the following:

(a)    Failing to give equal consideration to paying the claim as to not paying the claim;

(b)    Failing to objectively and fairly evaluate plaintiff's claim;

(c)    Asserting policy defenses without a reasonable basis in fact;

(d)    Compelling plaintiff to institute the lawsuit to obtain policy benefits that should have paid promptly and without the necessity of litigation;

(e)    Dilatory and abusive claims handling;

(f)    Placing unduly restrictive and self-serving interpretations on the policies

(g)    Acting unreasonably and unfairly in response to plaintiff's claim;

(h)    Failing to promptly provide a reasonable factual explanation of the basis of denial of plaintiff's claim;

(i)    Conducting an unfair and unreasonable investigation of Plaintiffs' claims; and

(j)    Otherwise unreasonably and unfairly withholding policy benefits justly due and owing plaintiff.

11.    As an insurer, defendant owes fiduciary, contractual, and statutory duties toward plaintiff to investigate the claims in good faith and pay same promptly.

12.    Plaintiff, at all relevant times, fully complied with all of the terms of the policies and all conditions precedent

and subsequent to plaintiff's right to receive benefits under the policy.

13.    Nonetheless, defendant has refused, without legal justification or cause, and continue to refuse, to act in good faith and/or to pay plaintiff's medical bills incurred.

## COUNT I
## BREACH OF CONTRACT

14.    Plaintiff incorporates by reference paragraphs one (1) through thirteen (13) above as though fully set forth hereinafter at length.

15.    Plaintiff has satisfied all of its obligations under the above insurance policy, including, but not limited to, all conditions precedent and all conditions subsequent.

16.    By failing to make payments to plaintiff in the amounts owed, defendant breached its contractual obligations to plaintiff under the policy.

WHEREFORE, plaintiff demands judgment against defendant in the amount of $117,407.37 plus additional compensatory and/or consequential damages allowed by law, together with interest, court costs, and such other relief as this Honorable Court shall deem just and proper.

## COUNT II
## BAD FAITH

17.    Plaintiff incorporates by reference paragraphs one (1) through sixteen (16) as though fully set forth hereinafter at length.

18.    For the reason set forth above, including, but not limited to, failing to promptly offer indemnification to plaintiff; failing to objectively and fairly evaluate plaintiff's claims; asserting defenses without reasonable basis in fact; unnecessarily and unreasonably compelling litigation; conducting an unreasonable investigation of plaintiff's claims; and unreasonably withholding policy benefits, defendant has violated its policy's covenants of good faith and fair dealing and/or committed the tort of bad faith, including, but not limited to, violating 42 Pa. C.S.A. 3371, for which defendant is liable for interest on the prime rate of interest plus three percent, court costs, attorneys' fees, punitive damages, and such other compensatory and/or consequential damages allowed by law.

WHEREFORE, plaintiffs demand compensatory, consequential, and punitive damages from defendants, in an amount in excess of Fifty Thousand Dollars (50,000.00), plus interest, court costs, attorneys' fees, and such other relief as this Honorable Court shall deem just and proper.

## COUNT III
## DECEIT

19.  Plaintiff incorporates by reference paragraphs one (1)
through eighteen (18) above as though fully set forth
hereinafter at length.

20.  The conduct of defendant constitutes fraud,
misrepresentation and deceit in that, _inter alia_, defendant
knowingly, willingly, and/or recklessly refused and failed to
comply with the terms and conditions of its policy, including,
but not limited to, the policy's implied covenants _of_ good faith
and fair dealing; the statutes of the Commonwealth of
Pennsylvania; and the regulations of the Insurance Department of
Commonwealth of Pennsylvania; and otherwise violated their
fiduciary, contractual, and statutory duties in dealing with
plaintiff.

21.  Plaintiff justifiably relied upon the representations,
which defendant made in its policy, in sales presentations'
and/or brochures provided by the agents of defendant, and/or in
public advertising, that all claims would be objectively
evaluated and fairly and promptly paid, which representations
were false when made and, therefore, the conduct of defendant
constitute the common law tort of deceit for which plaintiff
seek compensatory, consequential, and punitive damages.

WHEREFORE, plaintiff demands compensatory, consequential, and punitive damages from defendant jointly and severally in an amount in excess of Fifty Thousand Dollars ($50,000.00), plus interest, court costs, attorneys' fees, and such other relief as this Honorable Court shall deem just and proper.

10/6/05
_____
Date

_____
Robert E. Cole, Esquire
Attorney for Plaintiff
Atty. I.D. No. 73263
437 Chestnut Street, Suite 218
Philadelphia, PA  19106
(215) 922-2050

FROM :THE PAIN CENTER          FAX NO. :2159231012          Jul. 31 2005 11:44AM P1

THE PAIN CENTER
08/31/05                        BILLINGS AND RECEIPTS
11:47:52                        Berry, Dianna                          Page 1

| DATE OF SERVICE | DEPT | AMOUNT BILLED | AMOUNT PAID | BALANCE |
|---|---|---|---|---|
| 01/14/2005 | K | 50.00 | .00 | 50.00 |
| 01/21/2005 | S | 7668.00 | 5321.00 | 2347.00 |
| 01/28/2005 | IP | 300.00 | .00 | 300.00 |
| 01/28/2005 | ZP | 7318.00 | 6584.10 | 733.90 |
| 02/04/2005 | IP | 300.00 | .00 | 300.00 |
| 02/04/2005 | ZP | 7318.00 | 6713.70 | 604.30 |
| 02/11/2005 | K | 300.00 | .00 | 300.00 |
| 02/11/2005 | KZ | 7318.00 | 7363.00 | -45.00 |
| 02/18/2005 | K | 300.00 | .00 | 300.00 |
| 02/18/2005 | KZ | 7318.00 | 7183.00 | 135.00 |
| 02/25/2005 | K | 300.00 | .00 | 300.00 |
| 02/25/2005 | KZ | 7318.00 | 7333.00 | -15.00 |
| 03/04/2005 | K | 300.00 | .00 | 300.00 |
| 03/04/2005 | KZ | 7318.00 | 12300.00 | -4982.00 |
| 03/18/2005 | K | 600.00 | .00 | 600.00 |
| 03/18/2005 | KZ | 14636.00 | 5075.00 | 9561.00 |
| 03/25/2005 | K | 300.00 | .00 | 300.00 |
| 03/25/2005 | KZ | 7318.00 | 3355.00 | 3963.00 |
| 04/01/2005 | K | 300.00 | .00 | 300.00 |
| 04/01/2005 | KZ | 7318.00 | 4779.83 | 2538.17 |
| 04/08/2005 | KZ | .00 | .00 | .00 |
| 04/15/2005 | K | 300.00 | .00 | 300.00 |
| 04/15/2005 | KZ | 7318.00 | 3242.50 | 4075.50 |
| 04/22/2005 | K | 300.00 | .00 | 300.00 |
| 04/22/2005 | KZ | 7318.00 | .00 | 7318.00 |
| 04/29/2005 | K | 300.00 | .00 | 300.00 |
| 04/29/2005 | KZ | 7318.00 | 3242.50 | 4075.50 |
| 05/06/2005 | K | 300.00 | .00 | 300.00 |
| 05/06/2005 | KZ | 9486.00 | .00 | 9486.00 |
| 05/13/2005 | K | 300.00 | .00 | 300.00 |
| 05/13/2005 | KZ | 7318.00 | .00 | 7318.00 |
| 05/20/2005 | K | 300.00 | .00 | 300.00 |
| 05/20/2005 | KZ | 7318.00 | .00 | 7318.00 |
| 05/23/2005 | K | 300.00 | .00 | 300.00 |
| 05/23/2005 | KZ | 7318.00 | .00 | 7318.00 |
| 05/25/2005 | IP | 300.00 | .00 | 300.00 |
| 05/25/2005 | ZP | 7318.00 | .00 | 7318.00 |
| 05/26/2005 | S | 12418.00 | .00 | 12418.00 |
| 05/27/2005 | K | 300.00 | .00 | 300.00 |
| 05/27/2005 | KZ | 7318.00 | .00 | 7318.00 |
| 06/01/2005 | K | 300.00 | .00 | 300.00 |
| 06/01/2005 | KZ | 7318.00 | .00 | 7318.00 |
| 06/03/2005 | K | 300.00 | .00 | 300.00 |
| 06/03/2005 | KZ | 7318.00 | .00 | 7318.00 |
| 06/07/2005 | K | 300.00 | .00 | 300.00 |
| 06/07/2005 | KZ | 7318.00 | .00 | 7318.00 |
| | | 189900.00 | 72492.63 | 117407.37 |



PLAINTIFF'S
EXHIBIT
tabbies

RADIOFREQUENCY
RFS

**THE PAIN CENTER**
*is a multi-disciplinary facility*
*of pain specialists, including the fields of*
*anesthesiology, neurology, ENT, physical medicine,*
*clinical neuro-electrophysiology, neuropsychology*
*and musculoskeletal manipulation.*

# THE PAIN CENTER

TO: _Skee S_____     Re: Patient's Name: _Dienne Berry_

Address: _PO Bo____ 929_     Your Insured: _Dennis + Dionne, Berry_

_Alex and___ City_          Claim No. : _464703972_

_al, 35011_

I hereby irrevocably ____ sign to The Pain Center any right, which I may have against any insurer that may be responsible ____ r the payment of medical bills incurred by reason of any treatment by the doctors. Without dimi____ ishing this assignment, I retain the right to sue any person legally responsible for my inju____ s and include therein a claim for payment of The Pain Center bills. I understand that I may b____ responsible for any such bills for which there is no source of insurance benefits for services rend____ ed prior to April 1, 1990.

I hereby authorize y____ to pay directly to The Pain Center, and to no one else, benefits due to me under the terms of my ____ licy, a policy of insurance, which by operation of law makes me an "insured," or by reason o____ settlement of verdict, which includes a claim for medical bills.

Payment of The Pa____ Center invoices within thirty (30) days of your receipt of same, as provided under law, is a____ chorized upon your receipt of The Pain Center itemized statement of account and Attending Ph____ icians Report form for services rendered to me. Payment of any amount to The Pain Center as her____ in directed, in whole or in part, shall be considered the same as if paid by your company to me. I____ ____ments include, but are limited to, any proceeds under any insurance policy for primary benef____ coverage under the Pennsylvania, New Jersey, Delaware or New York automobile insurance la____ , any proceeds of settlement or verdict awarded for medical bills. I further irrevocably assig____ ____ The Pain Center the right to bring suit in his own name or in my name for any medical bills for t____ ____atment by The Pain Center that are not paid within thirty (30) days after submission to my carrier. I declare that I view that any failure of my carrier to pay The Pain Center to be an act of bad faith a____ I assign any rights which I may have as a result of this bad faith to The Pain Center.

You are directed not ____ deliver benefits herein assigned to The Pain Center to anyone other than The Pain Center, and this ____irective includes my attorney, who has received a copy of this document. The Pain Center will noti____ my attorney of any payments received.

I understand that I ca____ ot revoke this authorization without the prior written consent of The Pain Center, and unl____ ss you receive such written notice of revocation from The Pain Center, this document shall remai____ egally binding.

PLAINTIFF'S EXHIBIT
B
tabbies

SIGNED: _Dionne Berry_

## VERIFICATION

Robert E. Cole, Esquire hereby states that he is counsel for plaintiff in this action, is able to make this Verification due to personal conversations with principals of plaintiff and verifies that the averments set forth in the foregoing pleading are true and correct to the best of his knowledge, information and belief. The undersigned understands that the statements therein made are subject to the penalties of 18 Pa. C.S. § 4904 relating to unsworn falsification to authorities.

_10/6/05_
Date

_____
Robert E. Cole, Esquire
Attorney for Plaintiff
Atty. I.D. No. 73263
437 Chestnut Street, Suite 218
Philadelphia, PA  19106
(215) 922-2050

# EXHIBIT 2



**SkilStaf**

*Managing the details of business.*

SKILSTAF GROUP HEALTH PLAN

# SkilStaf Group Health Plan

## TABLE OF CONTENTS

| | | |
|---|---|---|
| SECTION 1 | INTRODUCTION AND LISTING OF COVERAGE OPTIONS AND BENEFIT SCHEDULES | 2 |
| SECTION 2 | EXPLANATION OF COVERAGE OPTIONS AND BENEFIT SCHEDULES | 16 |
| SECTION 3 | ELIGIBILITY TO PARTICIPATE | 20 |
| SECTION 4 | TERMINATION OF REGULAR COVERAGE | 24 |
| SECTION 5 | COBRA CONTINUATION COVERAGE | 25 |
| SECTION 6 | PREEXISTING CONDITIONS | 27 |
| SECTION 7 | MEDICAL BENEFITS | 28 |
| SECTION 8 | PRE-CERTIFICATION AND SECOND SURGICAL OPINION PROCEDURES | 35 |
| SECTION 9 | MEDICAL BENEFIT LIMITATIONS AND EXCLUSIONS | 38 |
| SECTION 10 | DENTAL COVERAGE OPTION | 42 |
| SECTION 11 | COORDINATION OF BENEFITS | 49 |
| SECTION 12 | SUBROGATION, REIMBURSEMENT, AND RECOVERY RIGHTS | 51 |
| SECTION 13 | DEFINITIONS | 53 |
| SECTION 14 | CLAIM PROCEDURES | 57 |
| SECTION 15 | GENERAL INFORMATION | 59 |
| SECTION 16 | STATEMENT OF ERISA RIGHTS | 62 |
| SECTION 17 | PRIVACY OF INFORMATION | 63 |
| | ATTACHMENT 1: ORGAN TRANSPLANT POLICY | 66 |

## SECTION 1
## INTRODUCTION

SkilStaf, Inc. ("SkilStaf") is pleased to sponsor the SKILSTAF GROUP HEALTH PLAN (the "plan"). This booklet explains the plan's basic features, its operation, its benefit exclusions and limitations, its benefit eligibility rules, and the definitions of certain terms used by the plan. Copies of this booklet are available to you at any time upon request. The plan is governed by the Employee Retirement Income Security Act of 1974, as amended ("ERISA"). This booklet is a "plan" or "summary plan description" under ERISA.

## SCHEDULES OF BENEFIT OPTIONS

COVERAGE OPTION ONE

COVERAGE OPTION TWO

COVERAGE OPTION THREE

COVERAGE OPTION FOUR

DENTAL COVERAGE OPTION

**IMPORTANT NOTE**: Each COVERAGE OPTION is different from the other COVERAGE OPTIONS. You must refer to the plan provisions and BENEFIT SCHEDULE that apply to your COVERAGE OPTION. If you have questions about the COVERAGE OPTION that applies to you, you should contact the plan administrator at 1-800-489-3928.

## OPTION ONE

### BENEFIT SCHEDULE

#### SkilStaf GROUP HEALTH Plan

| | PPO | Non-PPO |
|---|---|---|
| • **Maximum Total benefits Payable During Lifetime of Each Covered Person** | $2,000,000 | $2,000,000 |

- **Calendar Year Deductible**

| | | |
|---|---|---|
| Individual | $250 | |
| Family | $500 for 3 or fewer family members, plus $150 for each additional family member | |

The covered charges applied during October through December to satisfy the applicable deductible amount for a calendar year also are applied to satisfy the applicable deductible amount for the immediately following calendar year.

- **PPO Network**

### BENEFIT SCHEDULE FOR COVERAGE OPTION ONE

| | PPO | Non-PPO |
|---|---|---|
| • **Benefits Payable -** Percentage of Covered Charges (unless otherwise noted) | 90% | 80% |

- **Calendar Year Out-Of-Pocket Maximums**

| | | |
|---|---|---|
| Individual | $ 750 | $1,250 |
| Family | $1,500 | $2,500 |

- Co-payments do not count toward the satisfaction of any out-of-pocket maximum.

- **Hospital / Facility Benefits**

| | PPO | Non-PPO |
|---|---|---|
| Hospital Room and Board | PPO and non-PPO benefits are payable as to the covered charges incurred due to hospital confinement, but the covered charges are limited to the hospital's daily ward or semi-private room rate. If the hospital only has single-bed rooms, these covered charges are limited to the daily maximum allowable charge in the geographic area for a semi-private room. If the covered charges are incurred due to intensive care or coronary care room confinement, the covered charges are limited to the hospital's usual, customary or reasonable fee for such a room. | |
| Inpatient Services / Supplies | 90% / no deductible | 80% after deductible |
| Outpatient Surgery– Hospital / Outpatient Facility | 90% / no deductible | 80% after deductible |
| Hospital Emergency Room Services/Supplies | 90% after $25 co-pay/ no deductible | 80% after deductible |

| | PPO | Non-PPO |
|---|---|---|
| Outpatient X-Ray and Lab Benefits | 90% after deductible | 80% after deductible |
| Skilled Nursing Facility Benefit | 90% / no deductible | 80% after deductible |

- ■   PPO and non-PPO benefits limited to 30 days per calendar year at a maximum payable daily benefit equal to the lesser of the daily rate established by the State for skilled nursing facility confinement under its medical assistance program or one-half of the maximum allowable charge for a semi-private room in the transferring hospital.

| | PPO | Non-PPO |
|---|---|---|
| Home Health Care Benefits (limited to 20 visits per calendar year) | 90% after deductible | 80% after deductible |
| Hospice Care Inpatient Benefit | 90% / no deductible | 80% after deductible |
| Hospice Care Outpatient Benefit | 90% after deductible | 80% after deductible |

- **Physician Services** (other than Preventive Care Benefits and Rehabilitation and Therapy Benefits)

| | PPO | Non-PPO |
|---|---|---|
| Hospital Visits | 100% / no deductible | 80% after deductible |
| Surgery and Anesthesia | 90% / no deductible | 80% after deductible |

- a)   PPO and non-PPO covered charges for surgery / anesthesia include the maximum allowable charge for a major procedure and 50% of the maximum allowable charge for each other simultaneously performed procedure, but do not include charges for simultaneously performed incidental surgical procedures, such as an appendectomy performed during gall bladder surgery.

- b)   PPO and non-PPO benefits payable for the services of an assistant surgeon are limited to 50% of the usual, customary or reasonable fee for the procedure.

## BENEFIT SCHEDULE FOR COVERAGE OPTION ONE

| | PPO | Non-PPO |
|---|---|---|
| Office Visits | 100% after $15 co-pay./ no deductible | 80% after deductible |
| X-Rays and Lab | 90% / no deductible | 80% after deductible |

- **Preventive Care Benefits**

| | PPO | Non-PPO |
|---|---|---|
| Annual Physical Exam | 100% after $15 co-pay / no deductible | 80% after deductible |
| Well Child Office Visits For 2nd, 4th, 6th, 12th, 18th and 24th Months | 100% after $15 co-pay / no deductible | 80% after deductible |
| Routine Immunization(s) | 90% / no deductible | 80% after deductible |

| Mammogram | 100% after $25 co-pay / no deductible | 80% after deductible |
|---|---|---|
| Annual Routine Pap Smear | 100% after $25 co-pay / no deductible | 80% after deductible |
| Annual Prostate Specific Antigen Test | 100% after $25 co-pay / no deductible | 80% after deductible |

- **Newborn Benefits**

  PPO and non-PPO benefits for well-baby care and for sick-baby care are payable for the 31-day period immediately following the date of birth, provided the baby is enrolled during that time.

  PPO and non-PPO benefits are payable on a combined basis with maternity benefits.

- **Rehabilitation, Physical Therapy, and Chiropractic Services**

| Outpatient Physician Services | 100% after $15 co-pay / no deductible | 80% after deductible |
|---|---|---|
| Outpatient Physician Services--Lab and X-Ray | 90% / no deductible | 80% after deductible |

  With respect to services provided by a physician who is a chiropractor, an annual limit of $1,000 applies per covered person as to PPO and non-PPO benefits, with Outpatient Physician Lab and X-Ray charges to be included when computing the $1,000.

  With respect to services provided by a physician who is a chiropractor, an annual limit of $1,000 applies per covered person as to PPO and non-PPO benefits, with Outpatient Physician Services to be included when computing the $1,000.

### BENEFIT SCHEDULE FOR COVERAGE OPTION ONE

| | PPO | Non-PPO |
|---|---|---|
| Inpatient Rehabilitation Services (annual limit of 90 days) | 90%/no deductible | 80% after deductible |
| Outpatient Physical Therapy Services and Treatment | 90% after deductible | 80% after deductible |
| **Miscellaneous Expense Benefit** | 90% no deductible | 80% after deductible |

- **Prescription Drug Benefit**

| Co-pay Per Name Brand Name "Preferred" Prescription | $35.00 | $35.00 |
|---|---|---|
| Co-pay Per Name Brand Name "Non-Preferred" Prescription | $20.00 | $20.00 |
| Co-pay Per Generic Prescription | $ 10.00 | $ 10.00 |

  - Each prescription is limited to the greater of a 30-day supply or a 100-unit dose.

  - The covered charge for any one prescription is limited to refills only up to the number of times specified by a physician and up to one year from the date of order by a physician.

  - The difference in cost between a generic and name brand prescription drug is not a covered charge if name brand is received when a generic is available.

# OPTION TWO

## BENEFIT SCHEDULE

### SkilStaf GROUP HEALTH PLAN

- **Maximum Total Benefits Payable During Lifetime Of Each Covered Person**    $2,000,000

- **PPO Network**

|  | PPO | Non-PPO |
|---|---|---|
| • **Benefits Payable - Percentage Of Covered Charges** (unless otherwise noted) | 90% | 70% |

- **Calendar Year Deductible**

| | PPO | Non-PPO |
|---|---|---|
| Individual | none | $300 |
| Family | none | $600 for 3 or fewer family members, plus $180 for each additional family member |

The covered charges applied during October through December to satisfy the applicable deductible amount for a calendar year also are applied to satisfy the applicable deductible amount for the immediately following calendar year.

- **Calendar Year Out-Of-Pocket Maximums**

| | PPO | Non-PPO |
|---|---|---|
| Individual | $2,000 | $3,300 |
| Family | $4,000 | $6,600 |

Co-payments do not count toward satisfaction of out-of-pocket maximums.

- **Hospital / Facility Benefits**

| Hospital Room and Board | PPO and non-PPO benefits are payable as to the covered charges incurred due to hospital confinement, but the covered charges are limited to the hospital's daily ward or semi-private room rate. If the hospital only has single-bed rooms, these covered charges are limited to the daily maximum allowable charge in the geographic area for a semi-private room. If the covered charges are incurred due to intensive care or coronary care room confinement, the covered charges are limited to the hospital's usual, customary or reasonable fee for such a room. | |
|---|---|---|
| Inpatient Services / Supplies | 90% after $150 co-pay | 70% after deductible |
| Outpatient Surgery Hospital / outpatient Facility | 90% after $150 co-pay | 70% after deductible |
| Hospital Emergency Room Services / Supplies | 90% after $150 co-pay | 70% after deductible |

## BENEFIT SCHEDULE FOR COVERAGE OPTION TWO

|  | PPO | Non-PPO |
|---|---|---|
| Outpatient X-Ray and Lab Benefits | 90% after $150 co-pay | 70% after deductible |
| Skilled Nursing Facility Benefit | 90% after $150 co-pay | 70% after deductible |

PPO and non-PPO benefits limited to 30 days per calendar year at a maximum payable daily benefit equal to the lesser of the daily rate established by the State for skilled nursing facility confinement under its medical assistance program or one-half of the maximum allowable charge for a semi-private room in the transferring hospital.

| Home Health Care Benefits (limited to 20 visits per calendar year) | 90% after $20 co-pay | 70% after deductible |
|---|---|---|
| Hospice Care Inpatient Benefit | 90% after $150 co-pay | 70% deductible |
| Hospice Care Outpatient Benefit | 90% after $15 co-pay | 70% deductible |

- **Physician Services** (other than Preventive Care Benefits and Rehabilitation and Therapy Benefits)

| Hospital Visits | 100% | 70% after deductible |
|---|---|---|
| Surgery and Anesthesia | 90% after $25 co-pay | 70% after deductible |

a) PPO and non-PPO covered charges for surgery / anesthesia include the maximum allowable charge for a major procedure and 50% of the maximum allowable charge for each other simultaneously performed procedure, but do not include charges for simultaneously performed incidental surgical procedures, such as an appendectomy performed during gall bladder surgery.

b) PPO and non-PPO benefits payable for the services of an assistant surgeon are limited to 50% of the usual, customary or reasonable fee for the procedure.

| Office Visits | 100% after $20 co-pay | 70% after deductible |
|---|---|---|
| X-Rays and Lab | 90% after $25 co-pay | 70% after deductible |

- **Preventive Care Benefits**

| Annual Physical Exam | 100% after $20 co-pay | 70% after deductible |
|---|---|---|
| Well Child Office Visits For 2nd, 4th, 6th, 12th, 18th and 24th Months | 100% after $20 co-pay | 70% after deductible |
| Routine Immunization(s) | $100 after $20 co-pay | 70% after deductible |
| Mammogram | 100% after $25 co-pay | 70% after deductible |
| Annual Routine Pap Smear | 100% after $25 co-pay | 70% after deductible |

## BENEFIT SCHEDULE FOR COVERAGE OPTION TWO

|  | **PPO** | **Non-PPO** |
|---|---|---|
| Annual Prostate Specific Antigen Test | 100% after $25 co-pay | 70% after deductible |

- **Newborn Benefits**

    PPO and non-PPO benefits for well-baby care and for sick-baby care are payable for the 31-day period immediately following the date of birth.

    PPO and non-PPO benefits are payable on a combined basis with maternity benefits.

- **Rehabilitation, Physical Therapy, and Chiropractic Services**

| | | |
|---|---|---|
| Outpatient Physician Services | 100% after $20 co-pay | 70% after deductible |
| Outpatient Physician Services–Lab and X-Ray | 90% after $25 co-pay | 70% after deductible |

    With respect to services provided by a physician who is a chiropractor, an annual limit of $1,000 applies per covered person as to PPO and non-PPO benefits, with Outpatient Physician Lab and X-Ray charges to be included when computing the $1,000.

    With respect to services provided by a physician who is a chiropractor, an annual limit of $1,000 applies per covered person as to PPO and non-PPO benefits, with Outpatient Physician services to be included when computing the $1,000.

| | | |
|---|---|---|
| Inpatient Rehabilitation Services (annual limit of 90 days) | 90% after $150 co-pay | 70% after deductible |
| Outpatient Physical Therapy Services and Treatment | 90% after $20 co-pay | 70% after deductible |

- **Miscellaneous Expense Benefit** — 90% after $150 co-pay — 70% after deductible

- **Prescription Drug Benefit**

| | | |
|---|---|---|
| Co-pay Per Name Brand Name "Preferred" Prescription | $35.00 | $35.00 |
| Co-pay Per Name Brand Name "Non-Preferred" Prescription | $20.00 | $20.00 |
| Co-pay Per Generic Prescription | $10.00 | $ 10.00 |

- ■ Each prescription is limited to the greater of a 30-day supply or a 100-unit dose.

- ■ The covered charge for any one prescription is limited to refills only up to the number of times specified by a physician and up to one year from the date of order by a physician.

- ■ The difference in cost between a generic and name brand prescription drug is not a covered charge if name brand is received when a generic is available.

# OPTION THREE

## BENEFIT SCHEDULE

### SkilStaf GROUP HEALTH PLAN

- **Maximum Total Benefits Payable During Lifetime of Each Covered Person**    $2,000,000

- **PPO Network**

| | PPO | Non-PPO |
|---|---|---|
| **Benefits Payable - Percentage Of Covered Charges** (unless otherwise noted) | 90% | 70% |

- **Calendar Year Deductible**

| | | |
|---|---|---|
| Individual | $250 | $500 |
| Family | $500 for 3 or fewer family members, plus $150 for each additional family member | $1000 for 3 or fewer family members, plus $300 for each additional family member |

The covered charges applied during October through December to satisfy the applicable deductible amount for a calendar year also are applied to satisfy the applicable deductible amount for the immediately following calendar year.

- **Calendar Year Out-Of-Pocket Maximums**

| | | |
|---|---|---|
| Individual | $1,200 | $3,500 |
| Family | $2,400 | $7,000 |

Co-payments do not count toward satisfaction of out-of-pocket maximums.

- **Hospital / Facility Benefits**

| | | |
|---|---|---|
| Hospital Room and Board | PPO and non-PPO benefits are payable as to the covered charges incurred due to hospital confinement, but the covered charges are limited to the hospital's daily ward or semi-private room rate. If the hospital only has single-bed rooms, these covered charges are limited to the daily maximum allowable charge in the geographic area for a semi-private room. If the covered charges are incurred due to intensive care or coronary care room confinement, the covered charges are limited to the hospital's usual, customary or reasonable fee for such a room. | |
| Inpatient Services / Supplies | 90% after deductible and $300 co-pay | 70% after deductible |
| Outpatient Surgery Hospital / outpatient Facility | 90% after deductible and $150 co-pay | 70% after deductible |
| Hospital Emergency Room Services / Supplies | 90% after deductible and $150 co-pay | 70% after deductible and $300 co-pay |

## BENEFIT SCHEDULE FOR COVERAGE OPTION THREE

|  | **PPO** | **Non-PPO** |
|---|---|---|
| Outpatient X-Ray and Lab Benefits | 90% after deductible and $150 co-pay | 70% after deductible and $300 co-pay |
| Skilled Nursing Facility Benefit | 90% after deductible and $150 co-pay | 70% after deductible and $300 co-pay |

PPO and non-PPO benefits limited to 30days per calendar year at a maximum payable daily benefit equal to the lesser of the daily rate established by the State for skilled nursing facility confinement under its medical assistance program or one-half of the maximum allowable charge for a semi-private room in the transferring hospital.

| Home Health Care Benefits (limited to 20 visits per calendar year) | 90% after $25 co-pay/ no deductible | 70% after deductible and $30 co-pay |
|---|---|---|
| Hospice Care Inpatient Benefit | 90% after deductible and $150 co-pay | 70%after deductible $300 co-pay |
| Hospice Care Outpatient Benefit | 90% after $25 co-pay no deductible | 70% after deductible and $30 co-pay |

- **Physician Services** (other than Preventive Care Benefits and Rehabilitation and Therapy Benefits)

| Hospital Visits | 100% no deductible | 70% after deductible and $30 co-pay |
|---|---|---|
| Surgery and Anesthesia | 90% after $25 co-pay / no deductible | 70% after deductible and $75 co-pay |

a) PPO and non-PPO covered charges for surgery / anesthesia include the maximum allowable charge for a major procedure and 50% of the maximum allowable charge for each other simultaneously performed procedure, but do not include charges for simultaneously performed incidental surgical procedures, such as an appendectomy performed during gall bladder surgery.

b) PPO and non-PPO benefits payable for the services of an assistant surgeon are limited to 50% of the usual, customary or reasonable fee for the procedure.

| Office Visits | 100% after $25 co-pay/ no deductible | 70% after deductible and $30 co-pay |
|---|---|---|
| X-Rays and Lab | 90% after $25 co-pay no deductible | 70% after deductible and $10 co-pay |

- **Preventive Care Benefits**

| Annual Physical Exam | 100% after $25 co-pay / no deductible | 70% after deductible and $50 co-pay |
|---|---|---|
| Well Child Office Visits For 2nd, 4th, 6th, 12th, 18th and 24th Months | 100% after $25 co-pay / no deductible | 70% after deductible and $50 co-pay |

## BENEFIT SCHEDULE FOR COVERAGE OPTION THREE

| | | |
|---|---|---|
| Routine Immunization(s) | $100 after $25 co-pay / no deductible | 70% after deductible and $50 co-pay |
| Mammogram | 100% after $25 co-pay / no deductible | 70% after deductible and $50 co-pay |
| Annual Routine Pap Smear Antigen Test | 100% after $25 co-pay / no deductible | 70% after deductible and $50 co-pay |

• **Newborn Benefits**

PPO and non-PPO benefits for well-baby care and for sick-baby care are payable for the 31-day period immediately following the date of birth.

PPO and non-PPO benefits are payable on a combined basis with maternity benefits.

• **Rehabilitation, Physical Therapy, and Chiropractic Services**

| | | |
|---|---|---|
| Outpatient Physician Services | 90% after $25 co-pay / no deductible | 70% after deductible and $30 co-pay |

With respect to services provided by a physician who is a chiropractor, an annual limit of $1,000 applies per covered person as to PPO and non-PPO benefits, with Outpatient Physician Lab and X-Ray charges to be included when computing the $1,000.

| | | |
|---|---|---|
| Outpatient Physician Services–Lab and X-Ray | 90% after $25 co-pay no deductible | 70% after deductible and $30 co-pay |

With respect to services provided by a physician who is a chiropractor, an annual limit of $1,000 applies per covered person as to PPO and non-PPO benefits, with Outpatient Physician services to be included when computing the $1,000.

| | | |
|---|---|---|
| Inpatient Rehabilitation Services (annual limit of 90 days) | 90% after deductible and $150 co-pay | 70% after deductible and $30 co-pay |
| Outpatient Physical Therapy Services and Treatment | 90% after deductible and $25 co-pay | 70% after deductible and $30 co-pay |

• **Miscellaneous Expense Benefit**

| | | |
|---|---|---|
| | 90% after deductible and $150 co-pay | 70% after deductible and $300 co-pay |

• **Prescription Drug Benefit**

| | | |
|---|---|---|
| Co-pay Per Name Brand Name "Preferred" Prescription | $35.00 | $35.00 |
| Co-pay Per Name Brand Name "Non-Preferred" Prescription | $20.00 | $20.00 |
| Co-pay Per Generic Prescription | $10.00 | $ 10.00 |

- ■ Each prescription is limited to the greater of a 30-day supply or a 100-unit dose.
- ■ The covered charge for any one prescription is limited to refills only up to the number of times specified by a physician and up to one year from the date of order by a physician.
- ■ The difference in cost between a generic and name brand prescription drug is not a covered charge if name brand is received when a generic is available.

## OPTION FOUR

## BENEFIT SCHEDULE

### SkilStaf GROUP HEALTH Plan

- **Inpatient Hospital Confinement**

MEDICAL BENEFITS GENERALLY ARE NOT PAYABLE UNDER COVERAGE OPTION FOUR UNLESS THE COVERED PERSON IS CONFINED TO A HOSPITAL ON AN INPATIENT BASIS (OVER TWENTY-THREE HOURS).

THOSE CASES IN WHICH MEDICAL BENEFITS ARE PAYABLE WHEN HOSPITAL CONFINEMENT HAS NOT BEGUN ARE SPECIFICALLY DESCRIBED IN THE PLAN AND/OR LISTED IN ATTACHMENT FOUR.

- **Maximum Total Benefits Payable During Lifetime of Each Covered Person** $2,000,000

- **PPO Network**

### BENEFIT SCHEDULE FOR COVERAGE OPTION FOUR

|  | PPO | Non-PPO |
|---|---|---|
| **Benefits Payable –**<br>**Percentage Of**<br>**Covered Charges**<br>(unless otherwise noted) | 90% | 70% |
| **Calendar Year Deductible** | | |
| Individual | none | $300 |
| Family | none | $600 for 3 or fewer family members, plus $180 for each additional family member |

The covered charges applied during October through December to satisfy the applicable deductible amount for a calendar year also are applied to satisfy the applicable deductible amount for the immediately following calendar year.

- **Calendar Year Out-Of-Pocket Maximums**

| | PPO | Non-PPO |
|---|---|---|
| Individual | $2,400 | $3,300 |
| Family | $4,000 | $6,600 |

Co-payments do not count toward satisfaction of out-of-pocket maximums.

- **Hospital / Facility Benefits**

| | |
|---|---|
| Hospital Room and Board | PPO and non-PPO benefits are payable as to the covered charges incurred due to hospital confinement, but the covered charges are limited to the hospital's daily ward or semi-private room rate. If the hospital only has single-bed rooms, these covered charges are limited to the daily maximum allowable charge in the geographic area for a semi-private room. If the covered charges are incurred due to intensive care or coronary care room confinement, the covered charges are limited to the hospital's usual, customary or reasonable fee for such a room. |
| Inpatient Services / Supplies | 90% after $150 co-pay          70% after deductible |

- **Physician Services**

Hospital Visits                100% after $15 co-pay            70% after deductible

Surgery and Anesthesia          90% after $25 co-pay             70% after deductible

    a)   PPO and non-PPO covered charges for surgery / anesthesia include the maximum allowable charge for a major procedure and 50% of the maximum allowable charge for each other simultaneously performed procedure, but do not include charges for simultaneously performed incidental surgical procedures, such as an appendectomy performed during gall bladder surgery.

    b)   PPO and non-PPO benefits payable for the services of an assistant surgeon are limited to 50% of the usual, customary or reasonable fee for the procedure.

Kidney Dialysis, Radiation,
and Chemotherapy                90% after $15 co-pay             70% after deductible

- **Newborn Benefits**

PPO and non-PPO benefits for well-baby care and for sick-baby care are payable for the 31-day period immediately following the date of birth.

PPO and non-PPO benefits are payable on a combined basis with maternity benefits.

- **Miscellaneous Expense**          90% after $150 co-pay           70% after deductible
  **Benefit**

- **Prescription Drug Benefit**

Co-pay Per Name Brand            $35.00                          $35.00
Name "Preferred" Prescription

Co-pay Per Name Brand            $20.00                          $20.00
Name "Non-Preferred" Prescription

Co-pay Per Generic               $10.00                          $ 10.00
Prescription

- ■ Each prescription is limited to the greater of a 30-day supply or a 100-unit dose.

- ■ The covered charge for any one prescription is limited to refills only up to the number of times specified by a physician and up to one year from the date of order by a physician.

- ■ The difference in cost between a generic and name brand prescription drug is not a covered charge if name brand is received when a generic is available.

# DENTAL COVERAGE OPTION

## BENEFIT SCHEDULE

### SkilStaf GROUP HEALTH Plan

| | |
|---|---|
| • **Maximum Annual Benefit Per Covered Person** | $1,250 |
| • **Annual Deductible Per Individual** | $50 |
| • **Annual Deductible Per Family** | $150 for 3 or fewer family members, plus $30 for each additional member. |
| • **Preventative Dental Services** | 100% / no deductible |
| Non-Emergency Examination | limited to 2 during a calendar year |
| Emergency Examination | limited to 1 during a 36-month period, with periapical x-rays limited to 14 per 36-month period |
| Individual Periapical X-Rays | occlusal x-rays are limited to 2 films in a 12-month period |
| | extroal x-rays are limited to 2 films in a 12-month period |
| | bitewing x-rays are limited to 1 procedure (4 views) in a 12-month period |
| Dental Prophylaxis | limited to 2 treatments during a 12-month period |
| Fluoride Treatment | limited to 2 treatments during a 12-month period |
| • **Basic Dental Services** | 80% after deductible |
| Sealants | limited to one per tooth per lifetime |
| Space Maintainers | adjustments limited to six-month period following installation |
| Pin Retention | limited to one pin per tooth |
| Scaling and Root Planing | limited to one time per quadrant of the mouth during a 12-month period |
| Periodontal / Dental Prophylaxis Following Periodontal Surgery | limited to 2 periodontal prophylaxis treatments and 2 dental prophylaxis treatments during a 12-month period following surgery |
| Dentures, Bridges, Crowns, and Inlays | repairs / adjustments limited to those performed more than 12 months after initial installation |
| • **Major Dental Services** | 50% after deductible |
| Stainless Steel Crowns | limited to one installation per tooth during a 3-year period |
| Gingivectomy or Gingival Curettage | limited to 1 procedure for each area of the mouth during a 12-month period |
| Periodontal Appliance | limited to one appliance in a 12-month period |
| Additional Clasp / Rest | limited to 2 during a 12-month period |

Denture Adjustment

limited to adjustments performed more than 12 months initial installation with such adjustments limited to 1 during a 12-month period

Denture Relining or Rebasing

limited to relining or rebasing performed more than 12 months initial installation with such relining or rebasing limited to 1 during a 36-month period

- **Dependent Child Orthodontic Benefits**

50% after deductible, with lifetime benefits per dependent child limited to $1,250 (the lifetime applies regardless of whether there have been breaks in coverage)

## SECTION 2
## EXPLANATION OF COVERAGE OPTIONS AND BENEFIT SCHEDULES

Medical benefits and dental benefits are payable only as to covered charges. Covered charges are described in this booklet. Please note the following:

1)    Covered charges apply only to medically necessary treatment, *but **not** all medically necessary treatments are covered under this plan;*
2)    The plan pays covered charges on a maximum allowable charge basis;
3)    The plan's limitations, exclusions, conditions, and other applicable terms may limit or exclude certain charges from coverage; and
4)    The Plan Administrator has full discretion to interpret the plan.

Unless otherwise provided by the applicable BENEFIT SCHEDULE, medical benefit and dental benefit payments generally are payable after the deductible shown in the applicable BENEFIT SCHEDULE is satisfied.

---

### A) MEDICAL BENEFIT COVERAGE OPTIONS AND BENEFIT SCHEDULES

The particular features and limitations of each of the plan's COVERAGE OPTIONS for medical benefits are described in this SECTION of the plan and in the plan's BENEFIT SCHEDULES. The BENEFIT SCHEDULES for medical benefits are found in this booklet in the preceding SECTION.

When applying for coverage under the plan, you must choose one (1) of the following COVERAGE OPTIONS (and its corresponding BENEFIT SCHEDULE) for medical benefits:

    1)    COVERAGE OPTION ONE and its corresponding BENEFIT SCHEDULE;

    2)    COVERAGE OPTION TWO and its corresponding BENEFIT SCHEDULE;

    3)    COVERAGE OPTION THREE and its corresponding BENEFIT SCHEDULE; or

    4)    COVERAGE OPTION FOUR and its corresponding BENEFIT SCHEDULE.

A transfer to a different COVERAGE OPTION (which will apply to you and to each of your covered dependents) may be elected so as to be effective as of the following dates:

    1)    On the date the plan no longer offers the COVERAGE OPTION previously chosen, or

    2)    As of January 1 (the transfer request must be submitted in writing to the plan administrator during the October or November that immediately precedes the January 1).

Each COVERAGE OPTION is different from the other COVERAGE OPTIONS. You must refer to the plan provisions and BENEFIT SCHEDULE that apply to your COVERAGE OPTION. If you have questions about the coverage OPTION that applies to you, you should contact the plan administrator.

---

### B) DENTAL COVERAGE OPTION AND BENEFIT SCHEDULE

When completing an ENROLLMENT FORM, you must indicate whether you are choosing coverage under the DENTAL COVERAGE OPTION. DENTAL COVERAGE also is available separately to SkilStaf employees even if they do not choose coverage under this Group Health Plan. (Please contact the plan administrator for details.) Limitations on dental benefits are described in this SECTION 2 and in SECTION 10 of the plan and in the plan's BENEFIT SCHEDULE for the DENTAL COVERAGE OPTION.

## C) DEDUCTIBLE AMOUNTS

Unless otherwise provided by the BENEFIT SCHEDULE that applies to you, you must satisfy the applicable deductible amount(s) each calendar year before the plan pays any medical benefits or dental benefits.

1) Only the payment of covered charges will be applied to satisfy a deductible amount.
2) There are individual and family deductible limits shown in the applicable BENEFIT SCHEDULE.
3) If two or more covered persons who are members of the same family are injured in the same accident, then for the purpose of satisfying the family deductible amount for medical benefits,
   a) only one individual deductible amount will apply to the covered charges incurred by them for that accident, and

   b) payment of the individual deductible amount will count toward satisfaction of the family deductible amount for the calendar year.

4) Separate deductible amounts for dental benefits must be satisfied (payment of medical benefit deductible amounts does not apply toward satisfaction of the dental benefit deductible amounts).

## D) MEDICAL BENEFIT COST-SHARE AND OUT-OF-POCKET MAXIMUM

After the deductible for medical benefits is satisfied for a calendar year, the plan pays medical benefits at "cost-share" levels for covered charges incurred during the rest of the same calendar year. "Cost-share" means the plan pays only that percentage of a covered charge as indicated in the applicable BENEFIT SCHEDULE.

The cost-share (if any) that applies under the chosen COVERAGE OPTION for medical benefits will not apply for the remainder of the calendar year after the COVERAGE OPTION'S out-of-pocket maximum (if any) is reached for a calendar year. After the out-of-pocket maximum is reached, medical benefits will equal 100% of a maximum allowable covered charge. However, co-payment requirements still apply even after the out-of-pocket maximum is reached.

With regard to each COVERAGE OPTION, individuals and families are responsible for making the out-of-pocket payments shown in the BENEFIT SCHEDULE for the COVERAGE OPTION. Out-of-pocket payments are:

1) The deductible amount for the chosen COVERAGE OPTION,
2) The portion of the cost-share for the chosen COVERAGE OPTION, and
3) The co-payment(s) for the chosen COVERAGE OPTION.

To determine whether the out-of-pocket maximum contained in the applicable BENEFIT SCHEDULE has been reached, deductible payments and cost-share payments are added up (co-pays are NOT included in the total out-of-pocket payments).

## E) LIFETIME MAXIMUM

The total amount of lifetime medical benefits the plan will pay for each covered person while covered by the plan is shown in the applicable BENEFIT SCHEDULE. If the covered person also is covered by another group medical plan, the coordination provisions of SECTION 11 of this plan will apply, and the lifetime limit will remain in force.

The DENTAL COVERAGE OPTION includes a lifetime maximum for Dependent Child Orthodontic Benefits.

## F)  PREFERRED PROVIDER ORGANIZATION PROGRAM

The plan's PREFERRED PROVIDER ORGANIZATION PROGRAM ("PPO") for medical benefits is indicated on your health CARE COVERAGE CARD. The plan deductible and cost-share may be different for medical services and treatment rendered by a preferred provider. The applicable BENEFIT SCHEDULE lists the differences between PPO and non-PPO benefits and shows applicable co-payment requirements.

### 1)  Preferred Provider Organization (PPO)

A preferred provider organization or PPO is a network of physicians, hospitals, and other health care facilities offering financial incentives to you under the plan to use the PPO's services.

### 2)  Preferred Provider

A preferred provider is a physician, hospital, or other health care facility that is a member of a PPO.

A list of preferred providers for your area will be provided to you upon your enrollment date, and copies are available thereafter upon request.

A preferred provider may not be available in certain geographic parts of the United States. If there is no preferred provider, then only non-PPO medical benefits are available under the plan.

There is no PPO for the DENTAL COVERAGE OPTION.

### 3)  Co-pay or Co-payment Requirements

A co-pay or co-payment is the amount of money you must pay to a preferred provider before medical benefits are paid by the plan. A co-pay generally is due when

   a)   a service is rendered or begun,

   b)   a treatment is performed or begun,

   c)   upon the incurrence of a covered charge, or

   d)    upon a visit to a provider.

Co-payments do not count toward deductible amounts or out-of-pocket maximums.

As indicated by the applicable BENEFIT SCHEDULE, a co-payment sometimes is required for covered charges not incurred through a PPO.

### 4)  Your Responsibility To Identify Preferred Providers

IT IS YOUR RESPONSIBILITY (NOT SKILSTAF'S) TO MAKE SURE THAT YOUR PROVIDER IS A PREFERRED PROVIDER. YOU MUST CHECK WITH EACH PROVIDER (NOT SKILSTAF) REGARDING WHETHER THE PROVIDER IS ACTUALLY A PREFERRED PROVIDER. Receiving services from a preferred provider does *not* guarantee that all charges will be paid according to an applicable BENEFIT SCHEDULE. For example:

Some PPO hospitals may not be staffed by preferred providers.

Some preferred providers may refer services to labs or other providers who are not preferred providers.

## G) HOSPITAL AND MEDICAL BILL AUDIT PROGRAM

Under the HOSPITAL AND MEDICAL BILL AUDIT PROGRAM, a cash incentive is payable to you when you discover and report to the plan administrator before the plan administrator otherwise learns of the overcharge, any overcharge(s) made on your hospital bill or other medical bill (or a covered family member's hospital bill or other medical bill) that amount to $10 or more. The cash incentive is payable if each of the following conditions is met:

1) You circle or otherwise identify each overcharged item on an itemized copy of the bill and send a copy of that bill to the plan administrator so that the plan administrator learns of the overcharge and can identify it to the provider;

2) If the hospital or provider agrees an overcharge has occurred and reduces the bill by the amount of the overcharge; and

3) SkilStaf agrees with the plan administrator's request that SkilStaf pay you 50% of the amount of the overcharge, up to $1,000 per calendar year.

Overcharge(s) made for services never rendered or received are considered under the HOSPITAL AND MEDICAL BILL AUDIT PROGRAM. However, charges for telephone service or calls, television, newspapers, and other similar convenience items or charges are not considered.

The HOSPITAL AND MEDICAL BILL AUDIT PROGRAM does *not* apply to dental benefits or to medical benefits payable for human organ transplants.

If your claim is subject to the provisions of SECTION 11 of the plan, the cash incentive is payable only if this plan is primary.

## H) HUMAN ORGAN TRANSPLANTS

The plan provides medical benefits for human organ transplants for all COVERAGE OPTIONS through an insurance policy issued by the Zurich Insurance Company to SkilStaf. A copy of this policy (Medical Expense Transplant Policy No. 3514634) is attached to this booklet as ATTACHMENT ONE. ATTACHMENT ONE governs organ transplant benefits, and you should refer to ATTACHMENT ONE (not this booklet) for information on issues related to those benefits, including but not limited to the following:

1) the medical benefits available for organ transplants;

2) limitations and exclusions that apply to medical benefits payable for organ transplants;

3) organ transplant pre-certification and treatment approval requirements;

4) filing a claim for medical benefits for organ transplants;

5) effective date of medical benefit coverage for organ transplants; and

6) termination of medical benefit coverage for organ transplants.

NO MEDICAL BENEFITS ARE PAYABLE FOR AN ORGAN TRANSPLANT UNLESS ZURICH LIFE INSURANCE COMPANY PRE-CERTIFIES AND PRE-APPROVES THE TRANSPLANT AS PROVIDED IN ATTACHMENT ONE.

# SECTION 3
## ELIGIBILITY TO PARTICIPATE

**A)    COVERED WORKER ELIGIBILITY**

COVERAGE FOR YOU AND YOUR DEPENDENTS, IF ANY, WILL BE EFFECTIVE AS OF THE DATE INDICATED ON YOUR APPLICATION, PROVIDED THAT YOU SATISFY THE PLAN'S ACTIVE WORK REQUIREMENT AT ALL TIMES, AND PROVIDED THAT YOU COMPLETE AND RETURN YOUR APPLICATION TO THE PLAN ADMINISTRATOR WITHIN THE SPECIFIED TIME LIMITS.

1) **Active Work Requirement**

You must satisfy the active work requirement as a covered worker at all times by working a number of hours equal to at least 75% of the applicable full-time workweek.

2) **Application Requirements**

a) **Application Date**

i) **General Rule**

The effective date is the 1st day of the month that follows your satisfaction of the active work requirement for an entire 90-day period. Coverage for you and all eligible dependents will become effective on your application date, provided that you have met the plan's requirements for submitting a completed APPLICATION within the required time limit.

ii) **Start of Coverage for Newly-Leased and Assigned SkilStaf employees of a SkilStaf client company.**

When the plan becomes effective for a newly-leased and assigned SkilStaf employees of a business or industry at which you render services as a covered worker, then your effective date will be determined under the preceding general rule; however, your effective date will be the same as the plan's effective date for such business or industry, provided that

(A)    you satisfy the active work requirement on the date the plan becomes effective for SkilStaf employees of the business or industry on the basis of service rendered to the business or industry during the immediately preceding 90-day period; and

(B)    within the 30-day period after the plan becomes effective as to the SkilStaf employees of the business or industry you submit acceptable proof to the plan administrator showing that you met the active work requirement during the 90-day period that immediately precedes the plan's effective date for the business or industry.

b) **Application Form**

Prior to your effective date, an APPLICATION will be provided to you.

i) For coverage to be effective on your application date, you must return the application to the plan administrator by the return deadline indicated on the application provided to you,

ii) All dependents who are to be covered by the plan must be identified on the application.

iii) When completing the application, you must choose one of the plan's COVERAGE OPTIONS and its corresponding BENEFIT SCHEDULE. See SECTION 2 of the plan and ATTACHMENTS ONE through FOUR.

iv) When completing an application, you must indicate whether you are enrolling for the DENTAL COVERAGE OPTION. See SECTION 2 of the plan and ATTACHMENT FIVE.

c) **Late Application Date**

Coverage will become effective as of the late application date indicated on the application if you

   i) are late in returning your application to the plan administrator so that coverage is not effective on the application date indicated; or

   ii) you previously declined to enroll yourself and/or a dependent but later choose to complete an application and submit it to the plan administrator.

d) **Satisfaction Of Active Work Requirement On The Application Date**

If coverage is to be effective on your application date (or late application date), but you do not satisfy the active work requirement on your application date (or late application date), coverage will not be effective until the day after the date you meet the active work requirement.

## B)     DEPENDENT ELIGIBILITY

1) **Eligible Dependents**

The following are the dependents who are eligible for coverage under the plan if all application requirements are met:

   a) A covered employee's spouse of the opposite sex;

   b) A covered employee's unmarried child, adopted child, or stepchild under the age of 19;

   c) An unmarried child, adopted child, or stepchild of a covered employee from the age of 19 until that dependent's 24th birthday, if that person is enrolled and regularly attending classes as a full-time student at a school accredited by the State; (The covered worker or eligible dependent must submit to the plan administrator sufficient proof of full-time student status each quarter or semester in order for the plan administrator to consider any medical or dental claims for treatment of such dependent.) not employed on a regular full-time basis, and chiefly dependent on the covered employee for support; and

   d) A covered employee's child, adopted child, or stepchild of any age if mentally or physically incapacitated (as evidenced by a statement of incapacitation from the child's physician) and/or incapable of self-support and chiefly dependent upon the covered worker for support. The incapacity

   i) must occur prior to age 19 (or before age 24 if enrolled and regularly attending classes as a full-time student at a school accredited by the State), and

   ii) the child must not incur, on or after the date of occurrence of the incapacity, a break in coverage exceeding 30 days.

2) **Special Rules for a Covered Employee Married to Another Covered Employee**

   a) If two covered employees are married to each other and are both eligible for coverage under the plan, only one may apply for eligible dependent(s) to be covered.

   b) If two covered employees are married to each other, the Plan will pay or provide the same benefits for any treatment for any one such covered as if that covered employee was not married to another covered employee. It is the responsibility of the participant to present the healthcare provider with the SkilStaf Group Health Plan insurance card pertaining to the employee whose coverage is being accessed for any particular treatment. (For example, a covered employee who has selected Option Four but who also is a covered dependent on a spouse's Option One probably would prefer to present the healthcare provider with a copy of the spouse's insurance card and information. In that case, the Plan would provide benefits according to Option One only, but not also Option Four.)

3) **Applications For Dependents**

    a) **Existing Dependents**

        Existing dependents may apply for coverage at the same time a covered employee submits an application to the plan administrator and completes all other application requirements.

    b) **New Dependents**

        Applications for each new dependent must be completed within 30 days of each the following:

        i)    Your marriage date (for spouse and stepchildren);

        ii)   The date a child is born to you (see MATERNITY AND NEWBORN BENEFITS in SECTION 7 of the plan); or

        iii)  The date a child is placed for adoption purposes ("placed" mean&: the date when legal responsibility is accepted for the adopted child).

        COVERAGE FOR A NEW DEPENDENT WHO APPLIES FOR COVERAGE WITHIN 30 DAYS OF AN EVENT SPECIFIED ABOVE WILL BE EFFECTIVE ON THE DATE OF THE EVENT ITSELF. An APPLICATION must be completed for the dependent to be covered, and such an application is available upon request. IF NO APPLICATION IS SUBMITTED FOR A NEW DEPENDENT WITHIN 30 DAYS OF AN EVENT SPECIFIED ABOVE, COVERAGE WILL BE EFFECTIVE ON THE DEPENDENT'S LATE APPLICATION DATE following the submission of a completed application. The late application date will be specified on the APPLICATION FORM.

    c) **Qualified Medical Child Support Order**
        The plan shall comply with a "qualified medical child support order" as defined by SECTION 13(DEFINITIONS) of the plan.

## C) BENEFIT CHANGE ELECTIONS

1) **Effective Date**

    a)   Unless otherwise specified in this plan regarding a particular benefit, increased benefits or new benefits are effective no later than 70 days following the election of the change. There is no coverage in any case for any increased or new benefit claim incurred before the election of the change.

    b)   Unless otherwise specified in this plan regarding a particular benefit, any decrease in benefits or elimination of any benefits is effective no later than 70 days following the election of the change.

    c)   Unless otherwise specified in this plan, the covered employee must notify the Plan Administrator of any benefit change election within 30 days of any event triggering eligibility to make such a change, or else such eligibility expires.

2) **Mid-Year Election Changes**

    Covered participants generally may not make mid-year changes in elections, although the Plan Administrator may exercise its discretion to allow changes in cases of severe economic hardship or to comply with applicable laws or regulations governing this plan. Covered participants also may make mid-year election changes, subject to the above time restrictions on notification and effective dates, to adjust coverage for the specified individual to correspond directly to the following circumstances:

    a)   The covered employee receives a judgment, decree, or order resulting from a divorce, legal separation, annulment or change in legal custody (including a qualified medical child support order as defined in Section 13 of this Plan) that requires the participant to provide health coverage for the participant's dependent child or dependent foster child or that requires the participant's spouse, former spouse, or other individual to provide coverage thereby enabling the participant to cancel such existing coverage of that dependent child or dependent foster child;

b) The covered employee or covered dependent becomes entitled to coverage under Part A or **Part B** of Title XVIII of the Social Security Act (Medicare) or Title XIX of the Social Security Act (Medicaid) other than for pediatric vaccines;

c) The covered employee taking leave under the Family and Medical Leave Act of 1993 (FMLA) and wishing to change an election for the remaining portion of the leave as may be mandated by the FMLA.

d) The covered employee experiences a qualified change in family or employment status and wishes to make an election change on account of and consistent with a change in any such status that affects eligibility for coverage under this Plan.

   i) The family status changes that qualify for election changes are legal marital status changes and the birth, death, adoption or placement for adoption of a covered employee's dependent child. (See also this section on Applications for Dependents and Section 7 on Maternity and Newborn Benefits.)

   ii) The employment status changes that qualify for election changes are commencement or termination of employment or an unpaid leave of absence.

e) All coverage change elections must be made on account of and consistent with the circumstances or changes described above. (For example, if the change in status is a divorce or death of a covered employee's spouse or dependent child, an attempt to cancel coverage under this Plan for anyone other than the ex-spouse or dependent fails to correspond with that change in status. Likewise, if an employee, spouse, or dependent gains eligibility for coverage under this Plan as a result of a change in legal marital status or employment status, an election change corresponds to the status change only if the election is to start or increase coverage for the affected individual.)

f) Participants may not increase their benefits mid-year nor may participants terminate coverage and then reinstate coverage at a higher benefit option during the same calendar year, except during the open enrollment period. (For example, a participant with Option 2 benefits may not upgrade to Option 1 nor terminate their benefits and re-enroll under Option 1 except during the open enrollment period.)

# SECTION 4
## TERMINATION OF REGULAR COVERAGE

**A)    PLAN TERMINATION**

All Coverage under the plan or coverage for any specific benefits terminates as of the date SkilStaf

1)    terminates all benefits or any such specific benefits under the plan;

2)    discontinues or suspends active business operation;

3)    is placed in bankruptcy (except Chapter 11) or receivership; or

4)    is dissolved, merged with another Company, or acquired by another company, unless specific coverage arrangements are made as part of any such transaction.

**B)    COVERAGE TERMINATION OF COVERED WORKER**

If you are a covered worker, your regular Coverage under the plan will terminate as of the earliest of the following:

1)    the date on which your employment is terminated;

2)    the date you no longer meet the active work requirement;

3)    the date you request termination of coverage;

4)    the date you retire;

5)    the date that follows the last day of coverage for which you or your employer or the SkilStaf client on your behalf made timely payment of a contribution per a policy established by the plan administrator;

6)    the date your Coverage terminates according to the applicable BENEFIT SCHEDULE; or

7)    the date the plan administrator determines that fraud or misrepresentation has occurred in enrollment or in making benefit claims.

Regular Coverage may be reinstated per a written agreement with the plan administrator.  (Coverage is effective on the reinstatement date or as specified in the written agreement.)

**C)    COVERAGE TERMINATION OF COVERED  DEPENDENT**

Regular dependent coverage terminates as of the earliest of the following:

1)    the date coverage terminates for covered worker spouse, covered worker parent, or covered worker step-parent;

2)    the date of failure to satisfy the definition of dependent provided in this booklet; or

3)    the date the plan administrator determines fraud or misrepresentation occurred in application or in making claims.

Regular coverage for a dependent may be reinstated per a written agreement with the plan administrator.  (Coverage is effective on the reinstatement date or as specified in the written agreement.)

# SECTION 5
## COBRA CONTINUATION COVERAGE

---

### A)   NOTICE OF RIGHT TO ELECT CONTINUATION COVERAGE

On April 7, 1986, a federal law was enacted (public Law 99-272, Title X) requiring that most employers sponsoring group health plans offer employees and their families the opportunity for a temporary extension of health coverage (called "continuation coverage") at group rates (plus an administrative fee) in certain instances where coverage under the plan would otherwise end. This notice is intended to inform you of your rights and obligations under the continuation coverage provisions of the law. You should take the time to read this notice carefully.

If you are a covered worker under this plan, you have a right to choose this continuation coverage if you lose your plan coverage because of a reduction in work hours you perform in a covered business or industry or the termination of your employment (for reasons other than gross misconduct on your part).

If you are the spouse of a covered worker, you have the right to choose continuation coverage for yourself if you lose coverage under this plan for ANY of the following four reasons:

1)   The death of your spouse;

2)   A termination of your spouse's employment (for reasons other than gross misconduct) or a reduction in the work hours your spouse performs in a covered business or industry;

3)   Divorce or legal separation from your spouse; or

4)   Your spouse becomes entitled to Medicare.

In the case of a dependent child of a covered worker, he or she has the right to continuation coverage if coverage under this plan is lost for ANY of the following five reasons:

1)   The death of the covered worker;

2)   The termination of the covered worker's employment (for reasons other than gross misconduct) or reduction in the work hours the covered worker performs in a covered business or industry;

3)   The covered worker's divorce or legal separation;

4)   The covered worker becomes entitled to Medicare; or

5)   The dependent ceases to be a "dependent child" under the provisions of this plan.

Under the law, the covered worker or a family member has the sole responsibility to inform the plan administrator of a divorce, legal separation, or a child losing dependent status under this plan within 60 days of the date of the later of the event or the date on which coverage would be lost because of the event. SkilStaf has the responsibility to inform the plan administrator of the covered worker's death, termination, reduction in work hours, or Medicare entitlement. Similar rights may apply to retirees, spouses and dependents if an employer commences a bankruptcy proceeding and those individuals lose coverage.

When the plan administrator is notified that one of these events has happened, the plan administrator will in turn notify you that you have the right to choose continuation coverage. Under the law, you have at least 60 days from the date you would lose coverage because of one of the events described above to inform the plan administrator that you want continuation coverage.

If you do not choose continuation coverage on a timely basis, your coverage under the plan will end.

If you choose continuation coverage and pay the applicable COBRA premium on time, your coverage which, as of the time coverage is being provided, is identical to the coverage provided under the plan to similarly situated covered workers or family members. The law requires that you be afforded the opportunity to maintain continuation coverage for 36 months unless you lost coverage because of a termination of employment or reduction in work hours. In that case, the required continuation coverage period is 18 months. This 18 months may be extended for affected individuals to 36 months from termination of employment if other events (such as a death, divorce, legal separation, or Medicare entitlement) occur during the 18-month period.

In case the continuation coverage last beyond 36 months from the date of the event that originally made a qualified beneficiary eligible to elect coverage. The 18 months may be extended to 29 months if a qualified beneficiary is determined by the Social Security Administration to be disabled (for Social Security disability purposes) at any time during the first 60 days of COBRA coverage. This 11-month extension is available to all individuals who are qualified beneficiaries due to a termination of employment or reduction in work hours. To benefit from this extension, a qualified beneficiary must notify the plan administrator of that determination within 60 days and before the end of the original 18-month period. The affected individual must also notify the plan administrator within 30 days of any final determination that the individual is no longer disabled.

A child who is born to or placed for adoption with a covered worker during a period of COBRA coverage will be eligible to become a qualified beneficiary. In accordance with the terms of this plan and the requirements of federal law, these qualified beneficiaries can be added to COBRA coverage upon proper notification to the plan administrator of the birth or adoption. However, the law also provides that continuation coverage may be cut short for ANY of the following five reasons:

1) SkilStaf no longer provides group health coverage for any covered worker or employee;

2) The premium for continuation coverage is not paid on time;

3) The qualified beneficiary becomes covered -- after the date he or she elects COBRA coverage -- under another group health plan that does not contain any exclusion or limitation with respect to any preexisting condition he or she may have;

4) The qualified beneficiary becomes entitled to Medicare after the date he or she elects COBRA coverage; or

5) The qualified beneficiary extends coverage for up to 29 months due to disability and there has been a final determination that the individual is no longer disabled.

The Health Insurance Portability and Accountability Act of 1996 ("HIPAA") restricts the extent to which group health plans may impose preexisting condition limitations. See SECTION 6 (PREEXISTING CONDITIONS) of this plan. These rules are generally effective for plan years beginning after June 30, 1997. HIPAA coordinates COBRA's other coverage cut-off rule with these new limits as follows:

1) If you become covered by another group health plan and that plan contains a preexisting condition limitation that affects you, your COBRA coverage cannot be terminated.

2) However, if the other plan's preexisting condition rule does not apply to you by reason of HIPAA's restrictions on preexisting conditions, the plan administrator may terminate your COBRA coverage.

You do not have to show that you are insurable to choose continuation coverage. However, continuation coverage under COBRA is provided subject to your eligibility for coverage; the plan administrator reserves the right to terminate your COBRA coverage retroactively if you are determined to be ineligible.

Under the law, you may have to pay all or a part of the premium for your continuation coverage. There is a grace period of 30 days for payment of the regularly scheduled premium.

If you have any questions about COBRA please contact the plan administrator. Also, if you have changed marital status, or you or your spouse have changed addresses, you must notify the plan administrator immediately.

## B)    COBRA NOTICE PERIOD

As permitted by Section 4980B(f) (8) (A) of the Internal Revenue Code and Section 607 (5)(A) of ERISA, the period of COBRA continuation coverage under the plan commences as of the date on which coverage is lost.

As permitted by Section 4980B(f) (8) (B) of the Internal Revenue Code and Section 607 (5) (B)of ERISA, the applicable notice period under the plan for purposes of COBRA continuation coverage under Section 980B(f)(6)(B) of the Internal Revenue Code and ERISA Section 606(a)(2) commences as of the date on which coverage is lost.

## SECTION 6
## PREEXISTING CONDITIONS

**A) DEFINITION**

A "preexisting condition" is any condition (except pregnancy), regardless of the cause of the condition, for which medical advice, diagnosis, care, or treatment was received and/or recommended, during the six-month period ending on the effective date (or late effective date) of a covered person under this plan.

**B) WAITING PERIOD**

A preexisting condition is covered only after you are continuously covered during the twelve-month waiting period that begins as of your effective date (or eighteen-month waiting period in the case of a late application date).

A preexisting condition waiting period will not be applied to a newborn child or a child under age 18 who is adopted or placed for adoption, provided the child becomes covered in accordance with plan rules within 30 days of birth, adoption, or placement for adoption.

The twelve month (or eighteen month) preexisting condition waiting period may be reduced by your prior health insurance coverage under another plan. If you previously were covered under another plan, you must request that plan to issue a "certificate of creditable coverage" pursuant to the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"). The length of your coverage under the other plan may be used to reduce (or eliminate) the preexisting condition waiting period under this plan if:

1) your coverage under the other plan is "creditable coverage" under HIPAA (individual health plan, group health plan, COBRA, Medicare/Medicaid, U.S. Military, Champus, Federal Employee Program, Indian Health Service, Peace Corps Service, a State risk pool, or a public Health service), and

2) your break in coverage under the other plan does not exceed 63 days.

See SECTION 5 (COBRA CONTINUATION COVERAGE) for an explanation of how HIPAA may affect your continuation coverage under COBRA.

## SECTION 7
## MEDICAL BENEFITS

ALL MEDICAL BENEFITS REFERRED TO IN THIS SECTION 7 ARE SUBJECT TO THE
TERMS AND LIMITATIONS OF THE PLAN'S SCHEDULE OPTIONS 1 THROUGH 4

### A) HOSPITAL BENEFITS

1) **Room and Board**

   Medical benefits are payable with respect to covered charges incurred due to hospital confinement or confinement in a hospital's intensive care or coronary care room.

2) **Miscellaneous Hospital-Provided Services and Supplies**

   a) Medical benefits are payable for miscellaneous services and supplies provided by the hospital while you are hospital-confined, including medication ordered by a physician.

   b) Medical benefits are payable for physician visits while you are hospital-confined, except for physician charges that are directly related to surgery.

   c) Medical benefits are payable for charges for radiology services, pathology services, x-ray exams, lab tests, x -ray therapy, radon therapy, radium therapy, and radioactive isotope therapy, provided that a physician has ordered such service(s), exam(s), test(s), or therapy(ies) while you are hospital-confined.

3) **Outpatient Services Provided By Hospital**

   a) Medical benefits are payable for pre-admission testing that is performed within the 7 -day period immediately preceding hospital confinement, if the test(s) are acceptable to the treating physician in lieu of test(s) while hospital confined. Pre-admission testing is covered even if the results are negative, no bed is available, or the physician prescribes other treatment.

   b) Medical benefits are payable for emergency outpatient treatment of an accidental injury or a sudden and unexpected medical condition including, but not limited to, a heart attack, cardiovascular accident, poisoning, or loss of consciousness or breathing. The applicable BENEFIT SCHEDULE limits the medical benefits payable for hospital emergency room services and supplies.

   c) Medical benefits are payable for chemotherapy, inhalation therapy, or radiation therapy ordered by your physician and which is regularly scheduled at a hospital outpatient facility.

   d) Medical benefits are payable for non-emergency outpatient surgery ordered by your physician.

   e) Please note that COVERAGE OPTION FOUR provides no coverage for outpatient hospital service charges, UNLESS outpatient hospital service charges are incurred with regard to kidney dialysis, radiation treatment, or chemotherapy.

### B) OUTPATIENT SURGICAL FACILITY BENEFITS

Medical benefits are payable for covered charges incurred when surgery is performed at an outpatient surgical facility. Coverage is provided for surgical services performed by the treating physician and for miscellaneous services and supplies provided by the facility in connection with the performance of the surgical procedure. Covered charges also include charges for x-rays and lab tests and radiology and pathology services. Medical benefits are payable whether charges are billed directly by the facility and/or the physician.
Please note that COVERAGE OPTION FOUR provides no coverage for outpatient surgical facility charges.

### C) OUTPATIENT X-RAY AND LAB BENEFITS

Medical benefits are payable for covered charges incurred for x -ray and diagnostic lab procedures, including non-routine pap smears and mammograms, that are performed while you are not hospital confined and which are ordered by your physician. Payable medical benefits include the covered charges incurred in connection with interpretation of these tests or

studies.  Medical benefits also are payable for covered charges incurred for x-ray, radium, and radioactive isotope therapy that is ordered by your physician and performed while you are not hospital confined.

Please note that COVERAGE OPTI0N FOUR provides no coverage for outpatient x-ray and lab charges.

## D) SURGERY AND ANESTHESIA SERVICES

Medical benefits are payable for covered charges incurred when a physician renders surgical services (including post-operative care) and/or when a physician administers anesthesia.

PPO and non-PPO covered charges for surgery/anesthesia include the maximum allowable charge for a major procedure and 50% of the maximum allowable charge for each other simultaneously performed procedure, but do *not* include charges for simultaneously performed incidental surgical procedures, such as an appendectomy performed during gall bladder surgery.

PPO and non-PPO benefits payable for the services of an assistant surgeon are limited to 50% of the usual, customary or reasonable fee for the procedure.

Charges for heart valve replacement, implantable prosthetic lenses for cataracts, and prosthetic bypass or replacement vessels are covered charges.

The only covered charges for oral surgery are those incurred with respect to the following procedures:

1) Excision of tumors and cysts of the jaws, cheeks, lips, tongue, roof and floor of the mouth when the conditions require a pathological exam;

2) Surgery required to correct accidental injury of the jaws, cheeks, lips, tongue, roof and floor of the mouth;

3) Reduction of fractures and dislocation of the jaw;

4) External incision and drainage of cellulitis;

5) Incision of accessory sinuses, salivary glands or ducts; and

6) Frenectomy (cutting the midline tongue tissue).

Please note that COVERAGE OPTION FOUR covers only those physician charges incurred with regard to kidney dialysis, radiation treatment, or chemotherapy.

## E) PREVENTIVE CARE

Medical benefits for preventive care are payable for the following covered charges:

1) One annual, routine physical examination conducted by a physician;

2) Well child physician office visits for the second month, fourth month, sixth month, ninth month, twelfth month, fifteenth month, eighteenth month, and twenty fourth month of a dependent child's life;

3) Routine immunizations to prevent diphtheria, tetanus, pertussis, polio, rubella, mumps, measles, Hib (meningitis, epiglottitis, and joint infections), hepatitis B, and chicken pox;

4) One baseline mammogram for ages 35-39 and one mammogram per year for age 40 and older;

5) One routine annual pap smear; and

6) One annual prostate specific antigen test for age 40 and older.

Please note that COVERAGE OPTION FOUR provides no coverage for preventive care medical benefit charges.

**F) AMBULANCE BENEFITS**

Charges for emergency transportation (including air ambulance charges) to the nearest hospital by a professional ambulance service are covered charges when incurred in connection with a covered charge for which medical benefits are payable.

When an injury or sickness requires special care not available at a local hospital, ambulance transfer to the nearest hospital that can provide the care is a covered charge.

**G) SKILLED NURSING FACILITY BENEFITS**

Medical benefits are payable when you are confined to a skilled nursing facility due to an injury or sickness covered by the plan. Covered charges include room and board, routine services, and skilled nursing care.

Confinement in the skilled nursing facility must begin within seven days immediately following hospital or like facility confinement of at least 5 consecutive days.

Your condition must require skilled nursing care, your treating physician must certify the facility of confinement, and you must continue to be under a physician's care while confined.

Please note that COVERAGE OPTION FOUR provides no coverage for skilled nursing facility confinement charges.

**H) HEALTH CARE BENEFITS**

Home health care is a covered charge under COVERAGE OPTIONS ONE, TWO and THREE. Care must begin within fourteen days after discharge from hospital or skilled nursing facility confinement. Your treating physician must certify the care in lieu of hospital or skilled nursing facility confinement.

The home health care services and supplies are covered charges when provided at your home.

Home health care services must be rendered by a licensed provider who is not a family member and provided under an established home health care plan.

Please note that COVERAGE OPTION FOUR provides no coverage for home health care charges.

**I) HOSPICE CARE BENEFITS**

Hospice care is a covered charge under COVERAGE OPTIONS ONE, TWO and THREE when provided in lieu of all other care to treat a terminal sickness. A terminal sickness is a sickness that results in death in 6 months or less. The facility or agency providing care must be licensed on its own or as part of another facility and operate under the direction of a physician. The facility must meet standards of the National Hospice Organization.

Hospice Care must be furnished in a licensed facility or in your home. Your physician must certify the care, the care must be agreed upon in writing by your physician and the agency or facility, and the care must meet your medical and social needs.

When hospice care is provided in lieu of all other care to treat a terminal sickness, covered charges include room and board at a hospice facility, services and supplies at a facility or in your home, part-time nursing care and home health aide services up to 8 hours a day, consultation and case management services by a physician, physical therapy services, medical supplies, and prescribed drugs and medicines. The following are NOT covered charges:

1) Private or special duty nursing care other than for pain control or to manage acute or chronic symptoms;

2) Funeral arrangements;

3) Financial or legal counseling;

4) Homemaker or housekeeping services;

5) Voluntary services that are otherwise free; and

6) Counseling by your church pastor or minister.

Please note that COVERAGE OPTION FOUR provides NO coverage for hospice care charges.

## J) MATERNITY AND NEWBORN BENEFITS

### 1) Maternity Benefits

Medical benefits are payable for covered charges incurred for normal pregnancy and resulting childbirth for a covered worker or a covered dependent spouse.

The medical benefits include covered charges for a caesarean section; voluntary sterilization of the mother following delivery and during the same hospital stay; and for treatment of complications of pregnancy. The medical benefits are payable on the same basis as for any covered sickness or injury.

### 2) Newborn Benefits

#### a) Newborn Well Baby Care

Newborn well baby care includes charges incurred for hospital nursery room, board, miscellaneous services and supplies, physician charges for circumcision, and routine exam of the child before release from the hospital.

#### b) Newborn Sick Baby Care

A newborn is covered for sick baby care and sick child treatment until age 18, including charges for injury and sickness, care to treat diagnosed birth defects, congenital anomalies, and abnormalities if diagnosed by age two.

#### c) Enrollment

For medical benefits to be provided beyond the days indicated in the applicable BENEFIT SCHEDULE, you must enroll the child per SECTION 3 of this plan. Failure to follow enrollment procedures may result in denial of further medical benefits for the newborn child.

### 3) Federal Legal Requirements

Group health plans and health insurance issuers generally may not, under Federal law, restrict benefits for any hospital length of stay in connection with childbirth for the mother or newborn child to less than 48 hours following a vaginal delivery, or less than 96 hours following a cesarean section. However, Federal law generally does not prohibit the mother's or the newborn's attending provider, after consulting with the mother, from discharging the mother or her newborn earlier than 48 hours (or 96 hours following a cesarean section). In any case, plans and issuers may not, under Federal law, require that a provider obtain authorization from the plan or the issuer for prescribing a length of stay not in excess of 48 hours (or 96 hours for a cesarean section). This plan shall comply with the requirements of Federal law.

## K) REHABILITATION AND PHYSICAL AND CHIROPRACTIC THERAPY BENEFITS

### 1) Outpatient Physician Services

Services by a licensed, qualified physician are covered when they are for therapeutic restoration of an abnormal function of the nerve and/or muscle and/or spinal system by manipulation of structures of the human body.

Covered charges include, but are not limited to, charges for manipulation as treatment for structural imbalance, distortion, dislocation, displacement, or subluxation of vertebrae of the spinal column and x-rays.

The charges must be incurred when you are not hospital confined.

The charges are covered charges only when you are able to actively participate in such therapies and there is documented continuous physical improvement.

Please note that COVERAGE OPTION FOUR provides no coverage for outpatient physician charges for rehabilitation and physical therapy services.

2)  **Inpatient Rehabilitation Services**

Medical benefits are payable for covered charges incurred for services and treatment provided while hospital confined in a Joint Commission Accreditation of Hospitals Organization (JCAHO) or Commission Accreditation of Rehabilitation Facilities (CARF) accredited facility for physical restoration of function following a covered injury or sickness. Such services and treatment include

a)  acute rehabilitation while hospital confined for a condition that requires intensive, interdisciplinary rehabilitation appropriate for an acute level of care, or

b)  sub-acute rehabilitation while hospital confined for a condition that required therapeutic intervention.

Services for physical rehabilitation while hospital confined are covered charges only when you are able to actively participate in such programs and there is documented continuous physical improvement.

Please note that COVERAGE OPTION FOUR provides no coverage for inpatient rehabilitation services.

3)  **Outpatient Physical Therapy Services And Treatment**

Outpatient physical therapy services and treatment by a licensed, qualified physical therapist, occupational therapist, or speech pathologist are covered only when ordered by the treating physician.

Services and treatment must be rendered for acute, traumatic injury or physical functional defect caused by a covered injury or sickness.

Services for outpatient physical therapy are covered charges only when you are able to actively participate in such therapies and there is documented continuous physical improvement.

Please note that COVERAGE OPTION FOUR provides no coverage for outpatient physical therapy services and treatment.

4)  **Chiropractic Services**

For services provided by a physician who is a chiropractor, an annual limit of $1,000 applies per covered person as to PPO and non-PPO benefits, with outpatient physician services and x-ray costs to be included when computing the $1,000.

## L) PRESCRIPTION DRUG BENEFITS

1)  **Participating Pharmacy Drug Charges**

The Plan has or may contract with third parties to reduce fees for covered prescription drugs according to a recognized or published formulary.  Upon enrollment, you will receive a PRESCRIPTION DRUG CARD to be used at participating pharmacies. If a drug is purchased from a non-participating pharmacy (or from a participating pharmacy when a PRESCRIPTION DRUG CARD is not used), the full price will be charged.

2)  **Covered Prescription Drugs**

A drug is covered if prescribed by a physician (when a prescription is required by applicable law), except for injectables (other than insulin prescribed by a physician). A compounded prescription containing at least one prescription ingredient in a therapeutic quantity is covered. Medical benefits are **NOT** PAYABLE for any of the following:

a)  A charge excluded under the provisions of this plan;

b)  A drug or medicine that can legally be bought without a written prescription (this does not apply to injectable insulin);

c)  Devices of any type, even though such devices may require a prescription (this includes, but is not limited to, therapeutic devices, artificial appliance, braces, support, garments, or any similar device);

d)  Immunization agents or biological sera;

e)  A drug or medicine labeled: "Caution -limited by federal law to investigational use";

f)  Experimental drugs and medicines;

g)  Any charge for the administration of a covered prescription drug;

h)  Any drug or medicine that is consumed or administered at the place where it is dispensed;

i)  A drug or medicine that is to be taken by a covered person, in whole or in part, while hospital confined (this includes being confined in any institution that has a facility for the dispensing of drugs and medicines on its premises);

j)  A charge for prescription drugs which may be properly received without charge under local, state or federal programs;

k)  A charge for hypodermic syringes and/or needles, injectables or any prescription directing administration by injection (other than insulin);

l)  RU-486 or any other pregnancy-terminating or abortion-inducing drugs.

m)  A charge for prescription drugs for smoking cessation (such as nicotine gum);

n)  A charge for smoking deterrent patches;

o)  A charge for infertility medication;

p)  A charge for contraceptives or contraceptive materials;

q)  The difference in cost between a generic and name-brand prescription drug is not covered if name-brand is received when a generic is available; and

r)  Drugs such as Viagra, Muse, Cialis or any other medications prescribed for or used in the treatment of male impotency or erectile dysfunction or similar or comparable conditions affecting males or females.

## M) MISCELLANEOUS EXPENSE BENEFITS

Medical benefits are payable under COVERAGE OPTIONS ONE, TWO, and THREE for covered charges incurred with respect to the following:

1)  Oxygen and rental of equipment for its administration, including IPPB (Intermittent Positive Pressure Breathing) equipment;

2)  Devices (except for artificial organs) implanted by surgery into a body cavity to aid the function of an internal organ, subject to the second surgical opinion procedures contained in SECTION 8 of the plan;

3)  Rental (but not repairs) of a non-motorized wheelchair, hospital bed, or other durable medical equipment, not to exceed the total purchase price of the item (the item is only covered if it is needed for therapeutic use, can withstand repeated use, is normally used only for medical reasons to treat an injury or sickness);

4)  Initial prosthesis for replacement of a natural limb or eye lost while covered by the plan or replacement due to pathological change (repairs to the prosthesis are not covered);

5)  Initial replacement of natural teeth lost due to an injury that happens while you are covered by the plan (such replacement cost is covered if incurred within six (6) months of the accident);

6)  Casts (other than impressions), surgical dressings, trusses, splint and braces (other than orthodontic braces and splints to the teeth) and crutches when prescribed or ordered by a physician;

7)  Initial contact lenses or eyeglasses after cataract surgery, if they are prescribed by a physician and the surgery is performed while you are covered under the plan; and

8)  Treatment at an urgent care center for accidental injury or sickness is covered the same as an office visit.

Medical benefits are payable under COVERAGE OPTION FOUR for covered charges incurred with respect to the following:

1)  Oxygen and rental of equipment for its administration during confinement in a hospital, including IPPB (Intermittent Positive Pressure Breathing) equipment used during the confinement;

2)  During hospital admittance and subject to the second surgical opinion procedures contained in SECTION 8 of the plan, devices (except for artificial organs) surgically implanted into a body cavity to aid the function of an internal organ, provided that the implantation occurs during hospital confinement;

3)  Rental (but not repairs) of a non-motorized wheelchair, hospital bed, or other durable medical equipment, not to exceed the total purchase price of the item (the item is covered only to the extent it is needed for therapeutic use, can withstand repeated use, is normally used only for medical reasons to treat an injury or sickness, and is used during hospital confinement);

4)  Initial prosthesis for replacement of a natural limb or eye lost while covered by the plan or replacement due to pathological change (repairs to the prosthesis are not covered), provided that the replacement occurs during hospital confinement; and

5)  Casts (other than impressions), surgical dressings, trusses, splint and braces (other than orthodontic during hospital confinement.

## SECTION 8
## PRE-CERTIFICATION AND
## SECOND SURGICAL OPINION PROCEDURES

---

**A) PRE-CERTIFICATION PROCEDURES**

**1) NON-EMERGENCY HOSPITAL ADMISSION**

A non-emergency stay in a hospital is one that can be scheduled in advance. Before the admission of a covered person to a hospital on a non-emergency basis, the utilization review administrator will, in conjunction with the attending physician, pre-certify the care as covered by the plan. Either the covered person (or a representative of the covered person) must contact the utilization review administrator by telephone AT LEAST 5 DAYS BEFORE services are scheduled to be rendered and provide the following information:

a) The name of the covered person, the name of the person making the telephone call, and the covered person's relationship to the person making the telephone call;

b) The name, social security number, and address of the covered person;

c) The name of the covered business or industry to which the covered worker renders services;

d) The name of the hospital, proposed date of admission, and proposed length of stay; and

e) The diagnosis and/or type of surgery.

**2) EMERGENCY HOSPITAL ADMISSION**

If there is an emergency admission to a hospital,

a) you, the hospital, the treating physician, or a person acting as your representative must contact the utilization review administrator WITHIN 2 WORKING DAYS AFTER the admission date, and

b) provide the same information required above for a non-emergency hospital admission.

**3) UTILIZATION REVIEW ADMINISTRATOR**

Contact information for the utilization review administrator is provided on the back of your HEALTH CARE COVERAGE CARD. Contact information also is available from the plan administrator upon request. The utilization review administrator will determine the number of days of hospital confinement authorized for medical benefit payment.

**4) FAILURE TO FOLLOW PRE-CERTIFICATION PROCEDURES**

**FAILURE TO FOLLOW PRE-CERTIFICATION PROCEDURES WILL REDUCE THE MEDICAL BENEFITS PAYABLE UNDER THE PLAN AS FOLLOWS:**

a) The medical benefits payable as to each covered charge will be reduced by 50%, but the reduction in medical benefits will not exceed $2,000 per covered charge.

b) The amount of out-of-pocket payments due as a result of a failure to follow pre-certification procedures will not be recognized when maximum out-of-pocket payments are computed under the applicable BENEFIT SCHEDULE.

5)   **CONCURRENT REVIEW AND DISCHARGE PLANNING**

Concurrent review of a course of treatment and planning for discharge from a hospital are part of the pre-certification procedures. The utilization review administrator will monitor the hospital stay and use of medical services. The utilization review administrator will coordinate with you, your treating physician, and the hospital regarding

a)   a discharge time,

b)   an extension of the hospital stay, or

c)   an extension of the use of other medical services.

If in the opinion of the treating physician it is medically necessary for you to have additional services or to remain in the hospital for a greater length of time than has been pre-certified, the treating physician must request the additional length of stay or services.

6)   **DENTAL COVERAGE OPTION**

The foregoing pre-certification procedures apply only to medical benefits. They do not apply to dental benefits.

## B)   SECOND SURGICAL OPINION PROCEDURES

1)   **Request For Second Surgical Opinion**

A second surgical opinion is a written report prepared by a physician at the request of either the plan administrator or a covered person after and based upon an examination of the covered person that is made for the purpose of evaluating the medical advisability of having the covered person undergo a surgical procedure.

If a second surgical opinion is requested, it will be obtained after the covered person's treating physician has prescribed the surgical procedure but before the surgical procedure is actually performed.

The physician who furnishes the second surgical opinion must not be financially associated with the treating physician who prescribed the surgical procedure.

In the absence of a third surgical opinion, the second surgical opinion shall be conclusive as to whether the surgical procedure will be performed.

2)   **Request For Third Surgical Opinion**

A third surgical opinion means a written report prepared by a physician at the request of either the plan administrator or the covered person after and based upon an examination of the covered person that is made for the purpose of evaluating the medical necessity of having such covered person undergo a surgical procedure. A third surgical opinion is available only if the first two opinions differ as to the necessity of such a surgical procedure.

The examination must be performed after the second surgical opinion has been rendered but before the surgical procedure is actually performed.

The physician who furnishes the third surgical opinion must not be financially associated with either the covered person's treating physician or the physician who rendered the second surgical opinion.

The third surgical opinion shall be conclusive as to whether the surgical procedure will be performed.

3)   **Payment**

SkilStaf shall pay all of the costs associated with a second surgical opinion and/or a third surgical opinion that is requested by the plan administrator.

If the covered person requests a second surgical opinion and/or a Third Surgical Opinion, then medical benefits shall be payable under the terms and conditions of the plan.

4)  **Failure To Obtain Second Or Third Surgical Opinion**

**FAILURE TO COMPLY WITH THE PLAN ADMINISTRATOR'S REQUEST FOR A SECOND SURGICAL OPINION OR A THIRD SURGICAL OPINION WILL REDUCE THE MEDICAL BENEFITS PAYABLE UNDER THE PLAN AS FOLLOWS:**

a)  medical benefits payable as to each covered charge incurred in connection with the surgery will be reduced by 50%, but the reduction in medical benefits will not exceed $2,000 per covered charge.

b)  The amount of out-of-pocket payments due as a result of a failure to comply with the plan administrator's request will not be recognized when maximum out-of-pocket payments are computed under the applicable BENEFIT SCHEDULE.

5)  **DENTAL COVERAGE OPTION**

The foregoing second (and third) surgical opinion procedures apply only to medical benefits.  They do not apply to dental benefits.

# SECTION 9
## MEDICAL BENEFIT
## LIMITATIONS AND EXCLUSIONS

### A)  LIMITATIONS AND EXCLUSIONS

MEDICAL BENEFITS ARE **NOT** PAYABLE (OR ARE LIMITED AS DESCRIBED BELOW) WITH REGARD TO THE FOLLOWING:

1)  Services, expenses, or supplies that the plan administrator determines are not medically necessary.

2)  Charges in excess of the maximum allowable charge when using PPO and non-PPO providers.

3)  Charges related to hospitalization before you become covered under the plan. If you are admitted to a hospital or skilled nursing facility as a registered inpatient before the date you become covered, the plan will not cover any part of your stay in that hospital or skilled nursing facility, or medical services related to that stay regardless of whether the services were rendered before or after you became covered.

4)  Services, care, or treatment you receive after the date your coverage ends.  This means, for example, that if you are in the hospital when your coverage ends, this plan will not pay for any more hospital days.  the plan does not insure against any condition such as pregnancy or injury.  The plan provides benefits only for services and expenses furnished while this plan is in effect. .

5)  Any charges incurred after regular coverage under the plan has terminated, unless coverage is continued under COBRA (see SECTION 5 of the plan).

6)  Cosmetic or plastic surgery, unless for reconstruction caused by covered injury or sickness.  Unless otherwise required by SECTION 6 (PREEXISTING CONDITIONS), covered charges are payable only if

    a)  the injury or sickness is first diagnosed while you are covered by the plan, and

    b)  is incurred while you are covered by the plan.

With respect to medical benefits payable for elective plastic surgery after a medically necessary mastectomy, medical benefits are payable for reconstruction of the breast on which the mastectomy has been performed, surgery and reconstruction of the other breast to produce a symmetrical appearance, prostheses, and treatment of physical complications of all stages of the mastectomy procedure, including lymphedemas.  However, medical benefits are not payable in connection with elective breast augmentation procedures, elective breast reduction procedures, elective mastectomy procedures, and treatments that are not medically necessary.  Complications or later surgery related in any way to cosmetic surgery is not covered, even if medically necessary, if caused by an accident, or if done for mental or emotional relief.

7)  Preexisting conditions, as defined in SECTION 6 (PREEXISTING CONDITIONS) of the plan; however, HIPAA may require coverage as explained in SECTION 6.

8)  Medical care or services received while you are outside the United States (if you expect to travel outside the United States, you should make arrangements with an insurance company or through a travel agent for other health insurance coverage during your travel).

9)  Therapeutic restoration of an abnormal function of the nerve system and body structures through acupuncture, acupressure, hypnotherapy, or massage therapy.

10)  Biofeedback services.

11)  Service and supplies that are

    a)  not rendered within the scope of a physician's license;

    b)  provided by a family member or someone who resides with you;

    c)  paid by an association or foundation;

d)  provided by an educational institution as required by law; or

e)  not recommended and approved by a physician.

12) Unless otherwise required by law, services and supplies furnished by a government plan, hospital, or institution (if you are legally required to pay for the services, then they are covered under the plan);

13) Services that would be provided free of charge if you did not have coverage under the plan or that are rendered after your coverage under the plan is terminated.

14) Charges incurred due to

a)  committing or attempting to commit a civil or criminal assault, battery or felony; taking part in a riot (meaning taking an active part in common with three (3) or more others by using or threatening to use force or violence without authority of law); or

b)  attempted suicide or intentional self-inflicted injury while sane or insane.

15) Unless otherwise required by law, charges incurred due to injury and sickness caused by an act of declared or undeclared war; service in the military forces of any country, including non-military units supporting such forces.

16) Charges for injury or sickness occurring during or arising from your performance of service in a covered business or industry or payable under worker's compensation or an occupational disease act or law.

17) A drug, device, medical treatment or procedure that is experimental or investigative.

18) Service and supplies rendered to treat hair loss or to promote hair growth, including but not limited to hair transplants and wigs.

19) Treatment for chewing injuries, dental implants, and basic, major or orthodontic dental treatment.

20) Treatment for any jaw joint problem, including craniomaxillary or craniomandibular condition of the joint linking the jaw bone to the skull, myofacial pain syndrome, and all related conditions.

21) Orthognathic reconstructive surgery.

22) Treatment of temporomandibular joint dysfunction (TMJ).

23) Marriage, family, or relationship counseling or sex therapy.

24) Instructional or educational programs including but not limited to health or nutritional counseling, childbirth classes, or vocational training/testing.

25) Items or devices not requiring a physician's prescription, or primarily used for comfort or convenience, including but not limited to air purifiers, humidifiers, dehumidifiers, whirlpools, air conditioning, waterbeds, exercise equipment, ultraviolet lighting, toilet seats, or shower chairs.

26) Custodial care, services or supplies to assist in daily living needs not necessary to recover from an injury or sickness, including

a)  private duty services of a health care provider, and

b)  programs, treatment, and services relating to community re-entry, transitional living, residential, school-based or vocational programs.

27) The difference between hospital charges for a private room and the hospital's most common charge for semi-private accommodations, unless a semi-private room is unavailable or the plan administrator determines a private room to be medically necessary.

28) Emergency room care other than for an emergency.

29) Services or expenses for which a claim is not properly submitted to the plan administrator or for which follow-up information necessary to determine coverage eligibility is not provided to the plan administrator.

30) Treatment for weight loss or exogenous or morbid obesity, including but not limited to gastric bypass, gastric stapling or gastric balloon catheterization, liposuction or reconstructive surgery.

31) Treating or testing for learning disabilities or developmental disorders.

32) Testing or training for education or vocation.

33) Speech therapy including evaluation and treatment for other than acute traumatic injury or physical defect of swallowing.

34) Treatment, surgery, or supplies (including but not limited to orthopedic shoes, shoe inserts, strapping and other supportive devices) for

    a)    bony protuberances of the forefoot and toes, including misalignment of the same (for example, bunions, heel spurs, and hammer toes);

    b)    strained or flat feet, instability or imbalance of the feet or ankles; or

    c)    corns, calluses or toenails (including cutting or removal, unless it is medically necessary due to diabetes or other similar disease).

35) Sclerotherapy for the treatment of varicose veins of the extremities.

36) Artificial insemination, in-vitro or in-vitro fertilization testing, treatment or medication for the primary purpose of achieving conception.

37) Reproductive dysfunction testing, treatment or medication or impotency testing, treatment or medication, including all services and supplies.

38) Elective abortion and birth control methods, devices, supplies or pills.

39) Gender reassignment procedures (sex change operations) or complications therefrom.

40) Voluntary sterilization, unless otherwise provided in this booklet.

41) Reversal of sterilization and fertility testing and services and treatment.

42) Procedures performed in-utero.

43) More than one annual physical exam and services related to it, including but not limited to x-ray and lab expenses when rendered for your job, school, travel, immigration or to buy insurance.

44) Drugs and medicines not prescribed by a physician or that are not required to have a written prescription.

45) Vitamins, fluorides, growth hormones (regardless of whether prescribed by a physician), and nutritional supplements.

46) Routine eye exams, charges for corrective lenses (including contact lenses, eyeglasses and their fitting), radial keratotomy, corneal modulation, refractive keratoplasty or any similar procedure or vision therapy (including eye exercises).

47) Any expense, demand or other obligation resulting from or arising out of any tax or similar assessment, interest, or penalties (federal or state) which are or would have been levied on any charges or fees.

48) Diet, health, exercises, nicotine addiction treatment or smoking cessation programs, health club dues, or weight reduction clinic charges.

49) Services or expenses for personal hygiene, comfort or convenience items such as air conditioners, humidifiers, whirlpool baths, and physical fitness or exercise apparel. Exercise equipment is also excluded. Some examples of exercise equipment are shoes, weights, variable resistance machinery, exercise bicycles, tracks or rowing machines, mid equipment producing isolated muscle evaluations and strengthening. Treatment programs, the use of equipment to strengthen muscles according to preset rules, and related services performed during the same therapy session also are excluded.

50) Services or expenses for physical therapy which does not require a licensed physical therapist, given the level of simplicity and the patient's condition, will not further restore or improve the patient's bodily functions, or is not reasonable as to number, frequency or duration.

51) An expense for which no medical benefit is specifically described in this booklet or an amendment attached to this booklet, or benefits, services, or conditions that are specifically identified as excluded by the plan.

52) Routine hearing exams, hearing aids and their fitting, apart from routine hearing exams on newborns.

53) Unless otherwise required by binding applicable law or regulations, treatment of alcoholism, drug abuse, and mental or nervous disorders as classified in the most current edition of the American psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, including but not limited to anorexia nervosa, bulimia, schizophrenia, panic disorder, attention deficit disorder, bipolar disorder, and depressive disorders (for example, manic depression).

54) Except as otherwise provided in any applicable, attached Organ Transplant Policy, expenses incurred in connection with any human organ or tissue transplant, including, but not limited to, kidney, heart, lung, bone marrow, liver, heart/lung, pancreas, peripheral stem cell, and cornea transplants. Any such expenses are only covered, if at all, to the extent covered by the provisions of any such applicable and effective Organ Transplant Policy and only provided or insured by the insurer or carrier of such policy, but not by the policyholder or certificate holder. Neither this Plan, the Plan Sponsor, nor the Plan Administrator shall bear any liability or obligation regarding any such benefits or expenses, regardless of the benefits or expenses which might or might not be covered or provided by any such effective Organ Transplant Policy.

55) Blood products storage when not necessary or not in conjunction with a scheduled covered surgery or blood products that are replaced by donation.

56) Charges for procurement, storage, or administration of donated blood or any extra charges associated with designated blood donation.

57) Charges for medical reports or for provider appearances at hearings or court proceedings.

58) Services and supplies (including, but not limited to splints and braces) prescribed or rendered solely to allow for participation in any sports related activity or solely for maintaining a muscle, bone, or joint function.

59) Charges with respect to which you would be entitled to coverage under Medicare, whether or not you properly made application or submitted claims to obtain the Medicare coverage; however, this exclusion shall not apply when it would be contrary to federal law (including, but not limited to, the Social Security Act's Medicare secondary payer rules that are codified in Section 1395(y) of Title 42 of the United States Code).

**B)   BENEFIT SCHEDULE LIMITATIONS**

In addition to the exclusions and limitations listed above in SECTION 9, limitations on medical benefits are contained in the plan's BENEFIT SCHEDULES. The BENEFIT SCHEDULES are included in this booklet as Coverage Options.

# SECTION 10
## DENTAL COVERAGE OPTION

### A)  APPLICATION

You may apply for yourself and your dependent(s) for the DENTAL COVERAGE OPTION according to the procedures explained in SECTION 3 (ELIGIBILITY TO PARTICIPATE) of the plan or according to any dental option application procedures adopted by the plan administrator and made available to all participants.  For purposes of the dental coverage option only, application for coverage of a new dependent shall be considered timely if received on or before the dependent's fifth birthday.

1)  **Late Application**

If coverage becomes effective on a late application date, the following coverage rules will  apply:

a)  Coverage will be limited to coverage for Preventive Dental Services for 12 consecutive months following the late application date;

b)  Coverage will be limited to coverage for Preventive Dental Services and Basic Dental Services during the 12-month coverage period that follows the initial 12 months during which there was coverage only for Preventive Dental Services; and

c)  A dependent child will not be eligible for Dependent Child Orthodontic Benefits until he or she has been covered by the plan for 24 consecutive months.

2)  **Covered Worker Contributions**

For coverage to be effective, required covered worker contributions must be made per a policy established by the plan administrator (such policy shall be considered part of this plan).

3)  **Termination of Coverage**

Coverage terminates in accordance with SECTION 4 (TERMINATION OF REGULAR COVERAGE) of the plan

4)  **Dependent Child Orthodontic Services**

If a dependent child's coverage under the plan terminates, benefits for Dependent Child Orthodontic Benefits are payable only for covered charges incurred while coverage was effective. However, if coverage terminates SOLELY because the dependent turns age 19, then benefits will remain payable IF

a)  the appliance or bands were installed prior to the 19th birthday,

b)  orthodontic treatment continues, and

c)  covered worker coverage under the plan remains in force.

5)  **COBRA**

Continuation rights Under COBRA are explained in SECTION 5 (COBRA CONTINUATION COVERAGE) of the plan.

### B)  GENERAL WAITING PERIOD

Coverage for Major Dental Services and Dependent Child Orthodontic Benefits will not be effective until the plan coverage has been effective for 12 consecutive months.

## C) DENTAL BENEFITS PAYABLE

1) **Conditions For Benefit Payment**

a) Covered charges will not exceed the maximum allowable charge.

b) Services or treatment must be

    i) performed by or under the direction of a physician, dental hygienist or denturist;

    ii) medically necessary; and

    iii) started on or after the application date (or late application date) and generally completed while coverage is effective.

c) Service or treatment generally is considered to be STARTED when begun; however, a service or treatment also is deemed to have begun as of

    i) the date the first impression is taken for a full or partial denture,

    ii) the date teeth are first prepared for a fixed bridge, crown, inlay, or onlay, and

    iii) the date surgery actually is performed for periodontal surgery.

d) Service or treatment generally is considered to be COMPLETED when finished; however, a service or treatment also is deemed to be finished as of

    i) the date a final completed appliance is first inserted in the mouth when full or partial dentures are installed,

    ii) the date an appliance is cemented in place when a fixed bridge, crown, inlay or onlay is installed, and

    iii) the date a canal is permanently filled when root canal therapy is performed.

e) Benefits for Dependent Child Orthodontic Benefits are not payable for (or with respect to) services/treatment begun (but not completed) prior to the enrollment date of a dependent child.

f) Orthodontic services/treatment are begun on the date when bands or appliances are installed.

g) An orthodontic service/treatment that is completed on the date it is begun is considered to be completed on the date it is performed.

h) Charges submitted to the plan administrator should identify the services/treatment performed in terms of the American Dental Association Uniform Code on Dental Procedures and Nomenclature and/or by narrative description. The plan administrator may request x-rays, narratives and other diagnostic information to determine covered charges and payable dental benefits.

i) Unless otherwise specifically provided by the plan, a temporary service or treatment is considered to be an integral part of a final service or treatment (the sun of the fees for temporary and permanent services/treatments will be combined to determine the covered charge for the final service/treatment).

2) **Benefit Classes**

The following are the 4 classes of dental benefits available under the DENTAL COVERAGE OPTION (each class is described below):

a) Preventive Dental Services,

b) Basic Dental Services,

    c)    Major Dental Services, and

    d)    Dependent Child Orthodontic Benefits.

Benefits are not payable for charges incurred for a service or treatment that falls outside the 4 classes of benefits.

3)   **Preventive Dental Services**

The following is a list of covered charges for which dental benefits are payable:

    a)    Non-emergency oral examinations;

    b)    Emergency oral examinations, including a complete mouth surveyor panoramic x-ray;

    c)    Periapical x-rays (including occlusal x-rays, extraoral x-rays, and bitewing x-rays) and other dental x-rays necessary to diagnose a specific condition;

    d)    Dental prophylaxis treatment;

    e)    Fluoride treatment for dependent children under age 14; and

    f)    Provided that no other covered charges are incurred on the same date, charges for bacteriological studies, histopathological examinations, and consultations/office visits.

4)   **Basic Dental Services**

The following is a list of covered charges for which dental benefits are payable:

    a)    Sealants for permanent molar teeth of dependent children ages 6 to 16;

    b)    Space maintainers for dependent children under age 14;

    c)    amalgam restorations, including polishing, with multiple restorations on one surface to be treated as a single filling;

    d)    Charges for pin retention are covered charges to the extent they are incurred in connection with amalgam or composite restoration;

    e)    Silicate restorations, plastic restorations, and composite restorations, provided that

        i)    mesial-lingual, distal-lingual, mesial-buccal, and distal-buccal restorations on anterior teeth will be treated as single surface restorations, and

        ii)   acid etching is not covered as a separate procedure;

    f)    Re-cementing of inlays, crowns, and bridges;

    g)    Pulpotomy;

    h)    Hemisection;

    i)    Provisional splinting, excluding charges for crowns or inlays made for the purpose of periodontal splinting;

    j)    Scaling and root planing;

    k)    Periodontal /dental prophylaxis following periodontal surgery;

    l)    Tissue conditioning;

    m)   Repairs to full or partial dentures, bridges, crowns, and inlays;

n) Simple tooth extraction;

o) Surgical tooth extraction, including the extraction of impacted teeth;

p) Root recovery;

q) Biopsy;

r) Excision of pericoronal tissues;

s) Incision and drainage;

t) Palliative (temporary) treatment, provided that charges are treated as separate covered charges only if no other covered charges (except covered charges for x-rays) are incurred when the treatment is performed;

u) General anesthesia, provided that charges are treated as separate covered charges only if required for complex oral surgery procedures (as determined) which are covered under the plan; and

v) Therapeutic drug injections.

5) **Major Dental Services**

BENEFITS ARE PAYABLE FOR MAJOR DENTAL SERVICES ONLY IF PLAN COVERAGE HAS BEEN EFFECTIVE FOR 12 CONSECUTIVE MONTHS. The following is a list of the covered charges for which dental benefits are payable:

a) Temporary restorations and appliances related to covered charges for Major Dental Services;

b) Follow-up care during the 12 consecutive months following the rendering of major dental service(s) listed below;

c) Root canal therapy, including preoperative and postoperative x-rays and follow-up care;

d) Precious metal inlays and onlays, such as gold, but only when

   i) the tooth cannot be restored by an amalgam or composite filling and

   ii) more than 5 years have elapsed since the last placement;

e) Porcelain restoration of anterior teeth;

f) Nonprecious metal crowns for covered persons (other than dependent children under age 16), but only when

   i) the tooth cannot be restored by an amalgam or composite filling and

   ii) more than 5 years have elapsed since the last placement;

g) Plastic or stainless steel crowns for dependent children under age 16;

h) Stainless steel crowns, but only when the tooth cannot be restored by a filling;

i) Post and core installation, but only for endodontic treatment of teeth requiring crowns;

j) Crown build-up, including pins and/or prefabricated posts;

k) Gingivectomy or gingival curettage;

l) Mucogingival or osseous surgery;

m) Osseous grafts;

n)  Pedicle grafts;

o)  Soft tissue grafts;

p)  Vestibuloplasty;

q)  Occlusal adjustment surgery, but only when performed with periodontal treatment;

r)  Periodontal appliances;

s)  Full dentures, excluding charges for overdentures, customized dentures, duplication of dentures, or assorted procedures;

t)  Partial dentures (including two clasps and rests), but excluding charges for precision and semi-precision attachments;

u)  Additional clasp(s) and rest(s) for dentures;

v)  Denture adjustments;

w)  Relining or rebasing of dentures;

x)  Fixed bridges;

y)  Maryland bridges;

z)  Tooth re-plantation;

aa)  Tooth transplantation;

bb) Alveoloplasty;

cc) Stomatoplasty;

dd) Removal of exostosis;

ee) Frenectomy (frenulectomy);

ff) Excision of hyperplastic tissue; and

gg) Orthognathic surgery.

## 6) Dependent Child Orthodontic Benefits

a)  Orthodontic Services

Orthodontic services provide medically necessary treatment to correct a malocclusion of the mouth through the corrective movement of teeth through bone by means of an active appliance.

b)  Eligibility For Benefits

The only covered persons who are eligible for Dependent Child Orthodontic Benefits are dependent children

i)  who are under age 19 and

ii)  who have been covered by the plan for 12 consecutive months.

c)  Related Covered Charges

Dependent Child Orthodontic Benefits are payable for the following covered charges incurred due to orthodontic services having been rendered (and for active treatment related to the covered charges):

    i)    Cephalometric x-rays;

    ii)   Diagnostic casts for orthodontic purposes;

    iii)  Surgical exposure of an impacted tooth for orthodontic treatment purposes;

    iv)  Orthodontic appliances for tooth guidance; and

    v)   Fixed or removable appliances to correct harmful habits.

---

### D) GENERAL DENTAL BENEFIT EXCLUSIONS

DENTAL BENEFITS WILL NOT BE PAID FOR CHARGES INCURRED FOR ANY OF THE FOLLOWING:

1) Procedures, services or treatment for which medical benefits are payable under this plan;

2) Procedures that are NOT listed in SECTION 10 (DENTAL COVERAGE OPTION) of this plan as being covered;

3) Procedures that are not medically necessary (except for Dependent Child Orthodontic Benefits);

4) Procedures recommended against by the American Dental Association;

5) Crowns for teeth that are restorable by other means or for the purpose of periodontal splinting;

6) Procedures, appliances, or restorations (except full dentures) whose primary purpose is for bite registration, bite analysis, cosmetic purposes, or to alter vertical dimension;

7) An implant or related appliance or the surgical removal of either;

8) Replacement of a lost or stolen appliance (including retainers, athletic mouthguards, myofunctional appliances, etc.) or prosthesis (including precision or semi-precision attachments or dentures);

9) Educational instruction, including instruction on oral hygiene, plaque control, or diet;

10) Completion of claims forms, missed dental appointments, or personal supplies or equipment (such as a toothbrush, waterpik, floss holder, etc.);

11) Treatment for jaw fracture;

12) Orthodontic treatment other than Dependent Child Orthodontic Benefits covered by the plan;

13) Hospital or outpatient facility charges for room, supplies or emergency room expenses for dental services;

14) Hospital or outpatient facility charges for routine chest x-rays and medical exams prior to oral surgery;

15) Any service or treatment performed while you are outside the United States;

16) A dental service or treatment which results from or in the course of a regular occupation for pay or profit and and for which benefits are payable Under any workers' compensation law, employer's liability law, or similar law (regardless of whether a claim is filed for such benefits);

17) Treatment or services for which you are not billed;

18) Charges for treatment or services that you are not obligated to pay;

19) Services or expenses for which a claim is not properly submitted to the plan administrator or for which follow-up information necessary to determine coverage eligibility is not provided to the plan administrator.

20) Unless otherwise required by law, treatment or services that are covered in whole or in part under federal, state, county, city, town, or other governmental laws; .

21) Initial placement of a full denture, partial denture or fixed bridge to replace teeth that are missing on or before the enrollment date (or late enrollment date); however, once coverage has been effective for 24 consecutive months,

    a) the initial placement of full or partial dentures is a covered charge if the placement includes the initial replacement of a functioning natural tooth that was extracted after coverage was effective and which is replaced within 12 months of the extraction, and

    b) initial placement of a fixed bridge to replace a functioning natural tooth that was extracted while coverage was effective is a covered charge if the replacement occurs within 12 months of the extraction;

22) Replacement of a full denture, partial denture, fixed bridge, or for teeth added to a partial denture; however,

    a) if coverage has been effective for less than 24 months, replacement of a full denture, partial denture, fixed bridge, or addition of teeth to a partial denture is a covered charge if medically necessary because a functioning tooth is extracted while coverage is effective and the replacement/addition occurs within 12 months of the extraction, and

    b) if coverage has been effective for at least 24 months, replacement of a full denture, partial denture, fixed bridge, or addition of teeth to a partial denture is a covered charge if the existing denture, bridge, or partial denture was installed at least 5 years before the replacement and replacement is medically necessary.

23) Charges with respect to which you would be entitled to coverage under Medicare, whether or not you properly made application or submitted claims to obtain the Medicare coverage; however, this exclusion shall not apply when it would be contrary to federal law (including, but not limited to, the Social Security Act's Medicare secondary payer rules that are codified in Section 1395(y) of Title 42 of the United States Code).

## SECTION 11
## COORDINATION OF BENEFITS

### A)  BENEFIT LIMITATION DUE TO SIMULTANEOUS COVERAGE

Medical benefits and dental benefits are not payable under this plan to the extent they are paid under an other plan or under an other plan that is "primary." If benefits are payable under another plan that is primary (i.e., this plan is "secondary"), then this plan will not in any case pay more than it would have paid had it been primary.  Nor will this plan ever provide benefits such that the participant, beneficiary, or healthcare provider receives individually or jointly more than 100% of the actual cost of the treatment or such cost to the plan.  The existence of other coverage or the payment of deductibles or co-pays under another plan does not reduce or eliminate any applicable deductibles or co-pays or increase any maximum benefits under this plan.

### B)  OTHER PLAN(S)

The following plans providing benefits or services for medical or dental care or treatment are "other plans":

1)  Group insurance or any other arrangement for coverage for individuals in a group whether on an insured or uninsured basis;

2)  Any type of prepayment plan, including health maintenance organizations;

3)  Any coverage under labor-management trustee plans, union welfare plans, employer organization plans, or employee benefit organization plans; and

4)  Any coverage under Medicare, Medicaid, or any other governmental programs.

### C)  PRIMARY PLAN

1)  If this plan is primary, then this plan will pay according to its terms.

2)  Another plan is primary if it does not include a "coordination of benefits" provision, "non-duplication" provision, or other provisions that address the order of benefit payment while coverage other than that under the other plan is simultaneously applicable.

3)  If the other plan does contain a "coordination of benefits" provision, "non-duplication" provision, or other provisions that address the order of benefit payment while coverage other than that under the other plan is simultaneously applicable, then the following rules shall apply in determining which plan (this plan or the other plan(s)) is primary:

a)  The benefits of the plan that covers a person as an employee, member, or subscriber (not as a dependent) are determined before those of the plan covering the person as a dependent;

b)  If one or more plans cover a person as a dependent child, the plan of the parent whose birthday falls earlier in the year will be the primary plan, but, if the parents have the same birthday, the plan which has covered a parent longer will be the primary plan (if this plan and the other plan do not use the rule contained in this paragraph, then the other plan's rule will apply);

c)  If one or more plans cover a person as a dependent child of divorced or separated parents, benefits for the child are determined in the following order:

i)   The plan of the parent with custody of the child pays benefits first;

ii)  The plan of the spouse of the parent with custody of the child pays benefits second; and
iii) The plan of the parent who does not have custody of the child pays benefits last.

iv)  However, if the specific terms of a court decree state that a parent is responsible for the health care expenses of the child, then that parent's plan is primary.

d)   If the specific terms of a court decree state that the parents shall share joint custody of a dependent child, without stating that one of the parents is responsible for the health care expenses of the child, then:

   i)   the plans covering the child shall follow the applicable determination rules set forth above in this SECTION 11; and

   ii)  The benefits under a plan covering a person as an active employee (or as the active employee's dependent) who is neither on layoff nor retired are determined before the benefits of a plan that covers that person as a laid-off or retired employee (or that person's dependent); provided, however, that if a plan does not contain this rule, then this rule will be ignored.

e)   If the immediately preceding rules contained in this SECTION 11 do not determine the order of benefit payment, the benefits of a plan that has covered an employee, member or subscriber longer are determined before those of the plan which covered that person for the shorter time.

## D) ADJUSTMENT TO MEDICAL BENEFITS AND/OR DENTAL BENEFITS

When the foregoing provisions of this SECTION 11 operate to reduce the total amount of medical benefits or dental benefits otherwise payable to you, each medical benefit or dental benefit that would have been payable in the absence of such foregoing provisions shall be reduced proportionately, and such reduced amount shall be charged against any applicable benefit limitation contained in this plan.

## E) MEDICARE AND MEDICAID

1)   If Medicare is the primary payer under the foregoing rules of this SECTION 11, Medicare nevertheless shall be considered the secondary payer when so required by the Social Security Act's Medicare secondary payer rules that are codified in Section 1395(y) of Tide 42 of the United States Code. The plan shall reimburse the U. S. Health Care Financing Administration for the cost of any items and services provided by Medicare that should have been borne by this Plan.

2)   This plan shall not reduce or deny medical benefits or dental benefits to reflect the fact that a covered person is eligible to receive medical assistance under a state Medicaid plan. The plan shall reimburse any state Medicaid pro gram for the cost of items and services provided under the state plan that should have been paid for by this plan.

## F) FURNISHING AND RELEASE OF INFORMATION

1)   Any person claiming medical benefits or dental benefits under this plan, as a prerequisite to the payment of such benefits, shall furnish such information as may be required by the plan administrator for the purposes of determining the applicability of and implementing the provisions of this SECTION 11.

2)   For the purposes of determining the applicability of and implementing the provisions of this SECTION 11, the plan may, without the consent of or notice to any person, release to or obtain from any other insurance company or other organization or person any information, with respect to any person, which the plan administrator deems to be necessary for such purposes.

## G) PAYMENT OR RECOVERY BY THIS PLAN

1)   Whenever payments which should have been made under this plan in accordance with SECTION 11 have been made under any other plan(s), this plan shall have the right, exercisable alone and in its sole discretion, to pay over to any organizations making such other payments any amounts it shall determine to be warranted in order to comply with SECTION 11, and the amount(s) so paid shall be deemed to be medical benefits and/or dental benefits (as applicable) paid under this plan and, to the extent of such payments, this plan shall be fully discharged from liability.

2)   When payments of medical benefits and/or dental benefits by this plan have been made in error or have exceeded the amount of such benefits that are required to be paid by the plan under the foregoing provisions of this SECTION 11, this plan shall have the right to recover such payments, to the extent of such error or excess, from one or more of the following, as the plan shall determine:

   a)   Any persons to or for or with respect to whom such payments were made; and

   b)   Any other insurance companies or any other organizations providing benefits or services under any other plan(s).

## SECTION 12
## SUBROGATION, REIMBURSEMENT, AND RECOVERY RIGHTS

### A) SUBROGATION RIGHTS

If the plan provides any medical benefits or dental benefits for you, the plan will be subrogated to your rights of recovery under contract law, tort law, or any other applicable legal or equitable remedy against any third party, person or organization for the amount of such benefits paid or provided. (As indicated in the Section 13 definition of "you," the plan's subrogation, recovery, and reimbursement rights extend to ANY beneficiary or covered person.) The plan may use your right to recover money from any such third party, person or organization. You must provide reasonable cooperation with the plan administrator in the exercise of these subrogation, recovery and reimbursement rights. The plan has first-lien priority of payment without regard to whether you have recovered compensation for all your damages and without regard to whether you have been "made whole" and without regard to any allocation of damages. The plan administrator may presume or deem that any recovery is for hospital, medical, surgical or other expenses covered by the plan. The plan does not pay for benefits relating to injuries caused by a third party. However, the plan will advance those benefits to you with the mutual understanding that the plan will have a right of subrogation to your claim against such third party and that you will reimburse the plan if and when you recover anything from a third party or the third party's insurer. By accepting any benefits under the plan, you thereby grant and assign to the plan full subrogation, reimbursement, and recovery rights, including but not limited to all those described in this Section 12, as well as a lien of first priority of payment in an amount equal to the benefits paid against any recovery made by you or on your behalf from any and all sources.

### B) REIMBURSEMENT RIGHTS

1) In addition to its subrogation, recovery and reimbursement rights described above in this SECTION 12, the plan has a right to be reimbursed or repaid from any money that you recover, or recovered on your behalf, for an injury or condition for which the plan has paid medical benefits and/or dental benefits. In other words, you have an obligation to immediately repay to the plan from any money that you recover from any and all sources, including but not limited to uninsured motorist coverage and without regard to how you allocate the recovery, the amount that the plan has paid or provided in benefit payments. Moreover, if you recover money through a claim or a lawsuit, whether by settlement or otherwise, you must repay the plan. If you are paid by any company or person other than this plan, including the person who injured you, that person's insurer, or your own other insurer, you must still repay the plan. In each of the foregoing cases and all other cases, you must repay the plan from any recovery you receive or that is received on your behalf. The plan administrator has full discretion to pursue the plan's subrogation, reimbursement and recovery rights to the maximum benefit of the plan.

2) The plan has the right to be reimbursed or repaid from any money you recover, even if you are not paid for all of your claim for damages and you are not made whole for your loss. You are obligated to repay the plan first even if

    a) the money you recover is for (or said to be for) a loss other than plan benefits, such as pain and suffering;

    b) another company or person has paid for part of your loss; or

    c) the person who recovers the money is a minor.

    In each of the foregoing cases and all other cases, the plan has the right to first reimbursement or repayment out of any recovery you receive or that is received on your behalf from any source.

### C) RECOVERY RIGHTS

1) You agree to promptly furnish to the plan all information which you possess concerning your rights of recovery or recoveries from other parties, persons or organizations and to fully assist and cooperate with the plan in protecting and obtaining its reimbursement and enforcing its subrogation rights in accordance with this SECTION 12.

2) You will notify the plan before filing any suit or settling any claim so as to enable the plan to participate in the suit or settlement to protect and enforce the plan's rights under this SECTION 12. If you do notify the plan so that the plan is able to and does recover the amount of the benefits paid by the plan, SkilStaf will share proportionately with you in the reasonable attorney fees charged to you by your attorney for obtaining the recovery, but in no case

shall the plan be obligated to reduce its recovery by more than a third for such attorney fees. If you do not give the required notice and cooperation to the plan, the plan's subrogation or reimbursement recovery under this SECIION 2 will not be reduced by the amount of such attorneys fees, and you will be responsible for paying the plan's own costs and attorney fees in securing the plan's recovery.

3)  You are obligated to prevent the plan's reimbursement or subrogation rights under this SECTION 12 from being limited, compromised, or prejudiced by any oilier acts or failures to act on your part. It is understood and agreed that if you do, the plan may suspend, terminate, or offset payment or provision of any further medical or dental benefits for you or your beneficiaries or your covered dependents under the plan.

# SECTION 13
# DEFINITIONS

THE FOLLOWING WORDS AND PHRASES SHALL HAVE THE FOLLOWING MEANINGS WHEN USED IN EITHER UPPER OR LOWER CASE IN THIS DOCUMENT, UNLESS A DIFFERENT MEANING IS SPECIFIED OR IS OTHERWISE REQUIRED BY THE CONTEXT:

1)   ACCIDENT or ACCIDENTAL INJURY means a traumatic injury to you caused solely by an accident. The injury must occur while you are covered by the plan,

2)   ANNUAL means once per calendar year.

3)   BENEFIT or BENEFITS means the medical benefits and dental benefits provided by the plan. As indicated by the context, "benefit" or "benefit" may be used herein to refer to one (or more) types of benefits that are provided by the plan.

4)   COBRA COVERAGE, COBRA CONTINUATION COVERAGE, or CONTINUATION COVERAGE means the coverage that is explained in SECTION 5 of the plan and which is not regular coverage.

5)   COMPLICATIONS OF PREGNANCY means conditions with diagnoses that are distinct from pregnancy, but which are adversely affected by or are caused by a pregnancy. Complications of pregnancy include acute nephritis, nephrosis, cardiac decompensation, puerperal infection, eclampsia, missed abortion, ectopic pregnancy that is terminated, spontaneous termination of pregnancy occurring during a term of gestation in which there is not a viable birth (this does not include voluntary or elective abortion), or other medical and surgical conditions of comparable severity. Complications of pregnancy do not include Caesarean section delivery, false or premature labor, occasional spotting, physician prescribed rest during pregnancy, morning sickness, hyperemesis gravidarum, pre-eclampsia, or similar conditions associated with management of high risk pregnancy but which do not constitute a diagnostically distinct complication of pregnancy.

6)   COVERED BUSINESS OR INDUSTRY means a SkilStaf client with a valid Client Service Agreement in force and for which the plan is effective for only those SkilStaf employees of any such covered business or industry.

7)   COVERED CHARGE means an expense, fee or charge incurred by or on behalf of a covered person because of injury or sickness and for which the covered person is obligated to pay. The expense is incurred on the date the service is performed or the supply is received.  Covered charges must be incurred while plan coverage is in force for the covered person, must be medically necessary, will not exceed the maximum allowable charge, must not be excluded from coverage, and will not exceed any maximum amount payable.

8)   COVERED DEPENDENT means a dependent of a covered worker (as defined in SECTION 3 of the plan) who is both eligible for coverage and who is covered by the plan.

9)   COVERED PERSON means a covered worker and each of the covered worker's covered dependents.

10)  COVERED WORKER means an employee who renders service in a covered business or industry.

11)  DENTAL BENEFITS means the benefits described in SECTION 10 of the plan.

12)  DENTAL HYGIENIST means an individual who is duly licensed to practice dental hygiene and acting under the supervision of a physician within the scope of that license in treating the dental condition.

13)  DENTURIST means an individual who is duly licensed to make dentures and acting within the scope of that license in treating the dental condition.

14)  EMERGENCY means the sudden onset of a sickness or injury that, without immediate medical or surgical care, would significantly worsen, become more severe for the covered person, or would result in death.

15)  EMPLOYEE means an employee of the employer, SkilStaf, Inc., but not any SkilStaf subsidiary.

16)     EMPLOYER means either the plan sponsor, SkilStaf, Inc., but not any SkilStaf subsidiary.

17)     EMPLOYMENT means employment as an employee.

18)     EXPERIMENTAL or INVESTIGATIVE means:

   a)    The drug or device cannot be lawfully marketed without approval of the U.S. Food and Drug Administration and approval for marketing has not been given at the time the drug or device is furnished; or

   b)    The drug, device, medical treatment or procedure, or the patient informed consent document utilized with the drug, device, treatment or procedure, required review and approval by the treating facility's institutional Review Board or other body serving a similar function, or if federal law required such review and approval; or

   c)    Reliable evidence shows that the drug, device, medical treatment or procedure is the subject of ongoing phase I or phase II clinical trials, is the subject of research, experimentation, or study or the investigational arm of an on-going phase III clinical trial(s), or is otherwise under study to determine its maximum tolerated dose, its toxicity, its safety, its efficacy or its efficacy as compared with a standard means of treatment or diagnosis; or

   d)    "Reliable evidence" shows that the prevailing opinion among experts regarding the drug, device, medical treatment or procedure is that further studies or clinical trials are necessary to determine its maximum tolerated dose, its toxicity, its safety, its efficacy as compared with a standard means of treatment or diagnosis.  (Please note that "reliable evidence" means only published reports and articles in the authoritative medical and scientific literature; the written protocol or protocols used by the treating facility or the protocol(s) of another facility studying substantially the same drug, device or medical treatment or procedure; or the written informed consent used by the treating facility or by another facility studying substantially the same drug, device or medical treatment or procedure.)

19)     FAMILY MEMBER means any person related to a covered person, by blood, marriage, or adoption. A family member of a covered worker may be eligible for coverage under the plan as a dependent according to the rules contained in SECTION 3 of the plan.

20)     FERTILITY means the evaluation and treatment of reproduction function in male and/or female to include ability to conceive and/or sustain a successful pregnancy.

21)     HIPAA means the Health Insurance Portability and Accountability Act of 1996, as amended.

22)     HOSPITAL means an institution operated pursuant to law for the care and treatment of sick and injured persons. It must maintain organized facilities for medical, diagnostic and surgical care for hospital confined patients, for which a charge is made that the covered person is legally obligated to pay, maintain a staff of one or more licensed physicians, provide 24-hour-a-day nursing care supervised by a professional graduate registered nurse (R.N.), have surgical facilities on its premises, or have a contract with another institution with a valid license to provide for surgical services, and be legally operating in the jurisdiction where located.

   a)    An institution which provides care and treatment to mentally ill or mentally retarded persons is not required to have major surgery facilities if it otherwise satisfies this definition.

   b)    Unless otherwise provided in this booklet, hospital does not include an institution principally for rest, nursing, long-term, extended or custodial care; subacute care; care of the aged; skilled nursing care; care for drug addicts, alcoholics, or runaways; or a military or veterans' hospital, soldiers' home or a hospital contracted for or operated by the federal government or any of its agencies, for active or former embers of the Armed Forces, unless legally required to pay.

23)     HOSPITAL CONFINEMENT, CONFINEMENT TO A HOSPITAL, or HOSPITAL-CONFINED means the covered person is admitted as an overnight bed patient for a minimum of 24 consecutive hours, and is not registered as an out-patient.

24)     INJURY means a sudden, traumatic, accidental and unanticipated damage to the body, not of gradual onset. The cause must be external, physically violent, and immediately precede the damage.

25)     LATE APPLICANT means an individual who did not enter the Plan when first eligible for coverage.

26) LIFETIME when used in reference to benefit maximums and limitations, means "while covered under this Plan." Under no circumstances does "lifetime" mean "during the lifetime of the covered person."

27) MAXIMUM ALLOWABLE CHARGE means a reasonable charge that does not exceed the usual, customary or reasonable fee. For services or supplies furnished by a preferred provider, the maximum allowable charge equals the amount to be paid for services or supplies upon which the plan sponsor has agreed upon with a preferred provider. In the case of services or supplies for which a usual, customary or reasonable fee exists (other than a preferred provider) the (maximum allowable charge ,will be such usual, customary or reasonable fee).

28) MEDICAL BENEFITS means the benefits described in SECTION 7 of the plan.

29) MEDICALLY NECESSARY means what the plan administrator deems to be the shortest, least expensive or least intense level of treatment, care, or service rendered or supplied to the extent required to diagnose or treat an injury or sickness. The service or supply must be consistent with the covered person's medical condition; known to be safe and effective by most physicians who are licensed to treat the condition at the time the service is rendered; and not provided primarily for the convenience of the covered person or physician.

    a) With respect to dental benefits, "medically necessary" means a service or treatment which is appropriate and consistent with the diagnosis, consistent with American Dental Association standards, and is essential for the necessary care of the teeth and supporting tissues.

    b) Even if a service, treatment, or form of care is medically necessary, payment of medical benefits or dental benefits may nevertheless be prohibited by the applicable limitations and exclusions contained in the plan.

    c) Also, medically or dentally necessary treatment, services or costs are NOT necessarily covered expenses.

30) NONPRECIOUS METAL means a material which has a combined content of less than 10% gold, platinum and/or palladium.

31) OUT-PATIENT SURGICAL FACILITY means a licensed public or private medical facility that has an organized staff of physicians, and permanent facilities equipped and in operation primarily to perform surgery. The facility must provide continuous physician and registered professional nursing services whenever a patient is in the facility.

32) OUT-PATIENT SURGICAL FACILITY includes a facility that is operated by a hospital that provides scheduled, non-emergency and outpatient surgical care. It does not include a hospital emergency room, trauma center, or physician's office or clinic.

33) PHYSICIAN means one of the following when licensed and acting within the scope of that license at the time and place a covered person is treated or receives services: Doctor of Medicine (M.D.), Doctor of Osteopathy (D.O.), Doctor of Dental Surgery (D. D. S:), Doctor of Medical Dentistry (D.M.D.), Doctor of Chiropractic (D. C.), Doctor of Podiatry (D.P.M.), Doctor of Optometry (O.D.), and Psychologist (Ph.D. or Psy.D. and as defined in Section 27-1-18 of the Alabama Code). The physician cannot be a family member of the covered person.

34) PLAN SPONSOR means SkilStaf, Inc., but not any SkilStaf subsidiary.

35) PLASTIC SURGERY means any surgical procedure that primarily improves or changes appearance and does not primarily improve physical bodily functions or correct deformities arising from injury, sickness, disease, trauma, or congenital anomalies.

36) PRECIOUS METAL means a material which has a combined content of more than 70% gold, platinum and/or palladium.

37) PREGNANCY means that physical state which results in childbirth, abortion or miscarriage.

38) QUALIFIED BENEFICIARY means a person who is eligible for COBRA coverage.

39) QUALIFIED MEDICAL CHILD SUPPORT ORDER means a "medical child support order" referred to in ERISA Section 609 that is "qualified" in accordance with ERISA Section 609. Notwithstanding any plan provision(s) to the contrary, the plan shall comply with a qualified medical child support order.

40) REGULAR COVERAGE means coverage provided by the plan that is not COBRA coverage.

41) SEMIPRECIOUS METAL means a material which has a combined content of 10 to 70% of gold, platinum and/or palladium.

42) SICKNESS means a disorder of a covered person's bodily functions or structure causing physical symptoms which, if not treated, would result in deterioration of the covered person's health.

43) SKILLED NURSING FACILITY means a facility that is legally operating and licensed to care for and treat persons recovering from injury or sickness, and provided permanent, full-time bed care facilities for its residents, nursing services at all times under supervision of a physician or registered nurse, physician services which are available at all times, maintains daily clinic records for its residents. A skilled nursing care facility does not operate primarily for the aged, drug addicts, or alcoholics, treatment of nervous disorders or mental disease, rest, educational or custodial purposes. Nor does it include a community-based residential treatment facility or community re-entry program.

44) SURGERY means operating manually or instrumentally upon injuries, including but not limited to a procedure that includes an endoscopic procedure,' treatment of a fracture, or reduction of a dislocation; restoring a covered person's appearance to his or her physical status before an injury or sickness which occurred while the person was covered by this Plan, or improving a severe condition that prevents normal function.

45) URGENT CARE CENTER means a facility providing medical and surgical care on an outpatient basis for emergency treatment.

46) USUAL, CUSTOMARY OR REASONABLE FEE means the portion of a charge which is a covered charge. The usual, customary or reasonable fee equals the fee for covered services or supplies by those of similar professional standing in the same geographic area (considering the complexity involved, the degree of professional skill required, and other pertinent factors).

47) YOU or YOUR means any covered person, unless the language specifically refers only to a covered worker or only to a covered dependent.

# SECTION 14
# CLAIM PROCEDURES

## A)  HOW TO FILE A CLAIM

1)  You may not be required by the healthcare services provider to submit a claim form for benefits.  Show your healthcare coverage card to the provider and the Plan Administrator will receive the bill for charges incurred.

2)  Mail bills to the name and address listed on the back of your healthcare coverage card if you are directly submitting the bills.  Always be sure to include your group number and social security number as they appear on your healthcare coverage card when you send any bills or correspondence.

3)  A claim for benefits may be denied if not submitted within 180 days after incurring charges.

4)  In the event of a denial of your claim in whole or in part, the Plan Administrator will endeavor to give you a written EXPLANATION OF BENEFITS (EOB) containing information about the denial within 30 days of receipt of a fully completed ("clean") claim.  To the extent practical, the EOB will inform you of specific reasons for the denial, refer you to plan provision(s) upon which the denial is based, ask for a description of any addition material or information needed for further review of your claim, and remind you of the Plan's Claim Review Procedure.

5)  You will be notified if more information is needed to process your claim and given 45 days to respond and provide the information.  Failure to respond and provide the information may result in denial of the claim.

6)  The Plan Administrator has full discretion to interpret the Plan.  In case of any factual or material dispute, the Plan Administrator shall resolve such dispute giving appropriate consideration to all available evidence.  The Plan Administrator shall interpret the Plan and shall determine all inquiries arising in its administration, application, and interpretation.  Any determination made on your claim by the Plan Administrator that is not arbitrary or capricious will be final, conclusive, and binding unless reversed under the Claim Review Procedure set forth below.

## B)  CLAIM REVIEW PROCEDURE

(1)  In the event of a denial of your claim in whole or in part, you shall be permitted to review pertinent documents and to submit issues and comments in writing to the Plan Administrator.  You also may make a written request for a full and fair review of the claim denial; provided, however, that such written request must be received by the Plan Administrator within sixty (60) days after your receipt of the EXPLANATION OF BENEFITS (EOB) described above.

(2)  The Plan Administrator may request you to furnish, in connection with the review of the denial, information that the plan administrator reasonably believes is important to the review.

(3)  The review will not afford deference to the initial adverse benefit determination and will be conducted by an appropriate Plan fiduciary or its agent and shall not be either the individual or the subordinate of the individual who made the initial adverse determination.

(4)  A written decision shall be rendered by the Plan Administrator within sixty (60) days after receipt of your request for review, provided that when special circumstances require an extension of time to process the request for review, the written decision may be postponed on written notice to you (prior to the expiration of the initial sixty (60) day period) for an additional sixty (60) days, but in no event shall the written decision be rendered more than one hundred twenty (120) days after the receipt of your request for review.  If no written decision is issued within that time, the appeal shall be deemed denied.

(5)  If the denial is affirmed in whole or in part, the Plan Administrator's written decision shall include the specific reasons for the decision and specific references to the Plan provisions on which it is based.

(6)  In reviewing your claim denial, the Plan Administrator shall interpret the Plan and shall determine all inquiries arising in its administration, application, and interpretation.  The Plan Administrator has full discretion to interpret the Plan and to apply these claim review procedures.  Any determination made on your claim on review by the Plan Administrator that is not arbitrary or capricious will be final, conclusive, and binding.

(7)  If any party wishes to contest a final claim review or appeal decision of the Plan Administrator involving total benefits, claims, losses, and damages in an amount of $10,000 or less, then all parties to such dispute agree and consent that the matter shall be submitted to the small claims court in Alexander City, Alabama, also known as the Alexander City Division of the District Court for Tallapoosa County, Alabama.  The parties agree and consent to the exclusive jurisdiction for any other claim, or any claim as described above that cannot be heard in such court as described above, involving an appeal or final claim review upon the conclusion of the plan's claim review procedure, in the U.S. Federal District Court for the District encompassing Alexander City, Alabama.

(8)  **You and the Plan may have other voluntary alternative dispute resolution options, such as mediation.  One way to find out what may be available is to contact your local U.S. Department of Labor Office and your State insurance regulatory agency.**

# SECTION 15
# GENERAL INFORMATION

**PLAN NAME:** SkilStaf GROUP HEALTH Plan

**INTERNAL REVENUE SERVICE PLAN NUMBER:** 501

**PLAN YEAR:** The plan's 12-month accounting period begins on January 1 and ends on December 31.

**EFFECTIVE DATE OF THIS PLAN:** January 1, 2001

**TYPE OF PLAN:** The plan is an employee welfare benefit plan that provides medical benefits and hospital benefits. The plan is administered by the plan administrator, which exercises authority (1) to construe all of the terms, provisions, conditions, and limitations of the plan, including, but not limited to, any uncertain terms contained in the plan and (2) to make determinations regarding eligibility for benefits under the plan. Decisions and determinations made by the plan administrator in administering the plan that are not arbitrary or capricious will be final, conclusive, and binding.

**FUNDING:** Plan benefits are self-insured. Based upon its determination of the amounts necessary to timely pay benefits and expenses, SkilStaf, Inc. shall make contributions to the plan. SkilStaf, Inc. may increase or decrease (but not eliminate) its contributions at any time. Covered workers and employees shall contribute to the plan as required by schedules provided by SkilStaf, Inc., and such schedules shall constitute part of this plan. In the event of a change in the amount of required covered worker contributions, SkilStaf, Inc. will provide written notice of such change in advance of its effective date. Covered worker and employee contributions shall not be required as a condition of employment.

**PLAN SPONSOR:** SkilStaf, Inc.
P.O. Box 729
Alexander City, Alabama 35011
(256) 234-6208
Employer Identification No. 63-0958962.

**PLAN ADMINISTRATOR:** Risk Reduction, Inc.
One Independence Plaza, Suite 520
Birmingham, AL 35209
(205) 870-8183

**AGENT FOR SERVICE OF LEGAL PROCESS:** Mr. Wayne Stark
SkilStaf, Inc.
860. Airport Drive
Alexander City, Alabama 35010
(Service of process also may be made upon the plan administrator identified above.)

**AMENDMENT AND TERMINATION:** NOTWITHSTANDING ANY PLAN PROVISION(S) TO THE CONTRARY, SkilStaf, Inc. reserves the right to effect a written amendment to the plan at any time and/or to terminate the plan at any time.

**NO CONTRACT OF EMPLOYMENT:** Any and all rights or benefits for you under the plan are subject to all terms and conditions of the plan. The adoption and maintenance of the plan is not a contract of employment nor is it to be considered as an inducement or condition of employment between the plan sponsor and the covered worker. Your participation in the plan does not give you the right to be employed by the plan sponsor, nor does it interfere with the right of the plan sponsor to discharge any covered worker at any time.

**REQUIRED INFORMATION:**

You or another interested person must file with the plan administrator such pertinent information concerning you or your coverage as the plan administrator may specify, including proof or continued proof of dependency or eligibility, and in the manner and form the plan administrator may require. You do not have the rights, nor will you be entitled to any benefits or further benefits, unless such information is filed.

**CLERICAL ERROR OR MISSTATEMENTS:**

In the event of a clerical error or misstatement of any fact(s) affecting your coverage, the accurate facts will be used to determine the proper coverage or eligibility for coverage under this plan.

**ASSIGNMENT OF BENEFITS:**

The plan makes direct payments to hospitals, physicians and other providers of health care, subject to approval. If you want payment to be made to you, notification must be given when the claim is submitted. The plan will not accept assignment of benefits made by you for debts or other liabilities.

**PAYMENT TO OTHER THAN COVERED PERSONS:**

If the plan administrator finds that any person to whom any benefits are payable is unable to care for his/her personal affairs, is a minor, or has died, then payment due the covered person or the estate, unless a prior claim has been made by a duly appointed legal representative, may be paid to the spouse, child, relative, or institution maintaining or having custody of such person. The plan administrator, in its discretion, may hold payment until a legal representative is appointed. Such payment shall be a complete discharge of the liabilities of this plan.

**CANCELLATION OF HEALTH CARE BENEFITS:**

If the plan is unable to ascertain your whereabouts and benefits are payable to you under this plan, and if, after one year from the date payment is due, a notice of payment due is mailed to your last known address, as shown on the records of the plan administrator, and within three months after mailing, you have not notified the plan administrator in writing of your current address, or if you fail to file or have filed a valid and timely claim or to provide requested documentation according to the terms of the plan, then the plan may direct that such payment be canceled and forfeited and, upon cancellation, this plan has no further liability.

**DISPUTE RESOLUTION:**

If any factual or material dispute occurs, the dispute shall be resolved in the discretion of the plan administrator pursuant to the CLAIMS PROCEDURES of the plan.

**OVERPAYMENT:**

If this plan overpays benefits or pays benefits which should have not been paid under its provisions, then this plan has the right to recover the amount of the overpayment or payment made in error. Payment of claims in error is not an indication that such claims are covered under the plan.

**RIGHT TO RECEIVE AND RELEASE INFORMATION:**

If you claim benefits under this plan, you must furnish information as may be necessary to determine payments. This plan may obtain any information necessary in order to determine benefit payments or your eligibility and may release any information to ensure or promote treatment, payment, or health care operations related to treatment or payment, pursuant to the plan's provisions regarding PRIVACY OF INFORMATION.

**PHYSICAL EXAM AND AUTOPSY:**

The plan has the right to have you examined, at its expense, pending payment of a claim. It also has the right, at its expense, to have an autopsy performed at your death, unless forbidden by law.

NON-DUPLICATION
OF COVERAGE:

The plan will not pay benefits if the charges are eligible for payment from any of the plans described in this plan's provisions regarding COORDINATION OF BENEFITS.

RECOVERY OF
BENEFITS PAID:

If a covered person receives any benefits under the plan due to a misrepresentation or failure to disclose required information, the plan will seek to recover all or part of the benefits to the extent the plan administrator determines that the amount in question warrants recovery efforts.

WORKERS'
COMPENSATION:

This plan is not issued in lieu of, nor does it affect any requirement of, coverage under any Act or Law which provides benefits for any injury or sickness occurring during, or arising from, your course of employment.

This plan will apply its rights of subrogation and reimbursement with respect to work related injuries or sickness even though benefits are in dispute or are made by means of settlement or compromise; no final determination is made that injury or sickness was sustained in the course of or resulted from your employment; the amount due for health care is not agreed upon or defined by you or the carrier; or the health care benefits are specifically excluded from settlement or compromise.

In consideration for coverage under this plan, you agree to notify the plan of any claim you make. You agree to reimburse this plan based on the information above.

# SECTION 16
## STATEMENT OF ERISA RIGHTS

As a participant in this plan you are entitled to certain rights and protections under the Employee Retirement Income Security Act of 1974, also called ERISA.  ERISA provides that all plan participants are entitled to:

1)  Examine, without charge at the plan administrator's office and at other specified locations and work sites, all plan documents, including:

2)  insurance contracts,

3)  collective bargaining agreements, and

4)  copies of all documents filed by the plan with the U.S. Department of Labor, such as detailed annual reports and plan descriptions;

5)  Obtain copies of all plan documents and other plan information upon written request to the plan administrator (the plan administrator may make a reasonable charge for the copies); and

6)  Receive a summary of the plan's annual financial report (the plan administrator is required by law to furnish each participant with a copy of this summary annual report).

In addition to creating rights for plan participants, ERISA imposes duties upon the people responsible for operating the plan. The people who operate your plan, called "fiduciaries" of the plan, have a duty to do so prudently and in the interest of you and other plan participants and beneficiaries.  No one, including your employer or any other person, may file you or otherwise discriminate against you in any way to prevent you from obtaining a welfare benefit or exercising your rights under ERISA.

If your claim for a welfare benefit is denied in whole or in part, you must receive a written explanation of the reason for the denial. You have the right to have the plan administrator review and reconsider your claim.

Under ERISA, there are steps you can take to enforce the above rights.  For instance, if you request materials from the plan and do not receive them within 30 days, you may file suit in a federal court.  In such a case, the court may require the plan administrator to provide the materials and pay you up to $100 a day until you receive the materials, unless the materials were not sent because of reasons beyond the control of the plan administrator.

If you have any questions about your plan, you should contact the plan administrator.

If you have any questions about this statement or about your rights under ERISA, you should contact the nearest office of the Pension and Welfare Benefits Administration, U.S. Department of Labor, listed in your telephone directory or the Division of Technical Assistance and Inquiries, Pension and Welfare Benefits Administration, U.S. Department of Labor, 200 Constitution Avenue, N. W., Washington, D.C. 20210.

# SECTION 17
## PRIVACY OF INFORMATION

The Plan provides medical and/or dental benefits to you, your spouse and/or dependents. In doing so, the Plan and the Plan Administrator, Risk Reduction, Inc. (RRI) receive and maintain financial, health and other information about you, including information about your health history, treatment, and claims and payment history (collectively, "Health Information"). We obtain this information from many different sources -- particularly your employer, health care providers, other insurers, or third party administrators, which help us administer the Plan.

We are required under federal health care privacy rules (the "Privacy Rules") to protect and maintain the privacy of your Health Information. We are also required to inform you of our legal duties, policies and procedures to protect and maintain the privacy of your Health Information. We are required to follow the terms of the Privacy Notice issued by the Plan effective April 14, 2003, unless (and until) it is revised. We reserve the right to change the terms of that Privacy Notice and the policies stated herein and to make the new notice provisions effective for the Health Information that we maintain and use, as well as for any Health Information that we may receive in the future. Should the terms of that Privacy Notice or the policies herein materially change, we will promptly notify you. If and when we maintain a Plan website, a copy of the current Privacy Notice will be posted and made available electronically through the website. (Please note that the notice and these policies do not apply to disability benefits, life insurance, or any non-health plans or benefits.) The Plan will adhere to any applicable and more stringent state privacy rules as required by law.

### HOW WE USE AND DISCLOSE YOUR HEALTH INFORMATION

1.  **General Uses and Disclosures.** In administering your health benefits, we may use and disclose your Health Information for the following purposes and in support of the following, unless more stringent state or federal laws apply:

    **Treatment.** We may use and disclose your Health Information in the provision, coordination, or administration of your health care. For example, we may disclose your Health Information to your primary physician, consulting providers, and to other health care personnel who have a need for such information for your care and treatment.

    **Payment.** To help pay for your health benefits, we may use and disclose your Health Information in a number of ways, including, but not limited to, determining eligibility or coverage; claims management; pre-certification and pre-authorization; conducting utilization reviews; network re-pricing; or coordination of benefits. For example, we may use your Health Information to decide whether a particular treatment is covered by the Plan, and if so, what the payment should be. During that process, we may disclose information to your health care provider. We may also send you Explanation of Benefits forms and other information.

    **Health Care Operations.** We may use and disclose your Health Information during the course of operating the Plan, including, but not limited to, quality assessment and improvement activities; underwriting and premium ratings; detection and investigation of fraud and abuse; care coordination or case management; or general administrative activities. For example, we can use your Health Information to provide you disease management programs for specific conditions, such as diabetes, asthma or heart failure. Other health care operation activities requiring use and/or disclosure of your Health Information include administration of stop loss coverage subrogation and coordination of benefits; legal, actuarial and audit services; business planning and cost management; and other general administrative activities.

    **Disclosure to Your Employer.** We may disclose to your employer sponsoring the Plan or employing you ("Employer") in summary form claims history, claims expenses and other similar information. Such summary information does not disclose your name or other information that will identify you. The Plan may also disclose to your Employer the fact that you are enrolled in, or removed from enrollment in the Plan. The Plan may disclose other Health Information to your Employer for Plan administrative purposes if the Employer agrees in writing to ensure the continuing confidentiality and security of your Health Information. The Employer will not use or disclose your Health Information for employment-related activities.

    **Disclosure to Business Associates.** We may disclose your Health Information to business associates, such as but not limited to Risk Reduction, Inc. (RRI), the Plan Administrator. Business associates are persons or entities who provide services to the Plan, such as third-party administrators and employee assistance programs. Our business associates are required to protect the confidentiality of your Health Information in a manner consistent with this notice.

    **Disclosures to Providers and Other Health Plans.** We may disclose your Health Information to health care providers and/or other health plans for treatment, payment and certain operational activities of the provider or other health plan.

**As Required by Law.** We may use and disclose your Health Information when required to do so by law.

**Abuse and Neglect.** We may disclose your Health Information to a local, state, or federal government authority if we have a reasonable belief that abuse, neglect or domestic violence has occurred.

**Public Welfare and Regulatory Agencies.** We may disclose your Health Information to a health care oversight agency for activities authorized by law, including, but not limited to, licensure, investigations, inspections, and public health reporting purposes. These activities are necessary for the government and certain health oversight agencies to monitor the health care system, government programs, and compliance with civil rights.

**Legal Proceedings.** We may disclose your Health Information in legal proceedings, as well as in response to an order of a court, administrative tribunal, or in response to a subpoena, summons, warrant, discovery request, or similar legal request.

**Law Enforcement.** We may disclose your Health Information to state and federal law enforcement officials when required to do so by law.

**Inmates.** We may disclose your Health Information to a correctional institution or law enforcement official if you are an inmate of the correctional institution or under the custody of the law enforcement official.

**Disclosure to Coroners, Medical Examiners, Funeral Directors.** We may disclose your Health Information to a coroner or medical examiner. This may be necessary, for example, to determine a cause of death. We may also disclose your Health Information to funeral directors, as necessary, to carry out their duties.

**Research.** Under limited circumstances, we may disclose your Health Information to researchers when their clinical research study has been approved and where certain safeguards are in place to ensure the privacy and protection of your Health Information.

**To Avert Threats to Health and Safety.** We may use or disclose your Health Information if we believe, in good faith, that the use or disclosure is necessary to prevent or lessen a serious or imminent threat to the health or safety of a person or the public.

**Specialized Government Functions.** We may disclose your Health Information if you are a member of the armed forces, as required by military command authorities. We may also disclose your Health Information for national security reasons.

**Organ and Tissue Donations.** If you are an organ donor, we may disclose your Health Information to organ procurement organizations or other entities engaged in the procurement, banking, or transportation of cadaveric organs, eyes, or tissue for the purpose of facilitating donation and transplantation.

**Workers' Compensation.** We may disclose your Health Information to your Employer to the extent necessary regarding workers' compensation claims or to comply with state laws relating to workers' compensation or other similar programs.

**Communications about Benefits.** We may use and disclose your Health Information to provide you with information regarding treatment alternatives, treatment reminders or other health-related benefits and services that may be of interest to you.

**Disclosures to Others Involved in Your Health Care and to Disaster Relief Agencies.** We may disclose your Health Information to a relative, a close personal friend, the subscriber of your health benefits plan or any other person you identify, provided the information is directly relevant to that person's involvement with your health care or payment for such care. For example, if a family member or a caregiver calls us with prior knowledge of a claim, we may confirm whether or not the claim has been received and paid. We may also disclose your Health Information to disaster relief agencies. *Except for emergencies or emergency situations, you have the right to stop or limit this kind of disclosure by contacting our Privacy Officer.*

**Other Permitted Uses and Disclosures.** In addition to the items outlined above, we may use and disclose your Health Information (without your written Authorization) for any other purpose permitted by the Privacy Rules.

**2. Uses and Disclosures Which Require Your Written Authorization.** As required by the Privacy Rules, all other uses and disclosures of your Health Information (not described above) will be made only with your written Authorization. Any such authorization must be signed or properly authenticated by you or an authorized representative and must be sufficiently specific in identifying the information to be disclosed and the intended recipients of the information. If you give us an Authorization, you may revoke it at any time. The revocation of your Authorization will be effective immediately, <u>except</u> to the extent that we have relied upon it previously for the use and disclosure of your Health Information, or if the Authorization was obtained as a condition of obtaining insurance coverage and the law provides the insurer with the right to contest a claim under the policy or the plan itself.

## Your Rights

You have the following rights concerning your health information.

**1. Right to Request Restrictions on the Use and Disclosure of Your Health Information.** You have the right to request restrictions on the use and disclosure of your Health Information for treatment, payment and health care operations. We will consider, but do not have to agree to, such requests.

**2. Right to Alternative Communications.** You have the right to request that we communicate with you in confidence about your Health Information by a different means or at a different location than currently provided if you believe that normal communications would endanger you or you have other good cause. We will accommodate reasonable requests.

**3. Right to Inspect and Copy Your Health Information.** You have the right to inspect and copy, upon advance payment of reasonable costs, your own Health Information contained in a designated record set. A "designated record set" contains medical and billing records and any other records that we use for making decisions about your treatment or coverage. However, we are not required to provide you access to all of your Health Information that we maintain. For example, this right of access does not extend to psychotherapy notes, or information compiled in reasonable anticipation of, or for use in, a civil, criminal or administrative proceeding. Where permitted by the Privacy Rules, you may request that certain denials to inspect and copy your Health Information be reviewed.

**4. Right to Request an Amendment of Your Health Information.** You have the right to request an amendment of your Health Information in a designated record set. If we disagree with your requested amendment, we will provide you with a written explanation of the reasons for the denial, an opportunity to submit a statement of disagreement, and a description of how you may file a challenge or complaint.

**5. Right to an Accounting of Disclosures of Your Health Information.** You have the right to receive an accounting of certain disclosures of your Health Information made by us within the last six (6) years before the date of your request. However, the accounting will not include disclosures that occurred prior to the effective date of the Privacy Rules or the Plan's initial Privacy Notice.

**6. Right to Receive a Paper Copy of the Plan's Privacy Notice.** You have the right to receive a paper copy of the Plan's current Privacy Notice upon request, even if you have received the Privacy Notice electronically.

**7. Right to File a Challenge or Complaint Regarding Your Health Information.** You have the right to challenge any use or disclosure of your Health Information by specifying in a signed writing to the Plan's Privacy Official the information, procedures, dates, recipients, and any other details constituting the source of your objection. The Privacy Official will make a final written determination in the case of any such challenge. Following any complaint or challenge, any determination made by the Plan's Privacy Official that is not arbitrary or capricious will be final, conclusive, and binding. You may also file a complaint with the Secretary of the U.S. Department of Health and Human Services. There will be no retaliation for filing a challenge or complaint.

If you want to exercise any of these rights, please contact our Privacy Official. All requests must be submitted to us in writing to the attention of the Plan's Privacy Official at the address below. In some cases, we may charge you a nominal, cost-based fee in advance to carry out your request.

### CONTACT INFORMATION AND HOW TO REPORT A PRIVACY RIGHTS VIOLATION.

If you have questions and/or would like additional information regarding the use and/or disclosure of your Health Information, you may contact the Plan Administrator's Privacy Officer for the SkilStaf Group Health Plan:

Address: **Attn: Health Plan Privacy Official**
Plan Administrator
SkilStaf Group Health Plan
P.O. Box 729
Alexander City, Alabama 35011-0729

Telephone: 800-489-3928
Facsimile: 256-234-6251

Please include your name, telephone number and social security number on all correspondence.

If you believe that your privacy rights under this Plan have been violated or that we have violated our own privacy practices, you may file a challenge or complaint with us. Challenges or complaints submitted to us must be in writing and sent to the attention of our Privacy Official. You may also file a complaint with the Secretary of the U.S. Department of Health and Human Services. There will be no retaliation for filing a challenge or complaint.

Please contact us with any questions that you might have.



# Schedule

**Policyholder:**    SkilStaf
P.O. Box 729
Alexander City, AL  35011

**Policy Number:** 3514634

**Certificateholder:**

**Coverage Effective Date:** January 1, 2002

**Eligible Classes:** All employees covered by the SkilStaf health plan.

**Non-Contributory**

**Critical Care Benefits Plan:** Managed Organ/Tissue Transplant Benefit Plan

**Pre-existing Conditions Limitation:** The lesser of the pre-existing conditions outlined in the policy or the pre-existing condition requirements of SkilStaf.

**Waiting Period:** None



**ZURICH**

## Policy Number: 3514643

# Certificate of Insurance

Zurich Insurance Company (hereinafter referred to as We, Us, or Our) certifies that in consideration of an Eligible Employee's enrollment, if required by the Policy, such person has Coverage under the Policy. This Certificate describes the major terms and conditions of the Coverage. The complete terms of this program are described in the Policy. Nothing in the Certificate will alter or change the Policy. This Certificate replaces and supersedes any other Certificate previously issued.

Coverage under this Certificate goes into effect at 12:01 A.M. Standard Time on the Coverage Effective Date.

This Certificate is Non-Participating

### TABLE OF CONTENTS

|  | Page |
|---|---|
| Schedule | See U-CC-D-101-A |
| Definitions | 4 |
| Eligibility and Effective Date Provisions | 5 |
| Benefits | 8 |
| General Exclusions | 11 |
| General Provisions | 12 |
| General Claims Provisions | 12 |
| Rights at Termination | 14 |

U-CC-101-A CW (6/98)
Page 1 of 16

## ORGAN/TISSUE TRANSPLANT BENEFIT PLAN

Subject to the terms, conditions, limitations, and exclusions in the Policy, this plan provides Coverage and benefits for medical care and treatment related to the following Transplants: bone marrow, heart, heart and lung, lung, double lung, liver, kidney, pancreas, pancreas after kidney, simultaneous pancreas and kidney.

Transplant Period:  The period that begins 10 consecutive days before the Organ or Tissue Transplant is performed and ends 12 consecutive months after the date of surgery.  For a bone marrow Tissue Transplant, the date the marrow is reinfused is deemed the date of the Transplant.

## SCHEDULE OF BENEFITS

### IN-NETWORK

Covered Percent:  100% of the Eligible Charges, subject to the following:

Maximum Organ Procurement Benefit Non-living Donor:  100% during any Transplant Period

Maximum Organ Procurement Benefit Living Donor: 100% during any Transplant Period

Maximum Bone Marrow Harvesting Benefit: 100% during any Transplant Period

Maximum Transportation, Lodging and Meals Benefit: $10,000 during any Transplant Period.  Expenses for Air Ambulance Services are limited under the Air Ambulance Benefit Maximum and not this Benefit Maximum.

Maximum Daily Benefit for Lodging and Meals: $200 during any Transplant Period

Maximum Air Ambulance Benefit: $10,000 during any Transplant Period

Maximum Private Duty Nursing Benefit:  $10,000 during any Transplant Period

Maximum Transplant Evaluation Benefit:  100%

Maximum Daily Outpatient Treatment Benefit: 100%

Maximum Hospital or Skilled Nursing Facility Confinement Benefit:  100%

Maximum Surgical Benefit for Organ or Tissue Transplant:  100%

Maximum for Physician Benefit Charges Including Surgery Benefit for Organ or Tissue Transplant: 100%

Maximum Outpatient Treatment Benefit: 100%

Maximum Benefit per Covered Person per lifetime for all Organ and Tissue Transplants:  $1,000,000

We must certify that the Covered Person qualifies for the In-Network Schedule of Benefits based upon the Transplant Evaluation of an In-Network Transplant Facility or Hospital.

### OUT-OF-NETWORK

Covered Percent:  60% of Eligible Charges, subject to the following:

Maximum Organ Procurement Benefit Non-living Donor:  As per Schedule during any Transplant Period

Maximum Organ Procurement Benefit Living Donor: As per Schedule during any Transplant Period

Maximum Bone Marrow Harvesting Benefit: $10,000 during any Transplant Period

Maximum Transportation, Lodging and Meals Benefit: $10,000 during any Transplant Period.  Expenses for A.  Ambulance Services are limited under the Air Ambulance Benefit Maximum and not this Benefit Maximum.

Maximum Daily Benefit for Lodging and Meals: $200 during any Transplant Period

Maximum Air Ambulance Benefit: $10,000 during any Transplant Period

Maximum Private Duty Nursing Benefit: $10,000 during any Transplant Period

Maximum Transplant Evaluation Benefit: $500

Maximum Daily Outpatient Treatment Benefit: $150

Maximum Hospital or Skilled Nursing Facility Confinement or Outpatient Treatment Benefit:

For Organ and Allogeneic Tissue Transplants and for Autologous Bone Marrow Tissue Transplants for the following conditions Neuroplastoma, Hodgkin's disease, Non-Hodgkin's lymphoma, Acute lymphocytic leukemia, and Acute non-lymphocytic leukemia, We will not pay during any Transplant Period for more than:

1.   $2,000 per day for each of the first consecutive 30 days of a Covered Person Confinement; and

2.   $1,700 per day for each day of a Covered Person's Confinement on or after the 31st day.

For all other Autologous Tissue Transplants, We will not pay during any Transplant Period for more than:

1.   $1,500 per day for each of the first consecutive 30 days of a Covered Person Confinement; and

2.   $850 per day for each day of a Covered Person's Confinement on or after the 31st day.

Maximum Surgical Benefit for Organ or Tissue Transplant: $10,000

Maximum for Physician Benefit Charges Including Surgery Benefit for Organ or Tissue Transplant: $10,000

Maximum Benefit per Covered Person per Lifetime for all Organ and Tissue Transplants: $1,000,000

### Out-of-Network Organ and Tissue Procurement Schedule of Benefits

| Transplant | Maximum Benefit |
|---|---|
| Lung | $17,500 |
| Double Lung | $25,000 |
| Heart | $17,500 |
| Liver | $22,500 |
| Heart/Lung | $17,500 |
| Pancreas | $25,000 |
| Kidney/Pancreas | $25,000 |
| Digestive | Not covered |
| Allogeneic BMT | $17,500 |
| Autologous BMT | $12,500 |

## DEFINITIONS

**Active Work** means regularly performing all normal defined duties as an employee working on a full time basis for at least 30 hours a week.

**Contributory/Non-Contributory Plan** means that the Coverage may or may not require premium payment from You. A Non-Contributory Plan requires no contribution from You. A Contributory Plan requires that You pay all or a portion of the premium. Whether the Coverage is Contributory or Non-Contributory is stated in the Policy Schedule.

**Coverage** means coverage of a Covered Person under the Policy.

**Covered Person** means You and Eligible Dependents who become covered under the Policy. An Eligible Dependent who is eligible to be an Insured Person may not also be covered as a spouse or dependent child of another Insured Person. Eligible Dependents may not be covered unless the Eligible Employee is an Insured Person.

**Eligible Dependents** means the classes of dependents shown defined in the Schedule.

**Eligible Employee** means an employee of the Policyholder who satisfies the eligibility requirements for an employer.

**Hospital** means an institution that is run for the care and treatment of sick and injured persons as in-patients and which, on its premises or in facilities available to the Hospital on a pre-arranged basis, meets fully the following:

1.   Is accredited as a Hospital under the hospital accreditation program of the Joint Commission on the Accreditation of Hospitals or its successor and is qualified to participate in the Medicare program; or

2.   Satisfies the following criteria:

   **a.** Is licensed by a government agency under the jurisdiction of the federal or a state government of the United States of America;

   **b.** Is operated in accordance with the laws pertaining to hospitals in the jurisdiction in which it is located;

   **c.** Is under the supervision of a medical staff and has one or more Physicians available at all times;

   **d.** Provides 24 hour a day service by registered graduate nurses (RN's); and

   **e.** Is not other than incidentally a place for the aged, a place for the mentally ill, or a nursing or convalescent home.

**Incurred or Incurs** means a charge made on the date services or supplies are rendered to a Covered Person.

**Injury** means bodily injury sustained by a Covered Person that is caused by an accident that is direct and independent of all other causes and occurs while such Covered Person has Coverage.

**Inpatient** means a person who is confined as a registered bed-patient in a Hospital or Skilled Nursing Facility for 24 hours or longer and for whom a room and board charge is made.

**Insured Person** means an Eligible Employee who has enrolled for Coverage under the Policy, if required, paid any contribution, if required, and has been accepted by Us, if such approval is required. You and Your means the Insured Person.

**In-Network Hospital** means any Hospital, Skilled Nursing Facility, or Provider with which We or Our designee have a specific arrangement or contract to perform a covered service or treatment at an agreed upon rate.

**Medically Necessary** means a service or supply that:

1.   Is ordered by a Physician;

2.   Is provided for the diagnosis or treatment of a Sickness or Injury;

3.   Is commonly and customarily recognized by the medical profession as an appropriate treatment of the diagnosed conditions;

4.   Does not represent unnecessarily repeated tests; and

5.   Is not educational or experimental in nature.

**Nurse** means a graduate registered nurse (R.N.), licensed practical nurse (L.P.N.) or a licensed vocational nurse (L.V.N.) who is providing care prescribed by a Physician. Such nurse may not be related by blood, marriage, or adoption to the Covered Person.

**Out-of-Network Hospital** means any Hospital, Skilled Nursing Facility, or Provider with which We or Our designee, do not have a specific agreement or contract to perform a covered service or treatment under the Policy.

U-CC-101-A CW (6/98)
Page 4 of 16

**Outpatient Treatment** means Medically Necessary services and supplies provided to a Covered Person for treatment either outside a Hospital or Skilled Nursing Facility or from an outpatient department of a Hospital or Skilled Nursing Facility.

**Pre-existing Conditions Limitation** means a condition due to Sickness or Injury for which medical treatment was rendered or recommended by a Provider within 6 consecutive months Covered Person's enrollment date as defined in the Health Insurance Portability and Accountability Act of 1996, herein referred to as HIPAA). A condition will no longer be considered a Pre-Existing Condition on the first to occur of:

1. The date such person has completed a period of 6 consecutive months without treatment and while Coverage is in force;

2. After such person's Coverage has been in force for 12 consecutive months; or

3. Twelve months (18 months in the case of a late enrollee as defined in HIPAA) after the Covered Person's "enrollment date" as defined in HIPAA, minus the Covered Person's "prior creditable coverage" as defined in HIPAA.

**Physician** means any duly licensed medical doctor who operates within the scope of his or her license. Such person may not be related to the Covered Person by blood, marriage or adoption.

**Provider** means any duly licensed medical practitioner, including a Physician, who operates within the scope of his or her license. Such person may not be related to the Covered Person by blood, marriage or adoption.

**Sickness** means a sickness or disease that impairs normal functions of the body or mind.

**Skilled Nursing Facility** means a licensed institution other than a Hospital that:

1. Provides skilled inpatient medical care and treatment;

2. Is under full-time supervision by at least one Physician or Nurse and has 24 hours nursing services; and

3. Maintains complete medical records and a utilization plan for all patients.

Skilled nursing facility does not include nursing homes or any other institution used mainly for convalescence, nursing homes or any other institution used mainly for convalescence, nursing, rest housing for the elderly or for custodial care or education care.

**Waiting Period** means the continuous length of time an Eligible Employee must serve to be covered under the Policy or a Critical Care Benefits Plan.

## ELIGIBILITY AND EFFECTIVE DATE PROVISIONS

**Eligible Employee:** An Eligible Employee will become an Insured Person if he or she:

1. Is in an eligible class described in the Schedule;

2. Enrolls for Coverage on an enrollment form acceptable to Us, if required; and

3. Pays the required premium, if any.

You may also elect to cover your Eligible Dependents by enrolling such dependents on a form acceptable to Us, if any, and paying any required premium. A Dependent child may not have Coverage under more than one Insured Person's Coverage. If both parents are covered as Insured Persons, then the child will be covered under the Eligible Person named in a written agreement. If no such written agreement exists, such child will be an Eligible Dependent of:

1. The Insured Person who became covered under the Policy with respect to the child while that child was an Eligible Dependent of only that Insured Person; or

2. The Insured Person who has the longest continuous service with the Policyholder based on the Policyholder's records.

**Covered Person Effective Date:** Eligible Employee who satisfies the criteria described in the *Eligible Employee* provision prior to the Policy Date will become covered on the Policy Date. For persons who become Eligible Employee after the Policy Date, such person must satisfy the criteria in the *Eligible Employee* provision within 31 days of attaining such eligibility.

An Eligible Dependent's coverage becomes effective on Your effective date of Coverage unless he or she is a Late Entrant.

A Late Entrant is an Eligible Employee or Dependent who either:

1. Would otherwise be eligible for coverage under the Policy on the Policy Date but did not elect Coverage; or

U-CC-101-A CW (6/98)
Page 5 of 16

2. Became an Eligible Person or Dependent after the Policy Date but did not elect Coverage within 31 days of such eligibility.

A Late Entrant cannot qualify for Coverage unless:

1. He or she did not enroll for coverage because he or she was covered under another plan (as defined in HIPAA) in which case he or she may become a Covered Person, if he or she enrolls for coverage within 31 days of losing Coverage under such other plan;

2. A Late Entrant qualifies as an Eligible Dependent through marriage in which case he or she may become a Covered Person if such spouse is enrolled for Coverage within 31 days of the date of marriage; or

3. A Late Entrant qualifies as an Eligible Dependent through adoption or placement for adoption in which case he or she may become a Covered Person if he or she is enrolled within 31 days of the date of adoption of the date of placement for adoption whichever is applicable.

**Additional Covered Persons:** You may add other Eligible Dependents who become eligible after Your effective date of Coverage by enrolling such Eligible Dependent within 31 day of become eligible and paying any required contribution.   Eligible Dependents who are not enrolled within 31 days of such eligibility will be considered Late Entrants.

**Newborn Children:** If the Policy provides Coverage for an Eligible Dependent, We will cover Your newborn child from the moment of birth without premium charge to the extent Coverage is provided under the Policy. We will continue Coverage for 31 days from the date of birth. To continue Coverage beyond this date, We must receive written notice of the birth within such 31-day period and any required premium. Benefits provided for such newborn are limited to those described in the benefits provided to You. In addition, Coverage will include medically diagnosed congenital defects and birth abnormalities. Coverage will not include confinement for routine well baby care, routine nursing care, immunizations, medical examinations or tests. If We do not receive notice of birth within the 31-day period, such Eligible Dependent will be considered a Late Entrant.

**Handicapped Children:** You may continue Coverage of an unmarried covered Dependent Child beyond the limiting age shown in the Schedule provided the Dependent Child is incapable of self-sustaining employment due to a mental or physical handicap and is chiefly dependent on You for support and maintenance. We must receive proof of the incapacity within 31 days of the date such Dependent Child's Coverage would otherwise terminate due to reaching the limiting age.   We may require proof of continuance but not more frequently than annually after two years following the Dependent Child reaching the limiting.

**Termination:** Your coverage will terminate on the first to occur of the date:

1. The Policy terminates;

2. The You are no longer an Eligible Person; or

3. You live outside the United States of America; or

4. Premium is not paid when due.

**Covered Dependent Termination:** A Covered Dependent's Coverage will end on the first to occur of the date that the Insured Person's coverage ends or the date such dependent is no longer an eligible Dependent

unless Coverage is extended according to the *Handicapped Children* provision or the Covered Person lives outside the United States of America.

See the Section entitled *RIGHTS AT TERMINATION OF COVERAGE* for any applicable extensions.

## ORGAN/TISSUE TRANSPLANT BENEFIT PLAN

This Benefit pays for Eligible Charges incurred for the medical care and treatment of a Covered Person for services and supplies furnished in connection with an Organ or Tissue Transplant. Benefits are subject to any limitations described in the Policy.

When the Organ or Tissue Transplant requires the surgical removal of the donated part from a live Donor who is not a Covered Person with respect to this Benefit, such person will be deemed a Covered Person under this Benefit.

## BENEFIT DEFINITIONS

**Air Ambulance** means the conveyance of a Donor, organ, or patient by means of a private non-scheduled airline when the life of the patient or the viability of the organ to be transplanted may not be sustained by normal commercial means of transportation.

**Allogeneic Bone Marrow Transplant** means a harvest of stem cells, whether from the bone marrow or the peripheral blood, from a third party Donor, for reinfusion into a recipient. It includes the procedure known as allogeneic peripheral stem cell transplant.

**Autologous Bone Marrow Transplant** means a harvest of stem cells, whether from the bone marrow or peripheral blood, to remedy damage to or suppression of the Covered Person's bone marrow or blood forming system resulting from the receipt of chemotherapy or radiation therapy. It includes the procedure known as autologous peripheral stem cell transplant.

**Companion** means a spouse, parent or person chosen by the Organ or Tissue Transplant recipient to accompany the recipient to the Hospital. If the recipient is a minor, two Companions may accompany the minor to such Hospital.

**Consecutive Days of Confinement** means that a Covered Person's stay in the Transplant Hospital or Transplant Facility stay is not separated by three (3) days of discharge from the inpatient department of the Transplant Hospital or Transplant Facility performing the transplant. In the case of a Hospital Facility or Transplant Facility that performs the Transplants in an Inpatient/Outpatient schedule program, consecutive days shall be counted as those consecutive days within the inpatient and scheduled outpatient departments of the Hospital Facility or Transplant Facility performing the Transplant procedure. Consecutive stays will be separated by a three (3) day discharge from the inpatient and outpatient departments of the Hospital Facility or Transplant Facility performing the procedure.

**Covered Percent** means the percentage of Eligible Charges used to determine the benefits payable for such charges. The Covered Percent is shown in the Schedule of Benefits.

**Custodial Care** means a level of routine maintenance to meet personal needs that does not require the care giver to have professional qualifications, skills, or training. Custodial Care includes but is not limited to the following activities of daily living:

1. Personal assistance services such as room and board, assistance in walking, getting in and out of bed, dressing, feeding, and toileting;

2. Preparation of special diets;

3. Supervision of medication that can be self-administered; and

4. Programs and therapies involving or described as convalescent care, rest care, sanatoria care, education care, or recreational care.

Such treatment is custodial regardless of who orders, prescribes or provides the treatment.

**Donor** means a live or cadeveric person donating an organ for the sole purpose of reinfusing, transfusing, or transplanting.

**Eligible Charges** means charges incurred for medical care, transportation, and confinement required to treat a Sick or Injured Covered Person for a covered Organ or Tissue Transplant. Such charges must be authorized by a Provider for medically necessary treatment.

**In-Network Hospital** means any Hospital, Skilled Nursing Facility, or Provider with which We or Our designee have a specific agreement or contract to perform a covered service or treatment at an agreed upon rate under the Organ/Tissue Transplant Benefit Plan.

**Organ Transplant** means the surgical removal from one person to another of any of the organs listed in the Organ/Tissue Transplant Benefit Plan.

U-CC-101-A CW (6/98)
Page 7 of 16

**Out of Network Hospital** means any Hospital, Skilled Nursing Facility or Provider that does not have a special agreement or contract with Us or Our designee to provide a covered service or treatment under the Organ/Tissue Transplant Benefit Plan.

**Procurement Services** means services and supplies related to the removal, preservation and transportation of the donated organ.

**Tissue Transplant** means the surgical transfer of Bone Marrow from one person to another (Allogeneic Bone Marrow Transplant) or from self to self (Autologous Bone Marrow Transplant).

**Transplant Evaluation** means an evaluation by a Transplant Hospital or Transplant Facility determine whether or not an organ or tissue transplant would be a Medically Necessary and appropriate treatment.

**Transplant Hospital** or **Transplant Facility** means a Hospital that is equipped to perform an Organ or Tissue Transplant and is recognized in the medical community as specializing in the performance of Organ or Tissue Transplant.

**Transplant Period** means the period described in the Organ/Tissue Transplant Benefit Plan. Two or more Transplant Periods will be treated as separate Transplant Periods if:

1. They are due to unrelated causes; or

2. They are due to related causes and the Transplant Periods are separated by 6 consecutive months, and the Covered Person is not confined at home or in a Transplant Hospital or Transplant Facility or Skilled Nursing Facility on the day immediately preceding the second Transplant Period.

**BENEFITS**

Benefits are payable for Eligible Charges Incurred by a Covered Person that are directly related to an Organ or Tissue Transplant procedure performed in a Transplant Hospital or Transplant Facility. The Covered Percent and Benefit Maximums are shown in the Schedule, We will pay the Eligible Charges:

1. For services and supplies furnished for Organ Procurement from a non-living Donor including removal, preservation and transportation of such organ up to the Maximum Organ Procurement Benefit (Non-Living Donor);

2. For services and supplies furnished for Organ Procurement from a live Donor including removal, preservation and transportation of such organ up to the Maximum Organ Procurement Benefit (Living Donor). This includes screening of potential Donors, transporting the chosen Donor to and from the Transplant Hospital or Transplant Facility, medical expenses associated with removal of the donated organ and the associated medical services rendered to the Donor. This applies only if the Covered Person is the recipient of the transplant;

3. For services and supplies furnished for Bone Marrow Harvesting up to the Maximum Bone Marrow Harvesting Benefit;

4. For transportation of the Organ or Tissue Transplant recipient to and from the Transplant Hospital or Transplant Facility and charges for transportation, lodging, and meals for the Companion who accompanies the Organ or Tissue Transplant recipient to the Transplant Hospital or Transplant Facility. If the recipient is a minor, benefits are payable for two Companions. We will pay up to the Maximum Transportation, Lodging, and Meals Benefit shown in the Schedule of Benefits. Also, lodging and meals benefits are subject to the Maximum Daily Benefit for Lodging and Meals shown in the Schedule of Benefits. We must receive receipts for such charges before they are payable. Charges for transportation via an Air Ambulance will be paid under that benefit in lieu of this benefit;

5. For services provided by an Air Ambulance to transport the Organ or Tissue Transplant recipient to and from the Transplant Hospital or Transplant Facility and for the Companion who accompanies such recipient. We will pay up to the Maximum Air Ambulance Service Benefit;

6. For Hospital Facility or Transplant Facility or Skilled Nursing Facility Confinement including room and board, pre-transplant chemotherapy and radiation and other non-professional services and supplies furnished by the Hospital or Skilled Nursing Facility in connection with an Organ or Tissue Transplant. We will pay up to the Maximum Hospital and Skilled Nursing Facility Benefit. Eligible Charges related to the Hospital Confinement for Bone Marrow Harvesting (item 3) and Private Duty Nursing (item 8) are payable under those provisions in lieu of this provision;

7. For Outpatient Treatment up to the Maximum Daily Outpatient Treatment Benefit and the Maximum Outpatient Benefit;

8. Incurred for Private Duty Nursing services by a Nurse up to the Maximum Private Duty Nursing Benefit;

9. Physician's charges for the surgical procedure related to the Organ or Tissue Transplant up to the Maximum Surgical Benefit for Organ or Tissue Transplant;

U-CC-101-A CW (6/98)
Page 8 of 16

10. For Physician's care and treatment other than the surgical procedure related to the Organ or Tissue Transplant up to the Maximum for Physician Benefit Charges Including Surgery Benefit for Organ or Tissue Transplants;

11. Incurred for services and supplies furnished in connection with an Organ or Tissue Transplant other than those described above as long as they are Medically Necessary and not otherwise excluded or limited under the Policy. We may require receipts for such charges prior to payment;

12. Incurred for Transplant Evaluation including transportation, lodging, meals, and medical expenses. A second Transplant Evaluation shall be covered in another In-Network Transplant Hospital or Transplant Facility approved facility if the Covered Person requests it and We are in agreement.

Charges for the following list of services and supplies are considered Eligible Charges as long as:

1. The service or supply is furnished to a Covered Person and was ordered by a Physician for the Organ or Tissue Transplant or Bone Marrow Harvesting;

2. The need for the Organ or Tissue Transplant or Tissue Transplant or Bone Marrow Harvesting surgery is confirmed before the surgery in writing by two board Physicians who are involved in the field of surgery. Each Physician must certify that alternative procedures, services or courses of treatment would not be effective in the treatment of the patient's condition. If confirmation is not submitted prior to the surgery, the Eligible Charges will be 80% of the charges that would have otherwise been payable had confirmation been submitted; and

3. The service or supply is provided during a Transplant Period while the recipient is a Covered Person. The requirement that a service or supply be provided during a Transplant Period is waived for Bone Marrow Harvesting, living Donor Organ Procurement, Air Ambulance services and Transportation, Lodging and Meals provided for an Organ or Tissue Transplant.

A charge, or part of a charge, is not an Eligible Charge if it is not a covered charge under the terms of the Policy.

Subject to all terms of the Policy, We will cover:

1. Transplant Hospital or Transplant Facility room and board including stays in a private room when Medically Necessary for isolation to safeguard a Covered Person's health;

2. All other supplies and non-professional services furnished by the Transplant Hospital or Transplant Facility for medical care;

3. Anesthetics and their administration;

4. Physician's services for surgical procedures in connection with the Organ or Tissue Transplant when performed in a Transplant Hospital or Transplant Facility;

5. Physician's services for other medical care;

6. Outpatient Treatment;

7. Private duty professional nursing by a Nurse;

8. Therapy that is provided by a qualified speech therapist to restore speech after a loss or impairment of a demonstrated previous ability to speak. (The speech therapist may not be related to the Covered Person by blood, marriage or adoption.);

9. Treatment by a physical or occupational therapist not related to the Covered Person by blood, marriage, or adoption;

10. Drugs and medicines prescribed by a Physician;

11. X-ray exams and lab exams;

12. Surgical dressings, blood and blood plasma for the Covered Person;

13. Oxygen and rental of equipment for its use;

14. Durable medical equipment including but not limited to a wheelchair, iron lung, or hospital bed purchased or rented;

15. Ambulance use for local travel;

16. Transportation of the recipient for covered services or treatment by railroad or as a passenger on a regularly scheduled passenger flight of a commercial aircraft or by Air Ambulance when such Air Ambulance is licensed to provide such service or by personal automobile outside of a 50 mile radius during confinement.

17. Skilled Nursing Facility services and supplies for:

U-CC-101-A CW (6/98)
Page 9 of 16

a.  Skilled Nursing Facility room and board including normal daily services and supplies as furnished by the Skilled Nursing Facility; and

b.  Other supplies and non-professional services furnished by the Skilled Nursing Facility for medical care in it;

The Covered Person's Physician must order the Skilled Nursing Facility stay for recovery from an Organ o Tissue Transplant. Such stay must be preceded by Transplant Hospital or Transplant Facility confinement for such Transplant.  The Covered Person must be under the Physician's continuous care and the Physician must certify that such person needs 24 hour a day nursing care.

18.  Part-time or intermittent home nursing care, other than Custodial Care, given or supervised by a Nurse;

19.  Part-time or intermittent home health aide service, mainly for care of the Covered Person, subject to the following conditions:

a.  the services are not mainly Custodial Care;

b.  the services are prescribed in writing by the Covered Person's Physician for continued care and treatment of the Covered Person after an Organ or Tissue Transplant at home immediately after such person's Transplant Hospital or Transplant Facility or Skilled Nursing Facility confinement for the same Organ or Tissue Transplant and would otherwise require Transplant Hospital or Transplant Facility or Skilled Nursing Facility confinement in absence of such care; and

c.  such person continues under a Physician's care;

20.  Services and supplies related to obtaining the Donor organ, evaluation for such organ, removal or the organ from the Donor and reasonable costs for transporting the organ to the Transplant Hospital or Transplant Facility;

21.  The actual charge Incurred for the transportation of the Companion to and from the Hospital Facility or Transplant Facility in which the Organ or Tissue Transplant recipient is confined.  We require receipts for such charges as part of Our claims procedures;

22.  The charges Incurred for lodging and meals for the Companion while the Organ or Tissue Transplant recipient is confined in the Transplant Hospital or Transplant Facility.  We require receipts for such charges as part of our claims procedures.


**Charges Not Covered**

In addition to all of the other exclusions and limitations described in the Policy, the following charges for services or supplies are not covered:

1.  Services received before or after the Transplant Period, other than services for Bone Marrow Harvesting, living Donor Organ Procurement, Air Ambulance or Transportation, Lodging and Meals related to the Organ or Tissue Transplant.

2.  An Organ or Tissue Transplant performed prior to the Covered Person's Effective Date;

3.  Any services that are not related to the Organ or Tissue Transplant;

4.  Any services unrelated to the diagnosis or treatment or a Sickness resulting directly from the Organ or Tissue Transplant;

5.  Cardiac rehabilitation services which are not part of the Organ or Tissue Transplant treatment;

6.  Any drugs that are investigative or which have not been approved for general  ale by the U nited States Food and Drug Administration;

7.  Services and supplies that are not Medically Necessary;

8.  Mileage or expenses related to use of a personal automobile within a 50 mile radiu  of the transp  nt center.

9.  Services related to Custodial Care;

10.  Personal comfort and convenience items and services;

11.  Routine physical examinations;

12.  Any Transplant not specifically listed in the Organ/Tissue Transplant Benefit Plan

13.  Animal to human transplants;

14.  Any artificial or mechanical devices designed to replace organs either permanently or temporarily;

15.  Any form of renal dialysis;

U-CC-101-A CW (6/98)
Page 10 of 16

16. Any charge for a service or supply to the extent that it is above the usual, customary and reasonable charge made by the Provider for the service or supply. We reserve the right to make the final determination of what the usual, customary, and reasonable charge is for a service or supply; or

17. Any charge that is above the prevailing charge in the area for a like service or supply. A charge is above the prevailing charge to the extent that it is above the range of charges generally made in the geographic area for a like service or supply. We reserve the right to make the final determination of the prevailing charge.

**Overall Maximum**

The benefits payable for a Covered Person's Organ or Tissue Transplant will not exceed the Maximum Benefit shown in the Schedule of Benefits.

**Continuation of Transplant:** If, at the time a Covered Person's Coverage would otherwise terminate according to the terms of the Policy, such person has established a Transplant Period for which benefits are not exhausted, benefits will be paid for the remaining part of that Transplant Period as if such Coverage had not ended, as long as the covered Person remains the liability of the underlying Plan. Benefits will be based on the plan in force for that person on the date that Coverage ends.

## GENERAL EXCLUSIONS

We will not pay benefits for any loss due to or resulting either directly or indirectly from:

1. Intentionally self-inflicted Injuries;

2. War or act of war, declared or undeclared;

3. Use of alcohol or drugs not prescribed by a Physician;

4. Participation in a riot or in the commission or attempted commission of any assault or felony

5. Pre-existing Conditions;

6. Service in the armed forces of any country or authority and in such event any pro-rata unearned premium will be returned;

7. Any treatment or service rendered within any institution owned or operated by any federal, state or county government in the United States or for which neither You nor any Covered Person in Your family is legally required to pay ( except Medicaid);

8. Cosmetic or reconstructive surgery;

9. Routine check-ups; or

10. Any work related Sickness or Injury to the extent that the expense is eligible for payment under Workers' Compensation or similar law.

U-CC-101-A CW (6/98)
Page 11 of 16

## GENERAL PROVISIONS

**Conformity With State Statutes:** On the Policy Date, if any provision conflicts with the laws of the state of jurisdiction, it shall be deemed to conform to law.

**Incontestability:** If You made a misstatement on the enrollment form for Your Coverage or an eligible Dependent's Coverage, We may not use it to void the Certificate or deny a claim for a loss Incurred that starts after 2 years from the Covered Person's Effective Date. However, if the statement was fraudulent there is no time limit.

**Grace Period:** We grant a 31-day grace period for premium payment due except the first. The Policy remains in force during the grace period unless the Policyholder has given Us written notice of termination according to the terms of the Policy. There is no grace period if We have been given such termination notice. The Policyholder is liable for the payment of a pro rata premium for the time the Policy was in force during the Grace Period.

**Reinstatement:** If a renewal premium is not paid on behalf of a Covered Person before the Grace Period ends, Coverage will end. Coverage will be reinstated at the first to occur:

1. The 45th day after the date of such application, unless We have notified the Covered Person in writing of Our disapproval of the application;

2. The date We approve the application; and

3. We receive the premium due for reinstatement.

The Policy must be in force for a reinstatement to take place. The reinstated Certificate will cover a loss that results from an Injury sustained after the reinstatement date or loss due to Sickness that starts more than 10 days after such date. In all other respects, the Covered Person's rights and Ours will remain the same, subject to any provisions noted on or attached to the reinstated certificate. Any premiums We accept for reinstatement will be applied to a period for which premiums.

**Misstatement of Age:** If the age of any Covered Person has been misstated, the benefits payable will be those that the person would have been entitled at his or her true age. We will adjust the premiums so that the correct premiums for such person's true age are payable.

## GENERAL CLAIMS PROVISIONS

The following provisions describe the general claims paying requirements for the Policy.

**Notice of Claim:** Written notice of claim must be given within 20 days after the covered loss occurs or as soon as reasonably possible. The notice can be given to us or Our Agent. Notice must include the Covered Person's name and the Policyholder or Policy Number.

**Claim Forms:** When We receive the notice of claim, We will send forms for filing proof of loss. If these forms are not given within 15 days, the claimant may meet the proof of loss requirements by sending Us or Our agent a written statement s of the nature and extent of the loss within the time limit stated in the Proof of Loss provisions.

**Proof of Loss:** Written proof of loss must be given within 90 days after such loss occurs. If it was not reasonable to give proof in the time required, We shall not reduce or deny the claim for this reason if proof is filed as soon as was reasonably possible. In any event, the proof required must be given no later than one year from the time specified unless the claimant lacked legal capacity.

**Time of Payment of Claim:** Claims will be paid promptly upon receipt of due written proof of loss. We have the right to investigate all claims to determine if the charge is an Eligible Charge and to ensure that the treatment was not for a Pre-Existing Condition.

**Payment of Claim:** Benefits for expenses Incurred for services, treatment or supplies rendered Out-of-Network will be paid to You unless assigned according to the terms of this Policy. Benefits for expenses Incurred for services, treatment or supplies rendered In-Network will be paid to the Provider who provides the treatment, service or supply.

**Assignment of Benefits:** You may authorize payment of benefits directly to the Provider who performed the covered service(s) or treatment(s). Assignment is made on the claim form. After making authorized payments, Our responsibility to pay those Benefits is satisfied.

U-CC-101-A CW (6/98)
Page 12 of 16

**Facility of Payment:** We may pay benefits to the Provider making the charge or to a relative by blood or marriage of a claimant when a benefit is payable to You and You die or someone who is a minor or legally incapable of giving valid receipt and discharge of payment. Any payment under this provision satisfies Our responsibility for such payment. We have no further obligation for payment of the claim.

**Physical Examination/Autopsy:** We have the right to physically examine a Covered Person as often as reasonably needed while a claim is pending. We may also require an autopsy, in the case of death, where it is not forbidden by law. We will bear all costs.

**Legal Action:** No legal action may be brought under the Policy within 60 days after written proof of loss has been given as required by this Policy. No action may be brought after 3 years (in Kansas, Florida and Tennessee 5 years; in South Carolina or Wisconsin 6 years) from the time written proof of loss is required to be given.

U-CC-101-A CW (6/98)
Page 13 of 16

## RIGHTS AT TERMINATION OF COVERAGE

If the Policy Schedule includes COBRA qualified beneficiaries as Eligible Persons, a Covered Person may extend Coverage beyond a date that it would otherwise terminate according to the following terms:

For all COBRA qualified beneficiaries, the following conditions apply:

1. The COBRA qualified beneficiaries had Coverage on the day prior to the occurrence described below;
2. The Policy is in force on the date of such termination, and
3. Termination of Coverage is not due to non-payment of premium.

**Termination of Employment:** If Your Coverage terminates due to termination of employment for any reason (except gross misconduct) or due to a reduction in work hours causing You to be ineligible, Your Coverage and Your Covered Dependent's Coverage will continue until the first to occur of the date:

1. Coverage has been in effect under this extension for 18 months;
2. You are entitled to Medicare;
3. You or Your Covered Dependent does not make the required premium payment;
4. The Policy is terminated.

If **Your Death, Divorce or Legal Separation,** or **Your Covered Dependent Child Reaching the limiting Age** (as described in the Policy), occurs within the 18 month period described above, Your Covered Dependent may extend the Coverage for an additional 18 months from the time of the occurrence.

If during the first 60 days of Coverage under **Termination of Employment** (as described in this section), You or Your Covered Dependent is determined to be totally disabled by the Social Security Administration, You or Your Covered Dependent's Coverage will be extended for an additional 11 months. Coverage will only be extended if notice of the determination is given within 60 days of the determination and before the 18 month period has expired. Notice must be given to the Policyholder within 30 days of a final determination by the Social Security Administration that the You or Your Covered Dependent does not qualify as totally disabled.

Coverage will continue until the first to occur of the date:

1. Coverage has been in effect for 29 months;
2. You or Your Covered Dependent is entitled to Medicare;
3. You or Your Covered Dependent is not determined to be totally disabled by the Social Security Administration and the initial 18 month period of extension has expired.

**Death of Insured Person:** If Your Coverage terminates due to death causing Your Covered Dependent(s) to be ineligible for Coverage, Coverage will continue for such Covered Dependent until the first to occur of the date:

1. Coverage has been in effect under this extension for 36 months;
2. The Covered Dependent does not make the required premium payment;
3. The Policy is terminated.

**Divorce or Legal Separation of the Insured Person:** If Your Covered Dependent's Coverage terminates due to Your divorce or legal separation, Coverage will continue for the Covered Dependent(s) until the first to occur of the date:

1. Coverage has been in effect under this extension for 36 months;

U-CC-101-A CW (6/98)
Page 14 of 16

2.  The Covered Dependent does not make the required premium payment;

3.  The Policy is terminated.

**Medicare Coverage:** If Your Covered Dependent's Coverage terminates due to Your qualification under Medicare, Coverage will continue for Your Covered Dependent(s) until the first to occur of the date:

1.  Coverage has been in effect under this extension for 36 months;

2.  The Covered Dependent does not make the required premium payment;

3.  The Policy is terminated.

**Covered Dependent Child Reaching Limiting Age:** If Your Covered Dependent Child's Coverage terminates due to the eligibility requirements under the Policy, Coverage will continue for Your Covered Dependent Child until the first to occur of the date:

1.  Coverage has been in effect under this extension for 36 months;

2.  The Covered Dependent does not make the required premium payment;

3.  The Policy is terminated.

**Retired Insured Person:** If the Policy has an eligible class of retirees and if You come under that class and if Your Coverage terminates within 1 year before or 1 year after the Chapter 11 Bankruptcy filing of Your employer, Your Coverage will continue until the first to occur of the date:

1.  Coverage has been in effect under this extension for 36 months;

2.  The Covered Dependent does not make the required premium payment;

3.  The Policy is terminated.

If You die within 1 year after the Chapter 11 Bankruptcy filing and Your Covered Dependent Spouse's Coverage terminates within that period, Coverage will continue for Your Covered Dependent Spouse until the first to occur of the date:

1.  The Covered Dependent Spouse dies;

2.  The Covered Dependent Spouse does not make the required premium payment;

3.  The Policy terminates.

If Your Covered Dependent Spouse's Coverage or Your Covered Dependent Child's Coverage terminates due to Your death as described above and You died during the extension of coverage as described above, Coverage will continue until the first to occur of the date:

1.  Coverage has been in effect under this extension for 36 months;

2.  The Covered Dependent does not make the required premium payment;

3.  The Policy terminates.

**Notification Requirements:** If termination of Coverage is due to **Termination of Employment, Your Death, or Medicare Coverage** (as described in this section of the Policy), the Policyholder must notify You or Your Covered Dependent of the right to

U-CC-101-A CW (6/98)
Page 15 of 16

continue Coverage within 44 days of the occurrence which gives rise to the right to continue Coverage. Notification must include an election form and instruction for premium payment

To receive the extension of Coverage under this section of the Policy, You and/or Your Covered Dependent must return the election form to the Policyholder within 60 days after receiving notice or the date of the occurrence giving rise to the right to extend coverage, whichever is later and pay the first premium within 45 days after the date You or Your Covered Dependent elected to continue Coverage. Payment is made to the Policyholder. Premiums are due on the first day of the month for each month of Coverage under this extension.

**Termination Due to Coverage Under another Group Health Plan:**  If You or Your Covered Dependent first becomes covered under another group health plan after the date on which COBRA continuation coverage is elected, Coverage will terminate under the COBRA continuation on the date such person first becomes covered under the other group health plan. Termination may occur only if all of the following conditions are met:

1. You or Your Covered Dependent must be actually covered under the other group plan rather than eligible to be covered under it.

2. The other group plan must not be maintained by the employer or employee organization that maintains the plan under which COBRA continuation must otherwise be maintained; and

3. The other group health plan must not contain any exclusion or limitation with respect to any pre-existing condition of the Insured Person or Covered Dependent.

If You or Your Covered Dependent first becomes covered under another group health plan on or before the date on which COBRA continuation is elected, then the other group health coverage cannot be used as a basis for terminating the COBRA continuation of coverage.

U-CC-101-A CW (6/98)
Page 16 of 16

# Special Risk International Transplant Network

1. **Brigham and Women's Hospital, Boston, MA**
(Adult) heart, lung, kidney
(Adult & Pediatric) BMT auto & allo

2. **City of Hope Cancer Center, Duarte, CA**
(Adult & Pediatric) BMT auto & allo

3. **Dana Farber Cancer Center, Boston, MA**
(Adult & Pediatric) BMT auto & allo

4. **Emory University and Children's Healthcare of Atlanta**
(Adult) heart, liver, kidney, kidney/pancreas, BMT auto & allo
(Pediatric) heart, liver, kidney, BMT auto & allo

5. **Fred Hutchinson/ Seattle Cancer Care Alliance, Seattle, WA**
(Adult & Pediatric) BMT auto & allo

6. **Hartford Hospital, Hartford, CT**
(Adult) heart, liver, kidney (Pediatric) kidney

7. **Hershey Hospital, Hershey, PA**
(Adult) heart, liver, lung, kidney, pancreas, BMT auto
(Pediatric) heart, liver, kidney

8. **Integris Baptist, Oklahoma City, OK**
(Adult) heart, lung, kidney, kidney/pancreas
(Pediatric) liver

9. **Jackson Memorial Hospital, U of Miami, Miami, FL**
(Adult) heart, liver, kidney, kidney/pancreas, pancreas, intestine, BMT auto & allo
(Pediatric) heart, liver, kidney, intestine

10. **Johns Hopkins University and Hospital, Baltimore, MD**
(Adult) heart, liver, lung, kidney, kidney/pancreas, pancreas, BMT auto & allo
(Pediatric) liver, kidney, BMT auto& allo

11. **Massachusetts General Hospital, Boston, MA**
(Adult) heart, heart/lung, liver, lung, kidney, kidney/pancreas
(Pediatric) liver, kidney

12. **Mayo Clinic, Scottsdale, AZ**
(Adult) liver, kidney

13. **Mayo Clinic, Jacksonville, FL**
(Adult) liver, BMT auto& allo  (Pediatric) liver

14. **Mayo Clinic, Rochester, MN**
(Adult) heart, liver, kidney, kidney/pancreas, BMT auto & allo
(Pediatric) heart, liver, kidney, BMT auto& allo

15. **Memorial Sloan Kettering, New York, NY**
(Adult & Pediatric) BMT auto & allo

16. **Moffitt Cancer Center, Tampa, FL**
(Adult) BMT auto & allo

17. **MD Anderson Cancer Center, Houston, TX**
(Adult & Pediatric) BMT auto & allo

18. **Ochsner Foundation, New Orleans, LA**
(Adult) heart, liver, lung, kidney, kidney/pancreas
(Pediatric) heart, liver, kidney

19. **Oregon Health Sciences University Hospital, Portland, OR**
(Adult) heart, liver, kidney, kidney/pancreas, pancreas, BMT auto & allo
(Pediatric) heart, liver, kidney, BMT auto & allo

20. **St. Judes, Memphis, TN**
(Pediatric) BMT auto & allo

21. **Tulane University, New Orleans, LA**
(Adult) heart, liver, kidney, kidney/pancreas, pancreas, BMT auto
(Pediatric) heart, liver kidney

22. **UCLA, Los Angeles, CA**
(Adult) heart, lung, liver, kidney, kidney/pancreas, BMT auto & allo
(Pediatric) heart, liver, kidney, BMT auto & allo

23. **University of Alabama, Birmingham, AL**
(Adult) heart, heart/lung, liver, lung, kidney, kidney/pancreas, BMT auto & allo
(Pediatric) heart, liver, kidney, BMT auto & allo

24. **University of Arizona, Tucson, AZ**
(Adult) heart, heart/lung, liver, lung, kidney, kidney/pancreas, BMT auto & allo
(Pediatric) heart, liver, kidney, BMT auto & allo

25. **University of Arkansas, Little Rock, AR**
(Adult), kidney, kidney/pancreas, BMT

26. **University of Illinois, Chicago, IL**
(Adult) heart, liver, kidney, kidney/pancreas, BMT auto & allo
(Pediatric) kidney

27. **University of Iowa, Iowa City, IA**
(Adult) heart, heart/lung, liver, kidney, kidney/pancreas, pancreas, BMT auto & allo
(Pediatric) heart, liver, kidney, BMT auto & allo

28. **University of Maryland Medical System, Baltimore, MD**
(Adult) heart, liver, lung, kidney, kidney/pancreas, pancreas, BMT auto & allo
(Pediatric) kidney, BMT auto

29. **University of Michigan Medical Center, Ann Arbor, MI**
(Adult) heart, liver, lung, kidney, kidney/pancreas, pancreas, BMT auto & allo
(Pediatric) heart, liver, kidney

30. **University of Nebraska, Omaha, NE**
(Adult) liver, kidney, kidney/pancreas, pancreas, intestine, BMT auto& allo
(Pediatric) liver, kidney, intestine, BMT auto& allo

31. **University of North Carolina, Chapel Hill, NC**
(Adult) heart, liver, lung, kidney, kidney/pancreas, BMT auto & allo
(Pediatric) heart, liver, kidney, BMT auto & allo

32. **University of Texas Southwestern Medical Center, Dallas, TX**
Zale-Lipshy University, St. Paul's & Parkland Health
(Adult) heart, lung, kidney, kidney/pancreas, pancreas, BMT auto & allo
(Pediatric) heart, kidney

33. **University of Texas Health Science Center, Houston, TX**
Memorial Hermann & St. Luke's Episcopal
(Adult) liver, kidney

34. **University of Texas Medical Branch, Galveston, TX**
(Adult) heart, lung, kidney, kidney/pancreas

35. **Texas Tech University Health Science Center, Lubbock, TX**
(Adult) kidney, BMT auto & allo

36. **University of Texas Health Science, San Antonio, TX**
(Adult) heart, liver, kidney, kidney/pancreas, BMT auto & allo
(Pediatric) heart, liver, kidney, BMT auto & allo

37. **University of Wisconsin, Madison, WI**
(Adult) heart, liver lung, kidney, kidney/pancreas, pancreas, BMT auto& allo
(Pediatric) heart, liver, kidney, BMT auto & allo

38. **West Penn Hospital, Pittsburgh, PA**
(Adult) BMT auto & allo

39. **Yale New Haven Hospital, New Haven, CT**
(Adult) heart, kidney, liver, kidney/pancreas, pancreas, BMT auto & allo
(Pediatric) kidney, BMT auto & allo