# IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

| | | |
|---|---|---|
| **OWEN J. ROGAL, D.D.S., P.C.,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.** |
| | ) | **3:06-cv-00728-MHT** |
| **SKILSTAF, INC.,** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DEFENDANT'S BRIEF IN SUPPORT OF
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Charles A. Stewart III
Bradley Arant Rose & White LLP
The Alabama Center for Commerce
401 Adams Avenue, Suite 780
Montgomery, AL 36104
Telephone: (334) 956-7700
Facsimile: (334) 956-7701

Amelia T. Driscoll
Bradley Arant Rose & White LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203-2104
Telephone: (205) 521-8000
Facsimile: (205) 521-8800

Attorneys for Defendant
Skilstaf, Inc.

# TABLE OF CONTENTS

I.     STATEMENT OF UNDISPUTED FACTS.....................................................2

       A.     Introduction and Plan Provisions ..................................................2

       B.     Plaintiff's Claim for Coverage ......................................................5

II.    THE JUDICIAL STANDARD OF REVIEW .............................................8

III.   RRI CORRECTLY DENIED PLAINTIFF'S CLAIMS. ...........................10

IV.    CONCLUSION..........................................................................................15

       CERTIFICATE OF SERVICE ..................................................................17

# IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| **OWEN J. ROGAL, D.D.S., P.C.,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.** |
| | ) | **3:06-cv-00728-MHT** |
| **SKILSTAF, INC.,** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DEFENDANT'S BRIEF IN SUPPORT OF
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant Skilstaf, Inc. ("Skilstaf" or "Defendant") hereby submits this brief in support of its Motion for Summary Judgment. Defendant's Motion for Summary Judgment should be granted and Plaintiff's claims dismissed because it was correctly determined that the claims Plaintiff submitted in connection with its treatment of Dianna Berry were not covered under the terms of the Skilstaf Group Health Plan (the "Plan").

## I.     STATEMENT OF UNDISPUTED FACTS

### A.     <u>Introduction and Plan Provisions</u>

1.     Skilstaf is an employee leasing company that provides its clients with employee benefits and human resources services including, but not limited to, health care benefits.  <u>See</u> Aff. of Kim Liner at ¶ 3, attached hereto as Exhibit 1 ("Liner's Affidavit").[1]

2.     As an employee leasing company, Skilstaf enters into co-employment agreements with its clients under which the client leases its employees to Skilstaf and Skilstaf simultaneously assigns the employees back to the client.  <u>See</u> <u>id.</u>

3.     Although Skilstaf's clients retain direct control and supervision of their employees, Skilstaf becomes the co-employer of its clients' employees for specified purposes such as payroll, benefits, and workers' compensation.  <u>See</u> <u>id.</u> at ¶ 4.

4.     Because Newspaper Processing, Inc. is one of Skilstaf's clients, Skilstaf provides group health coverage under the Plan to Newspaper Processing, Inc. employees and their spouses.  <u>See</u> <u>id.</u> at ¶ 5.

---

[1]  The following documents are attached to the Affidavit of Robert Johnson ("Johnson's Affidavit") and are being filed under seal pursuant to the Court's January 11, 2007, order: (1) Exhibit A – the Plan's Summary Plan Description ("SPD"), which describes the health benefits available under the Plan to eligible employees, Skilstaf-00001 through Skilstaf-00085; and (2) Exhibit B – excerpts from the Administrative Record.  For ease of reference, pages within each respective exhibit will be referred to in this brief by their bates-labeled page numbers only, such as "Skilstaf-00125."

5.    Dennis Berry ("Mr. Berry") is an employee of Newspaper Processing, Inc., and, during the time relevant to the Complaint, was a participant in the Plan. See id. at ¶ 6.

6.    Accordingly, during the time relevant to the Complaint, Skilstaf provided group health coverage under the Plan to Mr. Berry and to his wife, Dianna Berry ("Mrs. Berry").  See id.

7.    The Plan, which is an employee welfare benefits plan, is governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C § 1001 et seq. ("ERISA").  See Skilstaf-00003.

8.    Skilstaf is the sponsor of the Plan.  Skilstaf-00060.

9.    As the Plan Sponsor, Skilstaf is responsible for funding the Plan.  Id. (confirming that Skilstaf is the entity responsible for  making "contributions to the plan" based "upon its determination of the amounts necessary to timely pay benefits and expenses").

10.    Risk Reduction, Inc. ("RRI") is the Plan Administrator.  Skilstaf-00060.

11.    The Plan vests full discretionary authority in RRI to interpret the Plan's terms and provisions.  Skilstaf-00058 (making clear that the "Plan Administrator has full discretion to interpret the Plan and to apply [the Plan's]

claim review procedures"), Skilstaf-00060 (defining RRI as the Plan Administrator).

12.    Coverage under the Plan is expressly limited "to medically necessary treatment . . . ."  Skilstaf-00017; see also Skilstaf-00054.

13.    "[M]edically necessary" treatment is defined, in pertinent part, as that treatment which:

> [T]he plan administrator deems to be the shortest, least expensive or least intense level of treatment, care, or service rendered or supplied to the extent required to diagnose or treat an injury or sickness.  The service or supply must be consistent with the covered person's medical condition; known to be safe and effective by most physicians who are licensed to treat the condition at the time the service is rendered; and not provided primarily for the convenience of the covered person or physician.

Skilstaf-00056.

14.    Therapy that is rehabilitative, physical, or chiropractic in nature is covered only where "there is documented continuous physical improvement" in the condition that is being treated.  See Skilstaf-00032, Skilstaf-00033.

15.    Several types of medical benefits are specifically excluded from coverage under the Plan.  See Skilstaf-00039-Skilstaf-00042.

16.    As specifically relevant to the instant dispute, the Plan's SPD makes clear that Skilstaf need not cover "[s]ervices, expenses, or supplies that the plan administrator determines are not medically necessary."  Skilstaf-00039.

B.    **Plaintiff's Claim for Coverage**

17.    In January 2005, Plaintiff began treating Mrs. Berry's back, hip, jaw, ear, neck, and shoulder pain with radiofrequency therapy.[2]  See, e.g., Skilstaf-01754 (attaching a representative example of the operative reports that Plaintiff's employees drafted in connection with their repeated treatments of Mrs. Berry); see also Ex. 3 at ¶ 5, attached hereto (verifying that Plaintiff's treatment of Mrs. Berry began on or about January 14, 2005).

18.    Plaintiff continued to treat Mrs. Berry until June 2005.  See Ex. 3 at Ex. A.

19.    Between January and June 2005, Plaintiff treated Mrs. Berry on twenty-five separate occasions.  See id.

20.    Each radiofrequency treatment that Plaintiff provided Mrs. Berry cost more than $7,000.00.  See id.

21.    Ultimately, Plaintiff submitted medical bills totaling $189,900.00 in connection with its treatment of Mrs. Berry.  See id. at ¶ 6.

22.    In July 2005, Intracorp Physician Consultative Services' Medical Director, Dr. Marsha M. Silberstein, M.D., conducted an independent review of Mrs. Berry's medical records for the purpose of determining, among other things,

---

[2] According to one website, Plaintiff is in the business of treating its patients' chronic pain through a non-invasive radiofrequency procedure whereby Plaintiff's employees place pinpointed heat directly into their patients' injured muscles.  See Ex. 2, attached hereto.

whether Plaintiff's radiofrequency treatments were medically necessary and whether Mrs. Berry's alleged condition was improving as a result of those treatments. See Skilstaf-00192-Skilstaf-00193. Dr. Silberstein concluded that:

> [T]hese [radiofrequency] procedures are not medically necessary based on the information provided. There is no documentation of the patient's showing improvement. The frequency of the surgical procedures exceeds any guideline that I know of. . . . Considering the information presented for review as summarized above, for this particular patient, it is my opinion that the requested procedures are not medically necessary for this patient. There is no documentation of the patient's medical history, physical exam, trial of conservative medical management, or concurrent multidisciplinary pain management modalities. There is no documentation of any improvement. In addition, radiofrequency ablation of nerves is unproven in the published peer reviewed medical literature to provide improved long term net health outcomes and is not medically necessary per CIGNA guidelines.

Skilstaf-000193.

23.     Although RRI had mistakenly processed Plaintiff's claims as an initial matter, RRI notified Plaintiff that its claims were not covered under the terms of the Plan once it realized that (1) Plaintiff's treatments were not medically necessary, and (2) there had been no documented physical improvement in Mrs. Berry's alleged condition.   See Johnson's Affidavit at ¶ 9; Skilstaf-00093 (notifying Plaintiff that its claims were not covered under the Plan because, among other things, there was no "'documented physical improvement' from [its] treatment"); see also Skilstaf-01829-Skilstaf-01830 (2/18/05 operative report), Skilstaf-01788-Skilstaf-01789 (3/18/05 operative report), and Skilstaf-01649-

Skilstaf-01650 (6/3/05 operative report) (verifying that, on a scale of 1 to 10, Mrs. Berry characterized her right neck pain as 3 out of 10 in February, 5 out of 10 in March, and 3 out of 10 in June).

24.    On September 6, 2005, Plaintiff's counsel submitted a letter purporting to "appeal" RRI's decision to deny Plaintiff's claims.  Skilstaf-00087. Plaintiff's counsel attached a "summary of progress reports indicating improvement of [Mrs. Berry] on a per visit basis" to his September 6, 2005, correspondence.  Id.

25.    Neither Plaintiff nor Plaintiff's counsel has submitted any documentation that refutes RRI's determination, based on Dr. Silberstein's independent review of Mrs. Berry's medical records, that Plaintiff's repeated radiofrequency treatments were not medically necessary.  Johnson Affidavit at ¶ 10.

26.    RRI affirmed its initial denial decision on or about September 26, 2005, noting that the "additional material that [Plaintiff's counsel had] provided contain[ed] insufficient evidence that Ms. Berry ha[d] experienced documented physical improvement from those treatments."  Skilstaf-00094.

27.    Plaintiff filed the instant lawsuit on or about October 6, 2005, seeking coverage under the Plan for the costs it had incurred in treating Mrs. Berry.  See Ex. 3.

## II.    THE JUDICIAL STANDARD OF REVIEW

Under ERISA, "a deferential standard of review [is] appropriate when a [decision maker] exercises discretionary powers." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 111 (1989).  If a plan's terms vest discretion in a decision maker to interpret that plan and there is no conflict of interest, then a court will uphold the decision maker's judgment unless the decision maker has abused its discretion. Id.

The Plan vests full discretionary power in RRI to interpret the Plan, to determine all inquiries arising in the Plan's administration, application, and interpretation, and to apply the Plan's claim review procedures.  Skilstaf-00058, Skilstaf-00060 (defining RRI as the Plan Administrator and outlining the Plan Administrator's discretionary authority).  Moreover, RRI is not responsible for funding the Plan.  See Skilstaf-00060 (making clear that Skilstaf, and not RRI, is the entity responsible for making "contributions to the plan" based "upon its determination of the amounts necessary to timely pay benefits and expenses").  Because RRI (the Plan Administrator responsible for making discretionary decisions under the Plan) is not responsible for funding the Plan, there is no conflict of interest and RRI's decision to deny Plaintiff's claim is to be reviewed by the Court under the arbitrary and capricious standard of review.  See, e.g., HCA Health Servs. of Ga., Inc. v. Employers Health Ins. Co., 240 F.3d 982, 994 (11th

Cir. 2001) ("If no conflict of interest exists, then only arbitrary and capricious review applies and the claims administrator's wrong but reasonable decision will not be found arbitrary and capricious."); Brown v. Blue Cross & Blue Shield of Ala., Inc., 898 F.2d 1556, 1562 (11th Cir. 1990) (noting that a "'conflict of interest [exists] when the fiduciary making a discretionary decision is also the insurance company responsible for paying the claims'").

Under the arbitrary and capricious standard of review, the Court is to first conduct a de novo review to determine whether the decision maker's interpretation is "wrong" and the claimant's rival interpretation reasonable. See Williams v. BellSouth Telecomms., Inc., 373 F.3d 1132, 1137-38 (11th Cir. 2004) ("recapitulat[ing]" the Eleventh Circuit's multi-step approach for reviewing a benefit denial). In the Eleventh Circuit, a court "conducting a de novo review . . . is bound by the provisions of the documents establishing an employee benefit plan without deferring to either party's interpretation." Moon v. Am. Home Assurance Co., 888 F.2d 86, 89 (11th Cir. 1989) (internal quotation marks and citations omitted). If a de novo review reveals the decision maker's interpretation to be "correct," the inquiry ends and a court must uphold the decision maker's determination. Adams v. Thiokol Corp., 231 F.3d 837, 843 (11th Cir. 2000).

If, however, the court finds that the decision maker's interpretation was "wrong," it must then consider whether the interpretation was arbitrary and

capricious. A reasonable decision must be upheld "even if there is evidence that would support a contrary decision." <u>Jett v. Blue Cross & Blue Shield of Ala.</u>, 890 F.2d 1137, 1140 (11th Cir. 1989). Therefore, any "wrong but reasonable interpretation is entitled to deference even though the claimant's interpretation is also reasonable," <u>HCA Health Services of Georgia, Inc.</u>, 240 F.3d at 994, and even though evidence "would support a contrary decision[,]" <u>Jett</u>, 890 F.2d at 1140.

When applying the arbitrary and capricious standard, "[t]he function of the court is to determine whether there was a reasonable basis for the decision, based upon the facts as known to the [decision maker] at the time the decision was made." <u>Id.</u> at 1139. Further, when applying the arbitrary and capricious standard, a court is to limit its scope of review to the administrative record that was before the decision maker at the time the decision maker denied or terminated the claimant's benefits. <u>Paramore v. Delta Airlines, Inc.</u>, 129 F.3d 1446, 1451 (11th Cir. 1997). Therefore, to determine the propriety of RRI's decision to deny Plaintiff's claim, this Court's scope of review is limited to the information that was available to RRI when it made its decision.

## III.    RRI CORRECTLY DENIED PLAINTIFF'S CLAIMS

In this action, Plaintiff seeks to recover the costs it incurred when it provided medically unnecessary treatment to Mrs. Berry – costs which Skilstaf properly refused to cover. Plaintiff's ERISA § 502(a) claim is "to recover benefits due to

[it] under the terms of [Mrs. Berry's] plan . . . ." 29 U.S.C. § 1132(a)(1)(B); see Alday v. Container Corp., 906 F.2d 660, 665 (11th Cir. 1990) ("[A]ny [participant's] right to . . . benefits at a particular cost can only be found if it is established by contract under the terms of the ERISA-governed benefit plan document."). Because RRI correctly determined that Skilstaf need not cover the costs that Plaintiff incurred when it provided radiofrequency treatments to Mrs. Berry, Skilstaf's Motion should be granted and Plaintiff's claims dismissed.

The Plan's SPD makes clear that Skilstaf need not cover (1) "[s]ervices, expenses, or supplies that the plan administrator determines are not medically necessary[,]" or (2) rehabilitative-type care that does not result in "documented continuous physical improvement." See Skilstaf-00039, Skilstaf-00032. On July 28, 2005, Dr. Silberstein reviewed Mrs. Berry's medical records and concluded that Plaintiff's radiofrequency treatments were:

> [N]ot medically necessary based on the information provided. There is no documentation of the patient's showing improvement. The frequency of the surgical procedures exceeds any guideline that I know of. . . . Considering the information presented for review as summarized above, for this particular patient, it is my opinion that the requested procedures are not medically necessary for this patient. There is no documentation of the patient's medical history, physical exam, trial of conservative medical management, or concurrent multidisciplinary pain management modalities. There is no documentation of any improvement. In addition, radiofrequency ablation of nerves is unproven in the published peer reviewed medical literature to provide improved long term net health outcomes and is not medically necessary per CIGNA guidelines.

Skilstaf-000193. Plaintiff has failed to submit any documentation that refutes RRI's determination that its claims are not covered under the Plan; accordingly, Skilstaf's Motion should be granted and Plaintiff's claims dismissed.

First, neither Plaintiff nor Plaintiff's counsel has submitted any documentation that refutes RRI's determination that Plaintiff's repeated radiofrequency treatments were not medically necessary. Johnson's Affidavit at ¶ 10. Second, Plaintiff has failed to produce documentation evidencing "continuous physical improvement" in Mrs. Berry's alleged condition as a result of Plaintiff's weekly radiofrequency treatments. See Skilstaf-00193 (notifying Plaintiff regarding the lack of documented physical improvement); see also Skilstaf-01829-Skilstaf-01830 (2/18/05 operative report), Skilstaf-01788-Skilstaf-01789 (3/18/05 operative report), and Skilstaf-01649-Skilstaf-01650 (6/3/05 operative report) (illustrating, for example, that Mrs. Berry's right neck pain did not continuously improve as a result of Plaintiff's repeated treatments).

The Eleventh Circuit has made clear that, in order to establish coverage under an ERISA plan like the one at issue here, "it is implicit in the requirement of proof that the evidence" submitted by the claimant "be objective." Watts v. Bellsouth Telecomms., Inc., No. 06-15156, 2007 WL 542436, at *1 (11th Cir. Feb. 22, 2007). As district courts in this Circuit have explained:

> The objective-evidence requirement promotes integrity in the application of the law. It assures claimants are treated fairly and with

12

parity by providing that coverage decisions are not based on varying subjective expressions by claimants . . . .  The requirement of objective evidence also promotes integrity by assuring there is corroboration for a claimant's subjective complaints, thus deterring embellished allegations of the effect of the diagnosed malady as well as deterring fraud in the claims process.

Brucks v. The Coca-Cola Co., 391 F. Supp. 2d 1193, 1205 (N.D. Ga. 2005); see also Fick v. Metro. Life Ins. Co., 347 F. Supp. 2d 1271, 1286-87 (S.D. Fla. 2004) ("Case law supports the conclusion that it is reasonable for a plan administrator to require objective medical evidence even where the plan does not specifically contain such a requirement.  Where a plan requires proof of continued disability, 'the very concept of proof connotes objectivity.'  Were an opposite rule to apply, LTD benefits would be payable to any participant with subjective and effervescent symptomology simply because the symptoms were first passed through the intermediate step of self-reporting to a medical professional.  In the absence of a requirement of objective evidence, the review of claims . . . would be 'meaningless because a plan administrator would have to accept all subjective claims of the participant without question.'") (internal citations omitted).

Here, Plaintiff has failed to present any *objective* evidence that Mrs. Berry's physical condition improved as a result of its repeated radiofrequency treatments. To the contrary, the only documentation Plaintiff submitted to RRI on this issue – by way of a "summary of progress reports" that Plaintiff's counsel sent to RRI on or about September 6, 2005 – is based entirely on Mrs. Berry's *subjective* self-

13

reported assessment that her condition was improving as a result of Plaintiff's repeated radiofrequency treatments.  See Skilstaf-00087-Skilstaf-00091.  Because Plaintiff has failed to present any objective assessment that Mrs. Berry's condition was, in fact, improving, this Court need not give any "weight or credence whatsoever to [Plaintiff's] . . . conclusory" and subjective opinion to the contrary.  See Archible v. Metro. Life Ins. Co., 85 F. Supp. 2d 1203, 1220 (S.D. Ala. 2000) (making clear that, where an opinion is based on subjective complaints rather than objective findings, a court conducting a de novo review need not give any "weight or credence whatsoever to [the] . . . conclusory . . . opinion[]").

Even assuming arguendo that subjective reports of the type submitted by Plaintiff are sufficient to establish coverage under an ERISA plan, which Skilstaf denies, the operative reports submitted by Plaintiff's counsel support RRI's determination that Mrs. Berry's physical condition did not continually improve as a result of Plaintiff's weekly radiofrequency treatments.  By way of illustration, Plaintiff's operative reports make clear that Mrs. Berry's right neck pain did *not* continuously improve over the course of her treatment.  See, e.g., Skilstaf-01829-Skilstaf-01830 (2/18/05 operative report), Skilstaf-01788-Skilstaf-01789 (3/18/05 operative report), and Skilstaf-01649-Skilstaf-01650 (6/3/05 operative report) (verifying that, on a scale of 1 to 10, Mrs. Berry characterized her right neck pain as 3 out of 10 in February, 5 out of 10 in March, and 3 out of 10 in June).  Simply

put, even Plaintiff's subjective documentation – which is the only documentation Plaintiff has offered in response to RRI's determination that Mrs. Berry's physical condition did not continually improve over the course of her treatment – fails to establish any error in RRI's denial decision.

RRI's decision – which decision was based on the SPD's plain language, on Plaintiff's failure to submit any documentation verifying that its treatment was medically necessary, on Plaintiff's failure to submit objective documentation that Mrs. Berry's condition was improving as a result of its treatments, and on the opinion of an independent physician that reviewed Mrs. Berry's medical records – was correct. Accordingly, Skilstaf is entitled to judgment in its favor and RRI's decision to deny Plaintiff's claims should be upheld by this Court. See Adams, 231 F.3d at 843 ("If the administrator's interpretation was legally correct, the inquiry ends.").

## IV. CONCLUSION

For the reasons detailed above, Skilstaf is entitled to summary judgment in its favor and Plaintiff's claims should be dismissed with prejudice.

Respectfully Submitted,

s/Charles A. Stewart III

Charles A. Stewart III (STE067)
Bradley Arant Rose & White LLP
The Alabama Center for Commerce
401 Adams Avenue, Suite 780
Montgomery, AL 36104
Telephone: (334) 956-7700
Facsimile: (334) 956-7701
cstewart@bradleyarant.com

s/Amelia T. Driscoll

Amelia T. Driscoll (DRI016)
Bradley Arant Rose & White LLP
1819 Fifth Avenue North
Birmingham, AL 35203-2104
Telephone: (205) 521-8000
Facsimile: (205) 521-8800
adriscoll@bradleyarant.com

Attorneys for Defendant
Skilstaf, Inc.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 18th, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Robert E. Cole
437 Chestnut Street, Suite 218
Philadelphia, PA  19109

Beth A. Friel
Jeanne L. Bakker
Montgomery, McCracken, Walker & Rhoads
123 South Broad Street
Philadelphia, PA  19109

and I hereby certify that I have mailed by U. S. Postal Service the document to the following non-CM/ECF participants:  None.

/s/ Amelia T. Driscoll

# EXHIBIT 1

## IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| **OWEN J. ROGAL, D.D.S., P.C.,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.** |
| | ) | **3:06-cv-00711-MHT** |
| **SKILSTAF, INC.,** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## <u>AFFIDAVIT OF KIM LINER</u>

| | |
|---|---|
| STATE OF ALABAMA | ) |
| | : |
| TALLAPOOSA COUNTY | ) |

Personally appeared before me, a Notary Public in and for said County and State, Kim Liner, who being known to me, and first duly sworn, deposes and says:

1.     My name is Kim Liner.  I am over the age of 21 and I am competent to make this affidavit.  I have personal knowledge of the statements made herein unless otherwise noted, all of which are correct and true.

2.     I am the Payroll Manager at Skilstaf Inc. ("Skilstaf").

3.    Skilstaf is an employee leasing company that provides its clients with employee benefits and human resources services including, but not limited to, health care benefits. As an employee leasing company, Skilstaf enters into co-employment agreements with its clients, under which the client leases its employees to Skilstaf and Skilstaf simultaneously assigns the employees back to the client.

4.    Although Skilstaf's clients retain direct control and supervision of their employees, Skilstaf becomes the co-employer of its clients' employees for specified purposes such as payroll, benefits, and workers' compensation.

5.    Newspaper Processing, Inc. is one of Skilstaf's clients; accordingly, Skilstaf provides group health coverage under the Skilstaf Group Health Plan (the "Plan") to Newspaper Processing, Inc. employees.

6.    Dennis Berry ("Mr. Berry") is an employee of Newspaper Processing, Inc., and, during the time relevant to the Complaint, was a participant in the Plan. Accordingly, during the time relevant to the Complaint, Skilstaf provided group health coverage under the Plan to Mr. Berry.

2

I have read the foregoing Affidavit, ¶¶ 1-6, and I swear and affirm that it is true and correct to the best of my knowledge and belief.

_____
Kim Liner

Sworn to and subscribed before me
on this the 4th day of April, 2007.

NOTARY PUBLIC

MY COMMISSION EXPIRES 12-8-09

3

# EXHIBIT 2



## Non invasive radio frequency technique can be used to permanently eliminate chronic pain

12 Jun 2004    | Click to Print |

Breakthrough Treatment Using Pinpointed Heat Can Help Millions Who Suffer From Pain.

According to a national survey from Partners against Pain at least one member of Americas 44 million households (43%) suffers from chronic pain due to a specific illness or medical condition. In the past, most people suffering from pain have treated the symptoms with prescription or over-the-counter medication.

However, 66% of those surveyed said that their OTC medication is not completely effective and 52% said that their prescription medication is not completely effective.

Treating pain with medication can often result in addiction and other side effects and it is not a permanent solution to ending pain. Other medical solutions include surgery, however when performed, many patients and their doctors find that the pain frequently returns and that it has not helped alleviate their suffering.

Many patients suffering from chronic pain have been told that their pain is coming from a disc herniation or nerve injury. Dr. Owen Rogal, Director of The Pain Center in Philadelphia, PA, has recently developed a new breakthrough treatment in pain management called RFS.

Instead of treating the nerves for pain, which will not produce permanent results, RFS targets the muscles where the actual pain stems from. The treatment is a non-invasive radio frequency procedure using pinpointed heat placed in injured muscles. The heat allows the muscles to heal thereby producing permanent pain relief. The Radio Frequency procedure, RFS, is a four-step system:

-- Pain is identified with finger pressure to test for sensitive muscles.

-- A small amount of anesthetic is placed the injured muscle.

-- Pain relief confirms the muscle is the source of the pain.

-- A special needle tip that is attached to the RFS machine is inserted into the confirmed pain area. The muscle tissue surrounding the needle tip is then heated. The heat allows the muscle to heal and stops the pain permanently.

The RFS system is generally performed over a 5-week period. Patients are awake during the procedure, which usually takes about 20-30 minutes from start to finish. Other than the insertion of the anesthetic needle, there is no discomfort during the procedure.

Following the procedure, there is no down time and most patients will immediately return to work. Dr. Rogal and his staff at The Pain Center have used this procedure to treat a variety of pain-related problems including lower back, knees, neck, shoulder/arm, ankle/foot, hips, bursitis, arthritis, and migraine headaches.

The Pain Center doctor's have successfully performed The RFS procedure on more than 5,000 chronic pain sufferers that were originally diagnosed with disc herniation or nerve problems, thereby avoiding surgical procedures.

"Pain is a serious pubic health problem, which costs billions of dollars a year in health care and lost productivity. Many patients have been suffering from pain for years, trying a multitude of different methods of treatment with no permanent results. This new technology can now permanently end the suffering of millions," says Dr. Rogal.

The Pain Center accepts out of network insurance such as POS (point of service or PPO).

Deborah Straus
212.213.6444
KMR Communications, Inc.
114 East 32nd Street
Suite 1200
New York, NY 10016

Article URL: http://www.medicalnewstoday.com/medicalnews.php?newsid=9438

Save time! Get the latest medical news headlines for your specialist area, in a weekly newsletter e-mail. See http://www.medicalnewstoday.com/newsletters.php for details.

Send your press releases to pressrelease@medicalnewstoday.com

# EXHIBIT 3

Case 3:06-cv-00728-WHT-WC Document 21-2 Filed 11/21/2005 Page 3 of 13

ROGALE COUR P.C.
LAW OFFICES
37 CHESTNUT STREET
PHILADELPHIA, PA 19106

ATTY ID 73263
215-922-2050

JURY TRIAL DEMANDED
THIS [IS] [IS NOT] AN ARBITRATION CASE. AN
ASSESSMENT OF DAMAGES [IS] [IS NOT]
REQUIRED.[1]

Attorney For Plaintiff

Owen J. Rogal, D.D.S., P.C.
d/b/a The Pain Center
501-07 S 12th St
Phila, PA  19147          Plaintiff,

        vs.

Skilstaf, Inc.
P.O. Box 729
Alexander City, AL  35011

                    Defendant.

PHILADELPHIA COUNTY
COURT OF COMMON PLEAS
TRIAL DIVISION

**OCTOBER 2005**

        Term,

No.             001514

## COMPLAINT—CIVIL ACTION

### NOTICE

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after the complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

PHILADELPHIA BAR ASSOCIATION
Lawyer Referral and Information Service
1101 Market Street, 11th Floor
Philadelphia, Pennsylvania 19107
(215) 238-6300

### AVISO

Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las páginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificación. Hace falta asentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomará medidas y puede continuar la demanda en contra suya sin previo aviso o notificación. Además, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

LLEVE ESTA DEMANDA A UN ABOGADO INMEDIATAMENTE. SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO. VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.

ASOCIACIÓN DE LICENCIADOS DE FILADELFIA
Servicio De Referencia E Información Legal
1101 Market Street, 11th Floor
Filadelfia, Pennsylvania 19107
(215) 238-6300

ATTEST
OCT 07 2005
D. SAVAGE

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY, PA
CIVIL ACTION - LAW

ROBERT E. COLE                                    Attorney For Plaintiff
ROBERT E. COLE, P.C.
ATTORNEY I.D. NO. 73263
437 CHESTNUT STREET, SUITE 218
PHILADELPHIA, PA  19106
(215) 922-2050

---

OWEN J. ROGAL, D.D.S., P.C.              :
d/b/a THE PAIN CENTER
501-07 SOUTH 12TH STREET
PHILADELPHIA, PA  19147

                    Plaintiff          :        TERM, 2005

                    V.                 :    NO.

SKILSTAF, INC.                          :
P.O. BOX 729
ALEXANDER CITY, AL  35011

                    Defendant          :

---

## COMPLAINT
### 1-C (CONTRACT)

Plaintiff, by its undersigned attorney, hereby pleads the
following Complaint:

1.    The plaintiff in this matter is Owen J. Rogal, D.D.S.,
P.C., d/b/a The Pain Center, a corporation with principal place
of business being located at 501-07 South 12th Street,
Philadelphia, PA  19147.

2.    Defendant Skilstaf, Inc. is an Alabama corporation and
insurance provider/plan administrator with its headquarters and
principal place of business located at P.O. Box 729, Alexander

City, AL  35011.

3.    At all times material and relevant hereto, one (1)
Dianna Berry was enrolled in a group healthcare insurance plan
provided and/or administered by Defendant Skilstaf, Inc as
spouse of insured Dennis Berry..

4.    In January 2005 and thereafter, the above insurance
policy was in full force and effect.

5.    On or about January 14, 2005, Dianna Berry began
treatment with plaintiff for various ailments, including but not
limited to head, neck shoulder, arm, ribs and back.  At all time
relevant hereto, the treatments rendered by plaintiff to Dianna
Berry Davis were reasonable and necessary, properly and
medically justified.

6.    The total charges for the medical services provided to
Dianna Berry at plaintiff from January 14, 2005 through June 7,
2005 were $189,900.00.  Of this, there remains an outstanding
balance of $117,407.37.  (See Exhibit "A", attached hereto and
made by reference a part hereof).

7.    Said Dianna Berry may be obligated to receive and
undergo additional medical attention and care with plaintiff and
incur substantial expenses described in an effort to cure himself
of his said injuries and will or may be obligated to expend such
sums or incur such expenditures for an indefinite time in the
future.

8.   On or about January 14, 2005, one (1) Dianna Berry
executed an Assignment of Rights to plaintiff. (See Exhibit
"B", attached hereto and made by reference a part hereof).

9.   Defendant unreasonably and unfairly withheld policy
benefits, despite repeated additional demands by plaintiff for
them to pay the aforementioned medical providers.

10.   The conduct of Defendant includes, but is not limited
to, the following:

   (a)   Failing to give equal consideration to paying the
         claim as to not paying the claim;
   (b)   Failing to objectively and fairly evaluate
         plaintiff's claim;
   (c)   Asserting policy defenses without a reasonable
         basis in fact;
   (d)   Compelling plaintiff to institute the lawsuit to
         obtain policy benefits that should have paid
         promptly and without the necessity of litigation;
   (e)   Dilatory and abusive claims handling;
   (f)   Placing unduly restrictive and self-serving
         interpretations on the policies
   (g)   Acting unreasonably and unfairly in response to
         plaintiff's claim;
   (h)   Failing to promptly provide a reasonable factual
         explanation of the basis of denial of plaintiff's
         claim;
   (i)   Conducting an unfair and unreasonable
         investigation of Plaintiffs' claims; and
   (j)   Otherwise unreasonably and unfairly withholding
         policy benefits justly due and owing plaintiff.

11.   As an insurer, defendant owes fiduciary, contractual,
and statutory duties toward plaintiff to investigate the claims
in good faith and pay same promptly.

12.   Plaintiff, at all relevant times, fully complied with
all of the terms of the policies and all conditions precedent

and subsequent to plaintiff's right to receive benefits under
the policy.

13.    Nonetheless, defendant has refused, without legal
justification or cause, and continue to refuse, to act in good
faith and/or to pay plaintiff's medical bills incurred.

## COUNT I
## BREACH OF CONTRACT

14.    Plaintiff incorporates by reference paragraphs one (1)
through thirteen (13) above as though fully set forth
hereinafter at length.

15.    Plaintiff has satisfied all of its obligations under
the above insurance policy, including, but not limited to, all
conditions precedent and all conditions subsequent.

16.    By failing to make payments to plaintiff in the
amounts owed, defendant breached its contractual obligations to
plaintiff under the policy.

WHEREFORE, plaintiff demands judgment against
defendant in the amount of $117,407.37 plus additional
compensatory and/or consequential damages allowed by law,
together with interest, court costs, and such other relief as
this Honorable Court shall deem just and proper.

## COUNT II
## BAD FAITH

17.    Plaintiff incorporates by reference paragraphs one (1) through sixteen (16) as though fully set forth hereinafter at length.

18.    For the reason set forth above, including, but not limited to, failing to promptly offer indemnification to plaintiff; failing to objectively and fairly evaluate plaintiff's claims; asserting defenses without reasonable basis in fact; unnecessarily and unreasonably compelling litigation; conducting an unreasonable investigation of plaintiff's claims; and unreasonably withholding policy benefits, defendant has violated its policy's covenants of good faith and fair dealing and/or committed the tort of bad faith, including, but not limited to, violating 42 Pa. C.S.A. 3371, for which defendant is liable for interest on the prime rate of interest plus three percent, court costs, attorneys' fees, punitive damages, and such other compensatory and/or consequential damages allowed by law.

WHEREFORE, plaintiffs demand compensatory, consequential, and punitive damages from defendants, in an amount in excess of Fifty Thousand Dollars (50,000.00), plus interest, court costs, attorneys' fees, and such other relief as this Honorable Court shall deem just and proper.

## COUNT III
### DECEIT

19.   ·Plaintiff incorporates by reference paragraphs one (1)
through eighteen (18) above as though fully set forth
hereinafter at length.

20.   The conduct of defendant constitutes fraud,
misrepresentation and deceit in that, <u>inter alia</u>, defendant
knowingly, willingly, and/or recklessly refused and failed to
comply with the terms and conditions of its policy, including,
but not limited to, the policy's implied covenants *of* good faith
and fair dealing; the statutes of the Commonwealth of
Pennsylvania; and the regulations of the Insurance Department of
Commonwealth of Pennsylvania; and otherwise violated their
fiduciary, contractual, and statutory duties in dealing with
plaintiff.

21.   Plaintiff justifiably relied upon the representations,
which defendant made in its policy, in sales presentations'
and/or brochures provided by the agents of defendant, and/or in
public advertising, that all claims would be objectively
evaluated and fairly and promptly paid, which representations
were false when made and, therefore, the conduct of defendant
constitute the common law tort of deceit for which plaintiff
seek compensatory, consequential, and punitive damages.

WHEREFORE, plaintiff demands compensatory, consequential, and punitive damages from defendant jointly and severally in an amount in excess of Fifty Thousand Dollars ($50,000.00), plus interest, court costs, attorneys' fees, and such other relief as this Honorable Court shall deem just and proper.

10/6/05
Date

Robert E. Cole, Esquire
Attorney for Plaintiff
Atty. I.D. No. 73263
437 Chestnut Street, Suite 218
Philadelphia, PA  19106
(215) 922-2050

FROM :THE PAIN CENTER              FAX NO. :2159231012          Jul. 31 2005 11:44AM P1

```
08/31/05                       THE PAIN CENTER
11:47:52                    BILLINGS AND RECEIPTS                        Page 1
                                Berry, Dianna


DATE OF                    AMOUNT      AMOUNT
SERVICE          DEPT      BILLED        PAID        BALANCE
------------------------------------------------------------------------------
01/14/2005        K          50.00        .00         50.00
01/21/2005        S        7668.00     5321.00       2347.00
01/28/2005        IP        300.00        .00         300.00
01/28/2005        ZP       7318.00     6584.10        733.90
02/04/2005        IP        300.00        .00         300.00
02/04/2005        ZP       7318.00     6713.70        604.30
02/11/2005        K         300.00        .00         300.00
02/11/2005        KZ       7318.00     7363.00        -45.00
02/18/2005        K         300.00        .00         300.00
02/18/2005        KZ       7318.00     7183.00        135.00
02/25/2005        K         300.00        .00         300.00
02/25/2005        KZ       7318.00     7333.00        -15.00
03/04/2005        K         300.00        .00         300.00
03/04/2005        KZ       7318.00    12300.00      -4982.00
03/18/2005        K         600.00        .00         600.00
03/18/2005        KZ      14636.00     5075.00       9561.00
03/25/2005        K         300.00        .00         300.00
03/25/2005        KZ       7318.00     3355.00       3963.00
04/01/2005        K         300.00        .00         300.00
04/01/2005        KZ       7318.00     4779.83       2538.17
04/08/2005        KZ          .00         .00           .00
04/15/2005        K         300.00        .00         300.00
04/15/2005        KZ       7318.00     3242.50       4075.50
04/22/2005        K         300.00        .00         300.00
04/22/2005        KZ       7318.00        .00        7318.00
04/29/2005        K         300.00        .00         300.00
04/29/2005        KZ       7318.00     3242.50       4075.50
05/06/2005        K         300.00        .00         300.00
05/06/2005        KZ       9486.00        .00        9486.00
05/13/2005        K         300.00        .00         300.00
05/13/2005        KZ       7318.00        .00        7318.00
05/20/2005        K         300.00        .00         300.00
05/20/2005        KZ       7318.00        .00        7318.00
05/23/2005        K         300.00        .00         300.00
05/23/2005        KZ       7318.00        .00        7318.00
05/25/2005        IP        300.00        .00         300.00
05/25/2005        ZP       7318.00        .00        7318.00
05/26/2005        S       12418.00        .00       12418.00
05/27/2005        K         300.00        .00         300.00
05/27/2005        KZ       7318.00        .00        7318.00
06/01/2005        K         300.00        .00         300.00
06/01/2005        KZ       7318.00        .00        7318.00
06/03/2005        K         300.00        .00         300.00
06/03/2005        KZ       7318.00        .00        7318.00
06/07/2005        K         300.00        .00         300.00
06/07/2005        KZ       7318.00        .00        7318.00
                         =========   =========    =========
                         189900.00    72492.63     117407.37
```



PLAINTIFF'S EXHIBIT

FROM : THE PAIN CENTER     FAX NO. :2159231012     Jul. 31 2005 11:44AM P2

RADIOFREQUENCY
RFS

**THE PAIN CENTER**
*is a multi-disciplinary facility
of pain specialists, including the fields of
anesthesiology, neurology, ENT, physical medicine,
clinical neuro-electrophysiology, neuropsychology
and musculoskeletal manipulation.*

# THE PAIN CENTER

TO: _Skel S___     Re: Patient's Name: _Dienne Berry_

Address: _PO Bo___ 739    Your Insured: _Dennis + Dianne Berry_

_Alex angle City_    Claim No. : _464703972_
_al, 35011_

I hereby irrevocably ... sign to The Pain Center any right, which I may have against any insurer that may be responsible ... the payment of medical bills incurred by reason of any treatment by the doctors. Without dimi ... ishing this assignment, I retain the right to sue any person legally responsible for my injur ... s and include therein a claim for payment of The Pain Center bills. I understand that I may be ... responsible for any such bills for which there is no source of insurance benefits for services rend ... ed prior to April 1, 1990.

I hereby authorize yc ... to pay directly to The Pain Center, and to no one else, benefits due to me under the terms of my ... licy, a policy of insurance, which by operation of law makes me an "insured," or by reason o: ... settlement of verdict, which includes a claim for medical bills.

Payment of The Pa ... Center invoices within thirty (30) days of your receipt of same, as provided under law, is ... thorized upon your receipt of The Pain Center itemized statement of account and Attending Pl ... sicians Report form for services rendered to me. Payment of any amount to The Pain Center as her ... n directed, in whole or in part, shall be considered the same as if paid by your company to me. I ... yments include, but are limited to, any proceeds under any insurance policy for primary benef ... coverage under the Pennsylvania, New Jersey, Delaware or New York automobile insurance la ... , any proceeds of settlement or verdict awarded for medical bills. I further irrevocably assig ... > The Pain Center the right to bring suit in his own name or in my name for any medical bills for ... atment by The Pain Center that are not paid within thirty (30) days after submission to my carrier. ... declare that I view that any failure of my carrier to pay The Pain Center to be an act of bad faith a ... I assign any rights which I may have as a result of this bad faith to The Pain Center.

You are directed not ... deliver benefits herein assigned to The Pain Center to anyone other than The Pain Center, and this ... irective includes my attorney, who has received a copy of this document. The Pain Center will noti ... my attorney of any payments received.

I understand that I ca ... ot revoke this authorization without the prior written consent of The Pain Center, and unl ... la you receive such written notice of revocation from The Pain Center, this document shall remai ... egally binding.

SIGNED _Dianna S Berry_

**PLAINTIFF'S EXHIBIT**
B

## VERIFICATION

Robert E. Cole, Esquire hereby states that he is counsel for plaintiff in this action, is able to make this Verification due to personal conversations with principals of plaintiff and verifies that the averments set forth in the foregoing pleading are true and correct to the best of his knowledge, information and belief. The undersigned understands that the statements therein made are subject to the penalties of 18 Pa. C.S. § 4904 relating to unsworn falsification to authorities.

_10/6/05_
Date

Robert E. Cole, Esquire
Attorney for Plaintiff
Atty. I.D. No. 73263
437 Chestnut Street, Suite 218
Philadelphia, PA  19106
(215) 922-2050